Robert Galvin (SBN 171508)
  robert.galvin@wilmerhale.com
Cortney C. Hoecherl (SBN 245005)
  cortney.hoecherl@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

Cynthia D. Vreeland
  cynthia.vreeland@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

Of Counsel:

William F. Lee
  william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

*Attorney for Defendants and Counterclaim-
Plaintiffs EMC Corporation and VMware, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PersonalWeb Technologies, LLC and Level 3 Communications, LLC,<br><br>                     Plaintiffs,<br><br>    vs.<br><br>EMC Corporation and VMware, Inc.,<br><br>                    Defendants. | Case No. 5:13-cv-01358-EJD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY PENDING *INTER PARTES* REVIEW**<br><br>Hon. Edward J. Davila<br><br>Hearing Date:  January 10, 2014<br><br>Time: 9:00 am<br><br>Courtroom: 4  (5th Floor) |

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California  94304

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ............................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 2

I.      INTRODUCTION ................................................................................................ 2

II.     BACKGROUND .................................................................................................. 3

        A.      The Asserted Patents ............................................................................... 3

        B.      PersonalWeb's Lawsuits Against EMC and Others ............................... 5

        C.      The Pending Reexaminations .................................................................. 8

III.    LEGAL STANDARDS ......................................................................................... 9

        A.      *Inter Partes* Review ("IPR") .................................................................... 9

        B.      Motion to Stay Pending PTO Proceedings .......................................... 10

IV.     ARGUMENT ..................................................................................................... 11

        A.      The Stage of the Litigation Proceedings in This Case Favors A Stay ........... 11

        B.      A Stay Will Simplify the Issues ............................................................ 12

        C.      A Stay Will Not Unduly Prejudice or Disadvantage PersonalWeb ............... 15

V.      CONCLUSION .................................................................................................. 17

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ASCII Corp. v. STD Entm't USA, Inc.,*
   844 F. Supp. 1378 (N.D. Cal. 1994) .................................................. 2, 10, 16

*AT&T Intellectual Prop. I v. Tivo, Inc.,*
   774 F. Supp. 2d 1049 (N.D. Cal. 2011) ...................................................... 12

*Convergence Techs. (USA), LLC v. Microloops Corp.,*
   No. 10-cv-02051, 2012 WL 1232187 (N.D. Cal. Apr. 12, 2012) .......................... 11, 12, 14

*EMSAT Advanced v. T-Mobile USA, Inc.,*
   No. 08-cv-00817, 2011 WL 843205 (N.D. Ohio Mar. 8, 2011) ......................... 12

*Ethicon, Inc. v. Quigg,*
   849 F.2d 1422 (Fed. Cir. 1988) ................................................................ 10

*EuroCapital v. Colburn,*
   2008 WL 401352, C.A. No. 3035-VCN, at *1 (Del. Ch. 2008) ......................... 6

*Fresenius USA, Inc. v. Baxter International Inc.,*
   Case No. 2012-1334 (Fed. Cir. July 2, 2013) ............................................. 13

*Gould v. Control Laser Corp.,*
   705 F.2d 1340 (Fed. Cir. 1983) ................................................................ 12

*KLA-Tencor Corp. v. Nanometrics, Inc.,*
   No. 05-cv-03116, 2006 WL 708661 (N.D. Cal. Mar. 16, 2006) ...................... 15

*MercExchange, L.L.C. v. eBay, Inc.,*
   500 F. Supp. 2d 556 (E.D. Va. 2007) ........................................................ 10

*Methode Elecs., Inc. v. Infineon Techs. Corp.,*
   No. 99-cv-21142, 2000 WL 35357130 (N.D. Cal. Aug. 7, 2000) ...................... 15

*Middleton, Inc. v. Minnesota Mining & Mfg. Co.,*
   No. 03-cv-40493, 2004 WL 1968669 (S.D. Iowa Aug. 24, 2004)...................... 12

*Motson v. Franklin Covey Co.,*
   No. 03-cv-01067, 2005 WL 3465664 (D.N.J. Dec. 16, 2005)........................... 12

*Pragmatus AV, LLC v. Facebook, Inc.,*
   No. 11-cv-00494, 2011 WL 4635512 (N.D. Cal. Oct. 5, 2011) ....................... 16

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

MOTION TO STAY PENDING *INTER PARTES* REVIEW
Case No. 5:13-cv-01358-EJD

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*,
     No. 12-cv-00021, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012) ........................................ 16

*Target Therapeutics, Inc. v. SciMed Life Sys. Inc.*,
     33 U.S.P.Q.2d 2022 (N.D. Cal. 1995) ...................................................... 11, 13

*Telemac Corp. v. Teledigital, Inc.*,
     450 F. Supp. 2d 1107 (N.D. Cal. 2006) ...................................................... 10, 15

*Wireless Recognition Tech. v. A9.com Inc.*,
     No. 12-cv-01217, 2012 WL 4005459 (N.D. Cal. Sept. 11, 2012) ................................ 11, 14

*Yodlee, Inc. v. Ablaise Ltd.*,
     No. 06-cv-07222, 2009 U.S. Dist. LEXIS 5429 (N.D. Cal. Jan. 15, 2009) ........................ 12

STATUTES

35 U.S.C. §§ 6, 311 ........................................................................................ 9, 10

35 U.S.C. §§ 102-103 ........................................................................................ 9

35 U.S.C. §§ 311–319 ........................................................................................ 9

35 U.S.C. § 315 ............................................................................................ 10, 14

35 U.S.C. § 316(a)(11) ........................................................................................ 8

OTHER AUTHORITIES

77 Fed. Reg. 48,680-732 (Aug. 14, 2012) .................................................................. 8, 9, 10

Court's *Markman* ............................................................................................ 7

*Id.* § 314(a). ................................................................................................ 10

U.S. Patent No. 5,978,791 ................................................................................ passim

U.S. Patent No. 6,415,280 .................................................................................. 1, 8

U.S. Patent No. 7,945,539 .................................................................................. 1, 8

U.S. Patent No. 7,945,544 .................................................................................. 1, 8

U.S. Patent No. 7,949,662 .................................................................................. 1, 8

U.S. Patent No. 8,001,096 .................................................................................. 1, 8

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California  94304

MOTION TO STAY PENDING *INTER PARTES* REVIEW
Case No. 5:13-cv-01358-EJD

**NOTICE OF MOTION AND MOTION**

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

      **PLEASE TAKE NOTICE that on** January 10, 2014, at 9:00 am, or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Edward J. Davila, located in the United States District Court for the Northern District of California, at 280 South 1st Street, Room 2112, San Jose, California, 95113, Defendants EMC Corporation ("EMC") and VMware, Inc. ("VMware) (collectively, "Defendants") will and hereby do respectfully move the Court to stay this litigation pending resolution of the *inter partes* reviews ("IPRs") requested by Defendants, and recently instituted by the United States Patent and Trademark Office ("USPTO" or "PTO"), regarding: U.S. Patent No. 5,978,791 ("the '791 patent") (IPR2013-00082); U.S. Patent No. 6,415,280 ("the '280 patent") (IPR2013-00083); U.S. Patent No. 7,945,544 ("the '544 patent") (IPR2013-00084); U.S. Patent No. 7,945,539 ("the '539 patent") (IPR2013-00085); U.S. Patent No. 7,949,662 ("the '662 patent") (IPR2013-00086); and U.S. Patent No. 8,001,096 ("the '096 patent") (IPR2013-00087).

      This Motion is made on the grounds that six of the patents at issue in this case are currently subject to *inter partes* review ("IPR") proceedings before the PTO, and the remaining two are related patents, share a common specification, and involve the same subject matter and the same accused products.  These grounds are addressed in detail in the attached Memorandum of Points and Authorities.  This motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Declaration of Cortney C. Hoecherl ("Hoecherl Decl.") and attached exhibits, on all other matters of which judicial notice may be taken, and on such other evidence and/or argument as the Court may deem appropriate.

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California  94304

Wilmer Cutler Pickering Hale and Dorr LLP<br>950 Page Mill Road<br>Palo Alto, California  94304

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The United States Patent and Trademark Office ("PTO") recently instituted *inter partes* review ("IPR") proceedings reexamining the validity of six of the patents at issue in this case. The PTO has determined that defendants EMC Corporation and VMware, Inc. (collectively, "Defendants") have met the stringent standard for the PTO's new *inter partes* review procedures – finding that they have a "reasonable likelihood" of prevailing in challenging all of the claims from the '791, '280, '544, '539, '662, and '096 patents asserted in this case – and the PTO has scheduled a prompt final hearing on the IPRs for December 16, 2013.

As this Court has recognized, "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).  In this case, the benefits of such a stay would be substantial.  Staying this case pending a final decision from the PTO on the IPRs would undoubtedly simplify the issues in the case, and could eliminate the need for trial on most or all of the issues.  Moreover, many of the most costly stages of the litigation have yet to occur – including factual depositions, expert discovery, and summary judgment motions – each of which could be reduced or eliminated following the PTO's final decision on the IPRs.  Finally, plaintiff PersonalWeb Technologies, LLC ("PersonalWeb") would suffer no undue delay or prejudice as a result of a stay, given the speed of the PTO's new IPR procedures.  This is particularly true given PersonalWeb's more than seven-year delay in filing this lawsuit and since PersonalWeb does not manufacture a product that competes with the accused products – or any products at all.

Defendants EMC and VMware accordingly request that the Court stay this case pending the PTO's final decision on the IPRs.

**MOTION TO STAY PENDING *INTER PARTES* REVIEW**
Case No. 5:13-cv-01358-EJD

2

II.      BACKGROUND

A.      The Asserted Patents

This case involves eight patents that have been controlled by three California-based companies – Brilliant Digital Entertainment, Inc. ("Brilliant") and its subsidiaries, Altnet, Inc. ("Altnet") and Kinetech, Inc. ("Kinetech") – for more than ten years. The patents are directed to data storage systems that use "substantially unique identifiers" – based on all the data in a data item and only the data in the data item – to identify and access data items. *See, e.g.*, Ex. 1, '791 patent, Title, Abstract, and col. 1, ll. 13-18.[1] The preferred embodiments create these substantially unique identifiers using "hashing" functions, which take as input the data contained in a file or other data item, and produce a much smaller-sized output value, commonly called a "hash value." *See, e.g., id.* at col. 12, l. 54- col. 14, l. 39; *see also* Ex. 2, McGraw-Hill Dictionary of Scientific and Technical Terms 860 (4th ed., 1989); *see generally* Ex. 3, B. Kaliski, "A Survey of Encryption Standards," IEEE Micro 74-79, at 77 (Dec. 1993). The hash values are used to perform basic file management functions, such as identifying and accessing data items, or eliminating unnecessary duplicate copies of the data items. *See, e.g*., Ex. 1, '791 patent, Background of the Invention.

According to the patents, prior art data storage systems identified data items based on their location or address within the data processing system, rather than their content. *See, e.g., id.* at col. 1, ll. 23-28. For example, files were often identified by their context or "pathname," that is, information specifying a path through the computer directories to the particular file (e.g., C:\My Documents\Law School\1L\TortsOutline.txt). *Id.* at col. 1, ll. 35-42. This prior art practice of identifying a data item by its context or pathname purportedly resulted in certain shortcomings. For example, the same name might refer to two different data items, or conversely, two different names might refer to the same data item. *Id.* at col. 2, ll. 12-16. This could make it difficult to confirm that a data item is in fact the one named by a pathname, or to

---

[1] Unless otherwise noted, all exhibits are appended to the Declaration of Cortney C. Hoecherl in Support of Defendants' Motion to Stay Pending *Inter Partes* Review.

MOTION TO STAY PENDING INTER PARTES REVIEW
Case No. 5:13-cv-01358-EJD

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California  94304

3

identify and eliminate unwanted duplicate copies of data items, *e.g.*, multiple copies of the same file on a file server.[2]  *Id.* at col. 2, ll. 18-21, 47-58.

The patents contend that all prior art systems operated in this manner: "In ***all*** of the prior data processing systems, the names or identifiers provided to identify data items . . . are ***always*** defined relative to a specific context," and "there is no direct relationship between the data names and the data item."  *See, e.g., id.* at col. 1, l. 65 – col. 2. l. 3, col. 2, ll. 12-13 (emphasis added).

These representations were simply wrong.  As the PTO recently recognized in granting Defendants' IPR petitions, prior data processing systems ***did use*** identifiers based on the content of the data in a data item, and not its context or path-name.  In fact, these techniques were old and widely used.  The concept of using a mathematical function to create a unique identifier or "fingerprint" for a data item, based on the content of the data item predates the patents by decades.  For example, IBM developed one of the first hash tables in the 1950s (*see*, *e.g.*, Ex. 4, D. Knott, "Hashing functions," 18 The Computer Journal 265, 273-74 (1975) (discussing "history of hashing")), and Professor Ron Rivest of MIT introduced the MD5 algorithm referenced in the '791 patent in the early 1990s.  *See generally* Ex. 5, R. Rivest, "The MD5 Message-Digest Algorithm," Internet RFC 1321 (Apr. 1992).

Although the applicants suggested in their patent applications that they were the first to use these hashing functions to identify data items for file management applications, this purportedly new use of hash functions was also old and widely used.  For example, at least sixteen years before the original patent application was filed, researchers were already using content addressable file stores and a "hash function and bit array" to determine whether two records were identical, and to eliminate duplicate records.[3]  Many printed publications and

---

[2] For example, Alice and Bob both download the same copy of the James Bond movie *Goldfinger*.  Alice saves her copy at "C:\Movies\Bond\Goldfinger.mov", and Bob saves his copy at "C:\Videos\007\Bond-Goldfinger.mov".

[3] *See*, *e.g.*, Ex. 6, ('791 IPR) (2013-00082) Dkt. 8, Petition for IPR, at 18-19 (citing Babb, "Implementing a Relational Database by Means of Specialized Hardware," ACM Transactions on Database Systems, Vol. 4, No.1, at 2-4 (March 1979); Bitton and DeWitt, "Duplicate Record

**MOTION TO STAY PENDING *INTER PARTES* REVIEW**
Case No. 5:13-cv-01358-EJD

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California  94304

4

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

patents disclose and use data identifiers exactly like those described and claimed in the patents, for the same purposes.[4]  These publications disclose identifiers that are location- and context-independent, that are determined based on all of and only the contents of the data item, and that are formed using identical algorithms to those mentioned in the '791 patent.[5]

## B.    PersonalWeb's Lawsuits Against EMC and Others

On October 25, 2004, Kinetech, Inc., the original assignee of the asserted patents, wrote a letter to EMC accusing it of infringing the '791 and '280 patents, and offering it a license.  *See* (EDTX) Dkt. 13, Defendants' Motion to Transfer Venue, at 13 n.18; (EDTX) Dkt. 13-33, Lyons Decl. ¶¶ 13-14.[6]  At the time Kinetech sent this letter, the '791 and '280 patents were the only asserted patents to have issued.  EMC responded in a letter dated February 8, 2005, advising Kinetech that it was not infringing the patents, and explaining why.  *Id.*

---

Elimination in Large Data Files," ACM Transactions on Database Systems, Vol. 8, No. 2, at 253 (June 1983)).

[4] *See, e.g., id.* at 18-25 (citing McGregor and Mariani, "'Fingerprinting' – A Technique for File Identification and Maintenance," Software Practice & Experience 1165 (1991), vol. 12, no. 12; Browne et al., "Location-Independent Naming for Virtual Distributed Software Repositories," University of Tennessee Technical Report CS-95-278 (Feb. 1995); Langer, "Re: dl/describe (File descriptions)," post to the "alt.sources" newsgroup on August 7, 1991; Kantor, "The Frederick W. Kantor Contents-Signature System Version 1.22," FWKCS122.REF (August 10, 1993); Woodhill et al., U.S. Patent No. 5,649,196, entitled "System and Method For Distributed Storage Management on Networked Computer Systems Using Binary Object Identifiers," filed Nov. 9, 1995 as a continuation of application 85,596, filed July 1, 1993).

[5] *See, e.g., id.* (citing McGregor and Mariani at 1165 ("fingerprinting" technique "produce[s] a quasi-unique identifier for a file, derived from that file's contents . . . [t]he idea is to provide an identifying feature for every file, which is intrinsically distinctive, and analogous (hopefully) to a human's fingerprint"); Browne et al. at 6 (creates "location independent file names" for identifying files on the Internet calculated using all of, and only, the contents of each file as "the ascii form of the MD5 signature of the file"); Langer at 3, 4 (addresses problem of "uniquely identifying files which may have different names and/or be in different directories on different systems" by "defining a unique identifier that does NOT include a particular site identifier," calculated by "using a cryptographic hash function such as MD5"); Kantor at 8 (creates "contents-signatures" for files based on their content and only their content as a hash of the contents of the file combined with the size of the content); Woodhill at col. 8, lines 58-65 (creates "binary object identifiers" that are "based on the contents of the binary object so that the Binary Object Identifier 74 changes when the contents of the binary object changes. . . . [D]uplicate binary objects, even if resident on different types of computers in a heterogeneous network, can be recognized from their identical Binary Object Identifiers 74")).

[6] Docket numbers identified as (EDTX) refer to activity in this litigation that occurred before Judge Leonard Davis in the Eastern District of Texas (Case No. 6:11-cv-00660-LED).

**MOTION TO STAY PENDING *INTER PARTES* REVIEW**
Case No. 5:13-cv-01358-EJD

5

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California  94304

1   After this correspondence, EMC considered the matter closed.  More than five years later,

2   however, Kinetech's parent company, Brilliant, set out to assert the patents against the storage

3   and cloud computing industry in the Eastern District of Texas.  The cousin of Brilliant's founder

4   along with two others accordingly formed a new company, PersonalWeb, Inc., in Tyler, Texas,

5   and some of those individuals then formed PersonalWeb Technologies, LLC (the plaintiff in this

6   case) in Tyler, Texas.[7]   Brilliant subsequently issued a press release announcing its intention to

7   enforce its patent portfolio – which had since grown to include most of the other asserted patents

8   – against the storage and cloud computing industries.  *See* (EDTX) Dkt. 13, Defendants' Motion

9   to Transfer Venue, at 1; (EDTX) Dkt. 13-3, 07/06/11 Brilliant Press Release.  Two months later,

10   Brilliant and PersonalWeb announced the completion of "an asset contribution" through which

11   Brilliant received majority ownership of PersonalWeb, and PersonalWeb received Brilliant's and

12   its subsidiaries' interests in all of the patents asserted in this case.  *See id.*; (EDTX) Dkt. 13-4,

13   09/28/11 PersonalWeb Press Release.

14   PersonalWeb filed this lawsuit less than three months later, on December, 8, 2011, in the

15   Eastern District of Texas, alleging that ten separate EMC and VMware products infringe the

16   '791, '280, '544, '539, '662, '096, '310 and '442 patents (the "asserted patents").  PersonalWeb

17   also has asserted one or more of these patents in separate cases against the following companies:

18   NEC Corporation of America, Inc.; Google, Inc.; YouTube, LLC; NetApp, Inc.; Amazon.com

19   Inc.; Amazon Web Services LLC; DropBox, Inc.; Caringo, Inc.; Autonomy, Inc.; Hewlett-

20   Packard Co.; HP Enterprise Services, LLP; Nexsan Technologies, Inc.; Yahoo! Inc.; Rackspace

21   US, Inc.; Rackspace Hosting, Inc.; Apple Inc.; International Business Machines Corporation;

22   Facebook Inc.; and Microsoft Corporation.  *See* Case Nos. 6:11-cv-00655; 6:11-cv -00656; 6:11-

23
24
25
26
27

---

[7]   PersonalWeb, Inc. was formed by Michael Weiss, Murray Markiles, and Mark Dyne.  *See* (EDTX) Dkt. 13-17, 5/12/10, PersonalWeb Certificate of Formation.  Mark Dyne is the cousin of Kevin Bermeister (Brilliant's founder).  *See* Ex. 29, *EuroCapital v. Colburn,* 2008 WL 401352, C.A. No. 3035-VCN, at *1 (Del. Ch. 2008) ("Also named a defendant was Kevin Bermeister, Dyne's cousin and an alleged recipient of diverted EuroCapital profits.")  Mr. Weiss subsequently formed PersonalWeb Technologies, LLC, with Claria Innovations, LLC of Sherman Oaks, California as the sole member.  *See* (EDTX) Dkt. 13-12, 8/5/10, PersonalWeb LLC Certificate of Formation.

28

**MOTION TO STAY PENDING *INTER PARTES* REVIEW**
Case No. 5:13-cv-01358-EJD

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California  94304

cv-00657; 6:11-cv-00658; 6:11-cv-00659; 6:11-cv-00683; 6:12-cv-00657; 6:12-cv-00658; 6:12-cv-00659; 6:12-cv-00660; 6:12-cv-00661; 6:12-cv-00662; and 6:12-cv-00663 (E.D. Tex.).

EMC and VMware moved to transfer the case to this District, along with most of the other defendants.  On March 21, 2013, Judge Davis conditionally granted EMC and VMware's Motion to Transfer Venue, but retained the case pending completion of the *Markman* hearing scheduled for July 18, 2013, and subsequent issuance of the court's claim construction order. *See* (EDTX) Dkt. 103, Opinion and Order, at 49 ("Defendants Google, YouTube, NetApp, EMC, VMware, and Facebook WILL BE TRANSFERRED to the Northern District of California immediately upon entry of this Court's *Markman* opinion.").  The Chief Judge of this District subsequently has directed the parties to request a case management conference in this court once the transfer becomes effective.  *See* Dkt. 2, Judge Wilken's 03/29/13 Order, at 2 ("The case management and transfer protocol detailed in Chief Judge Davis' order of March 21, 2013 will be followed in all four of the above-captioned cases."); (EDTX) Dkt. 103, Opinion and Order, at 50 ("The judge or judges will be requested to accommodate [the original case] schedule as nearly as possible, consistent with his or her own schedule.  Immediately upon receipt of this Court's claim construction order, the Transferring Defendants shall notify their assigned judge in the Northern District of California, and shall request a case management conference be set as soon as possible.").  On August 5, 2013, Judge Davis issued a claim construction order and immediately transferred this case to the Northern District of California.  *See* (EDTX) Dkt. 136, Claim Construction Order; (EDTX) Dkt. 137, Transfer Order.  Consistent with this Court's order, Defendants have filed a notice of transfer order with this District, and have requested a status conference. *See* Dkt. 3.

Although discovery is underway in this case, the parties have made only minimal progress – the parties have not yet negotiated email search terms and custodians as anticipated by the Court's E-Discovery Order, no fact depositions have been taken on issues beyond venue transfer, no expert reports have been exchanged, no expert depositions have occurred, and no

1  summary judgment motions have been filed.  *See* Hoecherl Decl., at ¶ 31; (EDTX) Dkt. 80, E-

2  Discovery Order, at 5-6; Ex. 7, 6:11-cv-00660-LED Docket Report.

3      **C.**    **The Pending Reexaminations**

4      On December 14, 2013, after the parties exchanged their respective infringement and

5  invalidity contentions, EMC and VMware filed petitions with the PTO, requesting *inter partes*

6  review of six of the asserted patents.  *See* Ex. 6, ('791 IPR) (2013-00082) Dkt. 8, Petition for

7  IPR; Ex. 8, ('280 IPR) (2013-00083) Dkt. 6, Petition for IPR; Ex. 9, ('544 IPR) (2013-00084)

8  Dkt. 3, Petition for IPR; Ex. 10, ('539 IPR) (2013-00085) Dkt. 5, Petition for IPR; Ex. 11, ('662

9  IPR) (2013-00086) Dkt. 3, Petition for IPR; Ex. 12, ('096 IPR) (2013-0087) Dkt. 5, Petition for

10  IPR.[8]

11      On May 17, 2013, the PTO instituted all six IPRs, finding a "reasonable likelihood that

12  [Defendants] will prevail in challenging [each of the challenged claims] as unpatentable under 35

13  U.S.C. §§ 102 and 103."  *See* Ex. 13, ('791 IPR) Dkt. 21, Decision to Institute; *see also* Ex. 14,

14  ('280 IPR) Dkt. 19, Decision to Institute; Ex. 15, ('544 IPR) Dkt. 14, Decision to Institute; Ex.

15  16, ('539 IPR) Dkt. 18, Decision to Institute; Ex. 17, ('662 IPR) Dkt. 14, Decision to Institute;

16  Ex. 18, ('096 IPR) Dkt. 13, Decision to Institute.

17      The PTO has scheduled a final hearing on the IPRs for December 16, 2013, and is

18  statutorily required to issue final decisions on the IPRs "not later than 1 year" after the petitions

19  were granted – or by May 17, 2014.[9]  *See* 35 U.S.C. § 316(a)(11); Ex. 19, ('791 IPR) Dkt. 22,

20  Scheduling Order; Ex. 20, ('280 IPR) Dkt. 20, Scheduling Order; Ex. 21, ('544 IPR) Dkt. 15,

21  Scheduling Order; Ex. 22, ('539 IPR) Dkt. 19, Scheduling Order; Ex. 23, ('662 IPR) Dkt. 15,

22  Scheduling Order; Ex. 24, ('096 IPR) Dkt. 17, Scheduling Order.

23

24    [8] EMC and VMware have challenged claims 1-4, 29-33 and 41 of the '791 patent; claims 36 and
    28 of the '280 patent; claims 10, 21, and 34 of the '539 patent; claim 1 of the '544 patent; claim

25  30 of the '662 patent; and claims 1, 2, 81, and 83 of the '096 patent.  The IPR dockets can be
    viewed at the PTO's new website for *inter partes* review by entering the relevant patent number

26  (or case number) at https://ptabtrials.uspto.gov/prweb/PRServlet/oO9O9iMscyJcfy6Ln
    BDXO9xEtRpDxfL3At36r8Aw8k%5B*/!STANDARD.

27    [9] The one-year period may be extended for good cause by not more than 6 months, although

28  "[e]xtensions of the one-year period are anticipated to be rare."  77 Fed. Reg. at 48,695.

**MOTION TO STAY PENDING *INTER PARTES* REVIEW**
Case No. 5:13-cv-01358-EJD

8

**Wilmer Cutler Pickering Hale and Dorr LLP**
950 Page Mill Road
Palo Alto, California  94304

Given these ongoing IPR proceedings, EMC and VMware respectfully request that this Court stay this litigation pending the PTO's review of the patents.

## III.  LEGAL STANDARDS

### A.  *Inter Partes* Review ("IPR")

The Leahy-Smith America Invents Act ("AIA"), enacted in 2011, instituted a number of significant changes in U.S. patent law.  One of these changes was to provide a new PTO post-grant review proceeding – *inter partes* review – to replace and improve upon the former *inter partes* reexamination proceedings.  35 U.S.C. §§ 311–319.  As the legislative history of these provisions confirms, the PTO crafted the *inter partes* review process to "[p]ursu[e] the AIA's goal 'to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs,'" and "'to create a timely, cost-effective alternative to litigation.'"  *Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents*, 77 Fed. Reg. 48,680 (Aug. 14, 2012) (codified at 37 C.F.R. §§ 42.100 et seq.).  The *inter partes* review procedure is designed "(1) to reduce to 12 months the time the PTO spends reviewing validity, from the previous reexamination average of 36.2 months (*id.* at 48,725); (2) to minimize duplicative efforts by increasing coordination between district court litigation and *inter partes* review (*id.* at 48,721); and (3) to allow limited discovery in the review proceedings (*id.* at 48,719)."  *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. 12-cv-00329, 2013 U.S. Dist. LEXIS 64154, at *3 (C.D. Cal. May 2, 2013).

The new IPR provisions allow a party, other than the patentee, to bring an adversarial proceeding in the PTO to establish that the patent claims are invalid under 35 U.S.C. §§ 102 and/or 103.  The IPR proceeding is conducted before a panel of three technically-trained Administrative Patent Judges of the newly formed Patent Trial and Appeal Board ("PTAB").  *See* 35 U.S.C. §§ 6, 311.  The parties can take discovery and respond to each other's arguments, and have the right to an oral hearing.  *Id.* § 316(a)(5), (8), (10), and (13).

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California  94304

1    The PTO will grant a request for an IPR if "there is a reasonable likelihood that the

2    petitioner would prevail with respect to at least 1 of the claims challenged in the petition."

3    *Id.* § 314(a).  This standard is more stringent than the prior "substantial new question of

4    patentability" standard applied in *inter partes* reexamination proceedings.  If the PTO grants an

5    *inter partes* review, a final determination must typically be issued within twelve months.  *Id.* §

6    316(a)(11); *see also* 77 Fed. Reg. at 48,695.  After review concludes, the requester is estopped

7    from asserting that a claim is invalid "on any ground that the petitioner raised or reasonably

8    could have raised during that *inter partes* review."  35 U.S.C. § 315(e)(2).

9    **B.     Motion to Stay Pending PTO Proceedings**

10   "Courts have inherent power to manage their dockets and stay proceedings, including the

11   authority to order a stay pending conclusion of a PTO reexamination."  *Ethicon, Inc. v. Quigg*,

12   849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citation omitted).  A court may grant a motion to stay

13   "in order to avoid inconsistent results, narrow the issues, obtain guidance from the PTO, or

14   simply to avoid the needless waste of judicial resources, especially if the evidence suggests that

15   the patents-in-suit will not survive reexamination."  *MercExchange, L.L.C. v. eBay, Inc.*, 500 F.

16   Supp. 2d 556, 563 (E.D. Va. 2007).  In this District, "there is a liberal policy in favor of granting

17   motions to stay proceedings pending the outcome of USPTO reexamination or reissuance

18   proceedings."  *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

19   Courts consider three main factors in determining whether to stay a case pending

20   reexamination: "(1) whether discovery is complete and whether a trial date has been set; (2)

21   whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay

22   would unduly prejudice or present a clear tactical disadvantage to the nonmoving party."

23   *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006) (citation

24   omitted).  Although there have been relatively few requests for stays pending an IPR, as opposed

25   to an *inter partes* reexamination, courts have applied the same three factors in determining

26   whether to grant a stay.  *See, e.g.*, Ex. 25, *Autoalert, Inc. v. Dominion Dealer Solutions, LLC*, No.

27   12-cv-01661, ECF No. 41, at *2 n. 1 (C.D. Cal. May 22, 2013) ("Effective September 16, 2012,

28

**MOTION TO STAY PENDING *INTER PARTES* REVIEW**
Case No. 5:13-cv-01358-EJD

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California  94304

the Leahy-Smith America Invents Act amended the *inter partes* reexamination process and

renamed it the *inter parte*s review process. Pub. L. No. 112-29, § 314(a), 125 Stat. 284 (2011).

The Court sees no reason why the three factor assessment would not still be relevant."); *see also*

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. 12-cv-00021, 2012 WL 7170593,

at *1 n.1 (C.D. Cal. Dec. 19, 2012) (same).

Courts also may look beyond these three factors to the totality of the circumstances.

*Universal Elecs.*, 2013 U.S. Dist. LEXIS 64154, at *6 (citing *Allergan Inc. v. Cayman Chem.*

*Co.*, No. 07-cv-01316, 2009 WL 8591844, at *2 (C.D. Cal. Apr. 9, 2009)).

## IV.   ARGUMENT

### A.   The Stage of the Litigation Proceedings in This Case Favors A Stay

The early stage of a litigation weighs in favor of a stay pending PTO proceedings. *See*

*Target Therapeutics, Inc. v. SciMed Life Sys. Inc*., 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995).

This element of the stay analysis focuses "on the stage of litigation proceedings, not the length of

time that has passed since the filing of the case." *See Wireless Recognition Tech. v. A9.com Inc.*,

No. 12-cv-01217, 2012 WL 4005459, at *2 (N.D. Cal. Sept. 11, 2012).

As discussed above, this case was only recently transferred to the Northern District of

California. Although the Eastern District of Texas has issued a claim construction order, the

post-*Markman* discovery dates in this case will need to be confirmed or reset at the case

management conference (to be scheduled) in this Court now that the case has been transferred.

Moreover, the parties have made only minimal progress in discovery. Document production is

ongoing. No factual depositions have been noticed or taken on issues other than venue transfer.

No expert reports have been exchanged, and no expert depositions have been noticed or taken.

No summary judgment motions have been filed. *See* Hoecherl Decl., at ¶ 31.

Courts have repeatedly stayed cases with similar procedural postures to the one here. In

*Convergence Techs. (USA), LLC v. Microloops Corp.*, No. 10-cv-02051, 2012 WL 1232187

(N.D. Cal. Apr. 12, 2012), for example, this Court found that the case had "not reached the 'point

of no return' for which a stay would [be] inappropriate," despite the fact that the case had been

**MOTION TO STAY PENDING *INTER PARTES* REVIEW**
Case No. 5:13-cv-01358-EJD

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California  94304

1  pending for more than two years and the parties were engaged in discovery and had already filed

2  claim construction briefs.  *Id.* at *4; *see also AT&T Intellectual Prop. I v. Tivo, Inc.*, 774 F. Supp.

3  2d 1049, 1052 (N.D. Cal. 2011) (finding that the stage-of-the-proceedings factor weighed in

4  favor of a stay where the parties had not exchanged expert reports or taken any depositions, but

5  had filed claim construction briefs).  Similarly, in *Yodlee, Inc. v. Ablaise Ltd.*, No. 06-cv-07222,

6  2009 U.S. Dist. LEXIS 5429 (N.D. Cal. Jan. 15, 2009), this Court granted a stay where a

7  *Markman* hearing had already been held, and a decision on claim construction had already been

8  issued, in a concurrent litigation on the identical patent claims.  *Yodlee*, 2009 U.S. Dist. LEXIS

9  5429 at *4-5, 19; *see also EMSAT Advanced v. T-Mobile USA, Inc.*, No. 08-cv-00817, 2011 WL

10 843205, at *1-3 (N.D. Ohio Mar. 8, 2011) (granting stay where *Markman* hearing had been held

11 and fact discovery was set to close in ten days, but there remained several costly stages of

12 litigation that could be eliminated or reduced depending upon results of PTO's review).  In fact,

13 courts have granted stays even in cases far more advanced than this one.  *See, e.g., Motson v.*

14 *Franklin Covey Co.*, No. 03-cv-01067, 2005 WL 3465664, at *2 (D.N.J. Dec. 16, 2005)

15 (granting stay despite discovery being complete and summary judgment decided); *id.* (noting that

16 in *Gould v. Control Laser Corp.*, 705 F.2d 1340 (Fed. Cir. 1983), the Federal Circuit upheld stay

17 "even where it was entered five years after commencement of litigation and only 20 days before

18 scheduled start of trial"); *Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, No. 03-cv-40493,

19 2004 WL 1968669, at *1, 5, 10 (S.D. Iowa Aug. 24, 2004) (granting stay eight years into

20 litigation, less than one month before scheduled trial, and with several summary judgment

21 motions pending).  In this case, the most time-consuming and costly stages of the litigation have

22 yet to occur – including factual depositions, expert reports and depositions, and summary

23 judgment motions.  Each of these stages could be reduced or eliminated following the PTO's

24 final decision on the IPRs.  A short stay – through May 2014 – accordingly could save the Court

25 and the parties substantial efforts and costs.

26       **B.**      **A Stay Will Simplify the Issues**

27

28

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California  94304

1        A stay is further warranted in this case because it will simplify the issues.  Proceeding

2   with this litigation while the IPRs are pending at the PTO would create a substantial risk that the

3   Court and the parties will expend time and resources litigating issues that will be eliminated or

4   altered by the review proceedings.[10]  For example, in *Fresenius USA, Inc. v. Baxter International*

5   *Inc.,* Case No. 2012-1334 (Fed. Cir. July 2, 2013), the Federal Circuit recently held that the

6   PTO's determination during reexamination proceedings that all asserted patent claims were

7   invalid, meant the plaintiff (Baxter) in pending infringement proceedings no longer had a viable

8   cause of action against the accused infringer (Fresenius) –  despite the fact that a jury verdict had

9   been returned, an interim appellate decision had found the asserted patents had not been proven

10  invalid, and only a dispute about royalties remained ongoing.  *See* Ex. 30, *Fresenius,* Case No.

11  2012-1334, at *2-9, 31.  The outcome of the pending IPRs in this case could similarly modify

12  any interim work completed by the Court and the parties, potentially wasting judicial resources

13  and resulting in unnecessary costs to the parties.  In contrast, waiting for the outcome of the IPRs

14  "could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate

15  trial by providing the court with expert opinion of the PTO and clarifying the scope of the

16  claims."  *Target Therapeutics*, 33 U.S.P.Q.2d at 2023.

17       In this case, the PTO has already determined that EMC and VMware have met the

18  stringent standard for *inter partes* review, finding that defendants have a "reasonable likelihood"

19  of prevailing in challenging all of the asserted claims from the '791, '280, '539, '544, '662, and

20  '096 patents.  *See* Ex. 13, ('791 IPR) Dkt. 21, Decision to Institute; Ex. 14, ('280 IPR) Dkt. 19,

21  Decision to Institute; Ex. 15, ('544 IPR) Dkt. 14, Decision to Institute; Ex. 16, ('539 IPR) Dkt.

22  18, Decision to Institute; Ex. 17, ('662 IPR) Dkt. 14, Decision to Institute; Ex. 18, ('096 IPR)

23

---

24  [10] To the extent Plaintiff argues that a stay should be denied because it may create dual track
25  litigation with its other pending cases in the Northern District of California, all *separate* cases
    under the AIA – this concern is unwarranted.  *See* Ex. 26, *Pi-Net Int'l, Inc. v. The Hertz Corp.*,
26  No. 12-cv-10012, ECF No. 31, at *6-7 (C.D. Cal. June 5, 2013) (staying three of twelve cases
    and finding, "in assessing the totality of the circumstances, . . . that Plaintiff's concern of dual
    track litigation is unwarranted as the Court has broad discretion to manage its own docket.  To
27  the extent a stay is appropriate in the nine other cases filed by Plaintiff, the Court has the power
    to stay the proceedings.") (citation omitted).

28

**MOTION TO STAY PENDING *INTER PARTES* REVIEW**
Case No. 5:13-cv-01358-EJD

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

1    Dkt. 16, Decision to Institute.  It accordingly is likely that the PTO will cancel or modify all of

2    these claims.  This Court has previously held that "[s]uch likelihood weighs in favor of a stay."

3    *Wireless Recognition Tech.*, 2012 WL 4005459, at \*2 (citing *MercExchange, L.L.C. v. eBay,*

4    *Inc.*, 500 F. Supp. 2d at 563 (favoring a stay when the evidence shows a likelihood that the

5    patents-in-suit will not survive reexamination)).  Moreover, even if the PTO were to cancel or

6    modify only some of these claims, a stay would still be warranted because the PTO's decisions

7    would narrow and simplify the issues.  *See, e.g.*, Ex. 27, *Robert Bosch Healthcare Sys., Inc. v.*

8    *Cardiocom, LLC*, No. 12-cv-03864, ECF No. 43, at \*4 (N.D. Cal. Dec. 3, 2012) ("When a

9    reexamination stands to simplify some, if not all, of the issues in a case, the second factor may

10   still properly weigh in favor of a stay."); *see also Convergence Techs. (USA), LLC,* 2012 WL

11   1232187, at \*5 (noting "[a]ny resulting scenario results in some form of simplification").

12   Furthermore, once the IPR concludes, irrespective of the results, EMC and VMware will be

13   estopped from asserting that these claims are invalid "on any ground that the petitioner raised or

14   reasonably could have raised during that *inter partes* review."  35 U.S.C. § 315(e)(2).  Thus, the

15   PTO's final determination on the IPRs will simplify the issues for these six patents regardless of

16   the results.

17        These factors warrant a stay not only for the six patents that are the subject of the pending

18   IPR proceedings, but also for the '310 and '442 patents.  Given the substantial costs associated

19   with filing an IPR petition (the filing fees, alone, are $27,200 for each IPR), EMC and VMware

20   elected not to request IPRs for the '310 and '442 patents.  Defendants expect, however, that if the

21   pending IPRs are successful, any remaining issues relating to the '310 and '442 patents can

22   likely be addressed through summary judgment motions.  The '310 and '442 patents are related

23   to the six patents for which IPRs are pending (all of the patents claim priority to U.S. Patent

24   Application No. 08/425,160 and share a common specification), and involve the same subject

25   matter.  Furthermore, PersonalWeb accuses the same EMC and VMware products of infringing

26   the patents.  *See* Ex. 28, 10/31/12 PersonalWeb's Supplemental Infringement Contentions, at 1-2.

27   As such, a complete stay of the case would simplify the issues, promote efficiency, and avoid

28

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California  94304

1    potentially duplicative discovery.  The case accordingly should be stayed with respect to all of

2    the asserted patents, including the '310 and '442 patents.  *See Methode Elecs., Inc. v. Infineon*

3    *Techs. Corp.,* No. 99-cv-21142, 2000 WL 35357130, at *3 (N.D. Cal. Aug. 7, 2000) (staying the

4    litigation of both the reexamined and non-reexamined patents because "it appears that there are

5    overlapping issues" in the infringement action of the two patents); *see also KLA-Tencor Corp. v.*

6    *Nanometrics, Inc.*, No. 05-cv-03116, 2006 WL 708661, at *4-5 (N.D. Cal. Mar. 16, 2006)

7    (granting stay of three patents, only two of which were in reexamination, in order to prevent

8    duplicate efforts by the parties where the infringement action was the same for all three patents

9    in suit and discovery would be substantially the same across all three patents).

   **C.      A Stay Will Not Unduly Prejudice or Disadvantage PersonalWeb**

11           Finally, a stay will not unduly prejudice PersonalWeb or present it with a clear tactical

12   disadvantage.  PersonalWeb cannot credibly claim any undue prejudice given its delay in seeking

13   to enforce its patent rights.  Brilliant, Kinetech, and Altnet were aware of EMC's Centera

14   product by 2004, but delayed more than seven years before filing this suit.  *See* (EDTX) Dkt. 13,

15   Defendants' Motion to Transfer Venue, at 13 n.18; (EDTX) Dkt. 13-33, Lyons Decl. ¶¶ 13-14.

16   This delay alone negates any argument that PersonalWeb would be prejudiced by a stay.  *See,*

17   *e.g.,* Ex. 27, *Robert Bosch Healthcare Systems, Inc. v. Cardiocom, LLC*, No. 12-cv-03864, ECF

18   No. 43, at *5-6 (N.D. Cal. Dec. 3, 2012) (finding that plaintiff's arguments regarding prejudice,

19   while numerous, were not compelling where "Plaintiff and its predecessor were aware of

20   Defendant's possible infringement for at least six years before filing suit").  Furthermore, the

21   mere fact that an IPR may cause some predictable delay, in and of itself, is not reason to deny a

22   stay pending PTO review.  *See Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111

23   (N.D. Cal. 2006) (noting the delay inherent to the PTO reexamination process does not, in itself,

24   constitute undue prejudice); *see also* Ex. 26, *Pi-Net Int'l, Inc. v. The Hertz Corp.*, No. 12-cv-

25   10012, ECF No. 31, at *5 (C.D. Cal. June 5, 2013) ("Mere delay in the litigation does not

26   establish undue prejudice").

27

28

**MOTION TO STAY PENDING *INTER PARTES* REVIEW**
Case No. 5:13-cv-01358-EJD

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California  94304

1    Nor can PersonalWeb credibly claim any undue prejudice from defendants' continuing to

2    sell the accused products during the length of any stay.  PersonalWeb does not manufacture a

3    product that competes with the accused products – or any products at all – and PersonalWeb has

4    not sought a preliminary injunction in this case.  *See Semiconductor Energy Lab. Co. v. Chimei*

5    *Innolux Corp.*, No. 12-cv-00021, 2012 WL 7170593, at *4 (C.D. Cal. Dec. 19, 2012) (finding

6    lack of undue prejudice in granting a stay pending IPR in part "because [plaintiff] does not

7    dispute that it has not sought a preliminary injunction and that [plaintiff] and [defendant] are not

8    direct competitors").[11]  Granting a stay will not change the competitive circumstances of this

9    case, and the availability of monetary damages to Plaintiff is sufficient to redress any alleged

10   harm.  *See, e.g., Pragmatus AV, LLC v. Facebook, Inc.*, No. 11-cv-00494, 2011 WL 4635512, at

11   *3 (N.D. Cal. Oct. 5, 2011) (noting "[c]ourts have consistently found that a patent licensor

12   cannot be prejudiced by a stay because monetary damages provide adequate redress for

13   infringement") (citation omitted).

14   Finally, as a practical matter, any prejudice due to delay is significantly reduced in

15   the new IPR procedure compared to the old *inter partes* reexamination procedure.  The new IPR

16   statute requires the PTO to issue a final written decision within twelve to eighteen months.[12]  *See*

17   35 U.S.C. at § 316(a)(11); *see also* 77 Fed. Reg. at 48,695.  As a result, the IPR proceedings will

18   result *in even less delay* than the *inter partes* reexamination procedure that prompted courts in

19   this District to adopt a "liberal policy in favor of granting motions to stay" pending the outcome

20   of USPTO reexamination or reissuance proceedings.  *ASCII Corp.*, 844 F. Supp. at 1381.

21   Because "the delay caused by the new IPR procedure is significantly less than the delay caused

22   by the old [*inter partes* reexamination] procedure," a stay pending the PTO's final decision on

23   Defendants' six IPRs is appropriate.  *See Semiconductor Energy,* 2012 WL 7170593, at *3.  This

24   is particularly true here, where the requested stay would be relatively short (through May 2014)

25

26   [11] PersonalWeb has tested one software product, StudyPods, through a beta-testing program.  *See*
     (EDTX) Dkt. 20-7, 04/04/12 Weiss Decl., at ¶ 8; *see also* (EDTX) Dkt. 27-5, 04/26/12 Weiss
27   Dep. Tr., at 96:1-100:10.

28   [12] Defendants expect that the PTO's final IPR decisions will be issued by May 17, 2014.

**MOTION TO STAY PENDING *INTER PARTES* REVIEW**
Case No. 5:13-cv-01358-EJD

16

but could save an immense amount of time and money given that factual depositions, expert

reports, expert depositions, and the potential filing of summary judgment motions would all

otherwise take place between now and May 2014 if the case is not stayed.

**V.     CONCLUSION**

Because all three factors weigh in favor of a stay, and given this District's liberal policy

in favor of granting stays pending PTO proceedings, defendants EMC and VMware respectfully

request that the Court stay the entirety of this action pending the outcome of the PTO's *inter*

*partes* review of the '791, '280, '539, '544, '662 and '096 patents, and grant such further relief

as it deems just and proper.

Dated: August 13, 2013          By:   */s/ Cortney C. Hoecherl*

Robert Galvin (SBN 171508)
  robert.galvin@wilmerhale.com
Cortney C. Hoecherl (SBN 245005)
  cortney.hoecherl@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile:  (650) 858-6100

Cynthia D. Vreeland
  cynthia.vreeland@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

Of Counsel:

William F. Lee
  william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

*Attorney for Defendants and Counterclaim-*
*Plaintiffs EMC Corporation and VMware, Inc.*

**Wilmer Cutler Pickering Hale and Dorr LLP**
950 Page Mill Road
Palo Alto, California  94304

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Civil L.R. 5-1(h)(1) on August 13, 2013.


Dated:  August 13, 2013                    */s/ Cortney C. Hoecherl*
                                            Cortney C. Hoecherl (SBN 245005)

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California  94304

**MOTION TO STAY PENDING *INTER PARTES* REVIEW**
Case No. 5:13-cv-01358-EJD