# EXHIBIT 17

US1DOCS 7784863v1

Trials@uspto.gov                                                                                    Paper 14
571-272-7822                                                                         Entered:  May 17, 2013


UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____


EMC CORPORATION AND VMWARE, INC.
Petitioner

v.

PERSONALWEB TECHNOLOGIES, LLC
Patent Owner
_____

Case IPR2013-00086(JYC)
U.S. Patent No. 7,949,662 B2
_____


Before KEVIN F. TURNER, JONI Y. CHANG, and
MICHAEL R. ZECHER, *Administrative Patent Judges*.

TURNER, *Administrative Patent Judge*.


DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2

## I.  INTRODUCTION

EMC Corporation and VMware, Inc. ("EMC") filed a Petition ("Pet.," Paper No. 3) requesting *inter partes* review of claim 30 of U.S. Patent No. 7,949,662 B2 ("the '662 Patent").  Patent owner, PersonalWeb Technologies LLC ("PersonalWeb"), filed a Preliminary Response ("Prelim. Resp.," Paper No. 9).  We have jurisdiction under 35 U.S.C. § 314.

The standard for instituting an *inter partes* review is set forth in 35 U.S.C. § 314(a), which provides:

> THRESHOLD --The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.

Taking into account PersonalWeb's Preliminary Response, we conclude that the information presented in the Petition demonstrates that there is a reasonable likelihood that EMC will prevail in challenging claim 30 as unpatentable under 35 U.S.C. § 103(a).  Pursuant to 35 U.S.C. § 314, we hereby authorize an *inter partes* review to be instituted as to claim 30 of the '662 Patent.

2

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2

### A. Related Matters

EMC indicates that the '662 Patent was asserted against it in *PersonalWeb Technologies LLC v. EMC Corporation and VMware, Inc.*, Case No. 6:11-cv-00660-LED, pending in the U.S. District Court for the Eastern District of Texas (Pet. 1).

EMC also filed five other Petitions seeking *inter partes* review of the following patents: U.S. Patent No. 5,978,791 (IPR2013-00082), U.S. Patent No. 6,415,280 (IPR2013-00083), U.S. Patent No. 7,945,544 (IPR2013-00084), U.S. Patent No. 7,945,539 (IPR2013-00085), and U.S. Patent No. 8,001,096 (IPR2013-00087) (*Id.*). According to EMC, those patents and the '662 Patent share a common disclosure (*Id.* (citing to EX 1008)).

### B. The Invention of the '662 Patent (EX 1001)

The invention of the '662 Patent relates to a data processing system that identifies data items using substantially unique identifiers, otherwise referred to as True Names, which depend on all the data in the data item and only on the data in the data item (EX 1001, Spec. 1:17-21, 3:27-30, and 5:66-6:6). According to the '662 Patent, the identity of a data item depends only on the data and is independent of the data item's name, origin, location, address, or other information not directly derivable from the data associated therewith (EX 1001, Spec. 3:34-37). The invention of the '662 Patent also examines the identities of a plurality of data items in order to determine

3

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2

whether a particular data item is present in the data processing system (EX 1001, Spec. 3:38-43).

Figures 1(a) and 1(b) illustrate the data processing system that implements the invention of the '662 Patent (EX 1001, Spec. 4:50-54). Figure 1(a) is reproduced below:



Figure 1(a) illustrates the data processing system

The Specification of the '662 Patent discloses that the data processing system (100) includes one or more processors (102) and various storage devices (104) connected via bus (106) (EX 1001, Spec 4:50-54).

Figure 1(b) is reproduced below:

4

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2



Figure 1(b) illustrates a typical data processor in the data processing system

The Specification of the '662 Patent discloses that each processor (102) includes a central processing unit (108), memory (110), and one or more local storage devices (112) connected via an internal bus (114) (EX 1001, Spec. 4:55-60). The memory (110) in each processor (102) stores data structures that are either local to the processor itself or shared amongst multiple processors in the data processing system (EX 1001, Spec. 7:57-65).

The Specification of the '662 Patent further discloses accessing data items by referencing their identities or True Names independent of their present location in the data processing system (EX 1001, Spec. 33:46-48). The actual data item or True file corresponding to a given data identifier or

5

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2

True Name is capable of residing anywhere on the data processing system, *i.e.*, locally, remotely, offline, etc. (EX 1001, Spec. 33:46-48). If a requested data item or True File is local with respect to the data processing system, a prospective user can access the data in the True File (EX 1001, Spec. 33:48-50). If a requested data item or True File is not local with respect to the data processing system, a prospective user may use the True File registry to determine the location of copies of the True File according to its given True Name (EX 1001, Spec. 33:50-54). However, if for some reason a prospective user cannot locate a copy of the requested data item or True File, the processor employed by the user may invoke the Request True File remote mechanism to submit a general request for the data item or True File to all the processors in the data processing system (EX 1001, Spec. 34:58-64).

### C. Challenged Claim

Independent claim 30 is the only claim challenged by EMC in this *inter partes* review and is reproduced below:

> 30. A computer-implemented deletion method operable in a file system comprising (i) a plurality of servers; (ii) a list indicating, for each of a plurality of files in the file system, a corresponding status,
>
> wherein, for each of a plurality of data items in the file system, said data items each consisting of a corresponding sequence of one or more parts; and
>
> wherein each data item has a corresponding digital data item identifier, said digital data item identifier for the data item being based, at least in part, on the contents of the data item,

6

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2

wherein two identical data items in the file system have the same digital data item identifier; and

wherein each part is replicated on multiple servers of said plurality of servers; and

wherein said list includes digital data item identifiers for data items for which changes are to be made in the file system,
the method comprising the steps of:

(A) obtaining a particular digital data item identifier of a particular data item, said particular digital data item identifier of said particular data item being obtained in response to an attempt to delete said particular data item in said file system;

(B) updating a record in said list to reflect deletion of said particular data item from the file system, said record including the particular digital data item identifier to the list.

### D. Prior Art Relied Upon

EMC relies upon the following prior art references:

Woodhill           US 5,649,196     July 15, 1997      EX 1005

Dennis M. Ritchie and Ken Thompson, "*The UNIX Time-Sharing System, Comm. Of the ACM*," Vol. 17, No. 7 (July 1974)(EX 1003)(hereinafter "Ritchie").

Mahadev Satyanarayanan et al., "*Coda: A Highly Available File System for a Distributed Workstation Environment*," IEEE Transactions on Computers, Vol. 39, No. 4 (April 1990)(EX 1026)(hereinafter "Satyanarayanan").

Frederick W. Kantor, "*FWKCS(TM) Contents_Signature System Version 1.22*," Zipfile FWKCS122.ZIP (Aug. 10, 1993)(EX 1004)(hereinafter "Kantor").

Shirley Browne et al. "*Location-Independent Naming for Virtual Distributed Software Repositories*," University of Tennessee Technical Report CS-95-278 (Feb. 1995)(EX 1002)(hereinafter "Browne").

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2

### E. Alleged Grounds of Unpatentability

EMC seeks to have canceled independent claim 30 of the '662 Patent based on the following alleged grounds of unpatentability:

1. Claim 30 as anticipated under 35 U.S.C. § 102(a) by Browne (Pet. 30-38);

2. Claim 30 as unpatentable under 35 U.S.C. § 103(a) over the combination of Kantor and Satyanarayanan (*Id*. at 38-47); and

3. Claim 30 as unpatentable under 35 U.S.C. § 103(a) over the combination of Woodhill and Ritchie (*Id*. at 47-59).

## II. ANALYSIS

### A. Claim Construction

As a first step in our analysis for determining whether to institute a trial, we determine the meaning of the claims. In an *inter partes* review, claim terms in an unexpired patent are given their broadest reasonable construction in light of the specification of the patent in which they appear. 37 C.F.R. § 42.100(b). Under the broadest reasonable construction standard, claims are to be given their broadest reasonable interpretation consistent with the specification, and the claim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art. *In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004). This means that the words of the claim will be given their plain meaning unless the plain meaning is inconsistent with the specification. *In re Zletz*,

8

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2

893 F.2d 319, 321 (Fed. Cir. 1989). In this regard, an inventor is entitled to be his or her own lexicographer of patent claim terms by providing a definition of the term in the specification with reasonable clarity, deliberateness, and precision. *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994).

In this proceeding, analysis of the grounds of unpatentability asserted by EMC depends on the meaning of the claim term "data item" as recited in claim 30 (*i.e.*, "a particular *data item*").

Each of the parties proposed a claim construction, and the parties appear to agree that the term "data item" has the meaning of "sequence of bits." (Pet. 6-7; Prel. Resp. 3). In particular, PersonalWeb asserts that the specification of the '662 Patent provides a special definition for the term. (Prel. Resp. 3, citing EX 1001, 1:56-57 "the terms "data" and "data item" as used herein refer to sequences of bits.") EMC also directs our attention to the following portions of the specification of the '662 Patent (Pet. 6-7):

> Thus a *data item* may be the contents of a *file*, a portion of a file, a *page* in memory, an *object* in an object-oriented program, a digital *message*, a digital scanned *image*, a part of a *video* or audio *signal*, or any *other entity* which can be represented by a sequence of bits.

(EX 1001, 1:56-61, emphasis added.)

> In all of the prior data processing systems the names or identifiers provided to identify *data items (the data items being files, directories, records in the database, objects in object-oriented programming, locations in memory or on a physical device, or the like)* are always defined relative to a specific context.

9

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2

(EX 1001, 1:66-2:4, emphasis added.)

Based on our review of the specification of the '662 Patent, we agree with the parties that the claim term "data item" means "sequence of bits," but also clarify that the meaning includes one of the following: (1) the contents of a file; (2) a portion of a file; (3) a page in memory; (4) an object in an object-oriented program; (5) a digital message; (6) a digital scanned image; (7) a part of a video or audio signal; (8) a directory; (9) a record in a database; (10) a location in memory, on a physical device, or the like; and (11) any other entity which can be represented by a sequence of bits.

### B. 35 U.S.C. § 103(a) Ground of Unpatentability
### *Kantor & Satyanarayanan*

EMC contends that independent claim 30 is obvious under 35 U.S.C. § 103(a) over Kantor and Satyanarayanan (Pet. 38-47). EMC relies upon the Declaration of Dr. Douglas W. Clark (EX 1009) to support its positions and an attached claim chart (EX 1028) to explain where Kantor in view of Satyanarayanan describes the claimed subject matter recited in independent claim 30. EMC contends that Kantor is a published manual that describes a software program called the Frederick W. Kantor Contents Signature System Version 1.22 ("FWKCS") (Pet. 38, citing to EX 1004, Title Page).

Whether Kantor is a "Printed Publication"

In its Preliminary Response, PersonalWeb does not dispute the substantive disclosure of Kantor, but rather urges the Board to deny this

10

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2

asserted ground of unpatentability on the basis that Kantor is not a prior art "printed publication" (Prel. Resp. 4-9). In particular, PersonalWeb argues that EMC has presented no testimony, declaration, or other evidence that Kantor "was catalogued or indexed in a meaningful way prior to the critical date, or that [it] would have turned up in a customary search prior to the critical date, or that persons interested and ordinarily skilled in the art exercising reasonable diligence would have located [it] prior to the critical date" (Prel. Resp. 6).

      We are not persuaded by PersonalWeb's arguments. Rather, on this record, we determine that EMC has made a threshold showing to establish that Kantor is a "printed publication" within the meaning of 35 U.S.C. § 102(b). As a consequence, Kantor is available as prior art for the purposes of this decision to demonstrate that claim 30 of the '662 Patent is unpatentable under 35 U.S.C. § 103(a).

      To determine whether to deny a ground on the basis that a reference is not a "printed publication," we decide each case on the basis of its own facts. More specifically, the determination of whether a given reference qualifies as a prior art "printed publication" involves a case-by-case inquiry into the facts and circumstances surrounding the reference's disclosure to members of the public. *In re Klopfenstein*, 380 F.3d 1345, 1350 (Fed. Cir. 2004).

      Here, EMC asserts that Kantor has been publicly available since August 1993, which is one year before April 11, 1995, the earliest priority

11

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2

date claimed by the '662 Patent (Pet. 4-5, citing to EX 1004). EMC also proffers the following explanation (*id*.):

> Kantor's FWKCS user manual has been publicly and freely available continuously since August 1993. Kantor distributed the user manual with the FWKCS program as shareware and posted it online to electronic Bulletin Board Systems including "The Invention Factory" and "Channel 1" for an extended period of time, where it could be downloaded by anyone. As such, the document was accessible to others in the relevant community of BBS users and system operators. (*See* Kantor at 3; *see also* 158-59; Ex. 1004.)

Further, the title page of Kantor clearly shows the posted date of August 10, 1993. (EX 1004, Title Page "FWKCS (TM) Contents_Signature System[,] Version 1.22[,] **1993 August 10** [,] (C) Copyright Frederick W. Kantor 1988-1993." Emphasis added.) Kantor also provides the following:

> The FWKCS(TM) Contents_Signature System has become a robust platform for supporting contents_signature functions. FWKCS provides many functions and options for application in a public, commercial, school, institutional, or governmental environment. Extensive technical support is of special value in helping such users to benefit more fully from these many features.
>
> Registered FWKCS hobby BBS users are able to receive a modest amount of assistance, and are invited to participate in the FWKCS conference on The Invention Factory BBS, echoed via Execnet.
>
> Commercial, school, institutional, and governmental users, with their special support needs, are invited to discuss terms for obtaining such assistance.
>
> To get a new version of FWKCS, download FWKCSnnn.ZIP from The Invention Factory BBS, where nnn is the new version

12

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2

> number without a decimal point. These special downloads are available at no fee, from a 43_line hunt_up group of USR Dual Standard modems, at 2400-16800 bits/sec (including V32.bis).

(EX 1004, 158-159.)

Given that disclosure, Kantor appears to convey that the reference was posted on a publically accessible site well known to those interested in the art – the electronic Bulletin Board Systems – and could be downloaded and retrieved from that site. *In re Wyer*, 655 F.2d 221, 227 (CCPA 1981) (An electronic publication, including an on-line database or Internet publication, is considered to be a "printed publication" "upon a satisfactory showing that the document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it and recognize and comprehend therefrom the essentials of the claimed invention without need of further research or experimentation.").

PersonalWeb cites *Synopsys, Inc. v. Mentor Graphics Corp.*, IPR2012-00042 (Paper No. 16), at *35-36 (PTAB Feb. 22, 2013) for the propositions that any asserted grounds of unpatentability based on an electronic reference should be denied, unless the reference is presented in the petition with a declaration from one of the authors or other evidence that someone accessed or received the reference prior to the critical date (Prel. Resp. 5-7). PersonalWeb's reliance on *Synopsys* is misplaced because *Synopsys* did not involve a reference, such as Kantor, that has a posted date. In fact, *Synopsys* involves a brochure that did not include any indication of when it was created or whether it was disseminated publicly, and the only

13

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2

evidence submitted by the petitioner was that it was cited in an Information Disclosure Statement filed in an unpublished patent application. *Synopsys*, IPR2012-00042 (Paper No. 16), at *35.

As to PersonalWeb's argument that there is no evidence that Kantor was catalogued or indexed in a meaningful way prior to the critical date, we are not convinced. "[W]hile often relevant to public accessibility, evidence of indexing is not an absolute prerequisite to establishing online references [] as printed publications within the prior art." *Voter Verified, Inc. v. Premier Election Solutions, Inc.,* 698 F.3d 1374, 1380 (Fed. Cir. 2012).

PersonalWeb further argues that Kantor is inadmissible evidence as the copy of Kantor submitted by EMC has not been authenticated or certified (Prel. Resp. 8). In that regard, PersonalWeb has not followed the proper procedures for objecting to and/or excluding evidence. *See* 37 C.F.R. § 42.64(b); *LKQ Corp. v. Clearlamp, LLC*, IPR2013-00020 (Paper No. 17), at *3-4 (PTAB Mar. 5, 2013).

Under the procedure set forth in 37 C.F.R. § 42.64(b), when a party objects to evidence that was submitted during a preliminary proceeding, such an objection must be served within ten business days of the institution of trial. The objection to the evidence must identify the grounds for the objection with sufficient particularity to allow correction in the form of supplemental evidence. This process allows the party relying on the evidence to which an objection is served timely, the opportunity to correct, by serving supplemental evidence within so many days of the service of the objection. If, upon receiving the supplemental evidence, the opposing party

14

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2

is still of the opinion that the evidence is inadmissible, the opposing party may file a motion to exclude such evidence. The time for filing a motion to exclude is typically several months into a trial. *See, e.g., Office Patent Trial Practice Guide*, 77 *Fed. Reg.* 48756, 48768-69, Scheduling Order – Due Date 4. Therefore, PersonalWeb will have full opportunity to object, serve, and reconsider any supplemental evidence and, finally, file a motion to exclude evidence.

Obviousness

Kantor describes a method of identifying duplicate files (EX 1004, pp. 2-4, 48-49). In particular, Kantor applies a hash function (*e.g.*, a cyclic residue check or cyclic redundancy check (CRC)) to each file within the zipfile to obtain the contents signature for each file (EX 1004, pp. 6-8, 48-49). Each contents signature is a string of bits generated from the contents of a file (*id.*).

For each zipfile, Kantor creates "zipfile contents signatures" by hashing the contents signatures for the files contained within the zipfile (EX 1004, pp. 2, 9). As Kantor points out, this is done by "adding together all the 32_bit CRC's for the files in the zipfile, modulo $2^{32}$, separately adding together their uncompressed file_lengths module $2^{32}$, and then arranging the two resulting hexadecimal number as a single structure" (*Id.* at 9). Dr. Clark testifies that "additional modulo $2^{32}$" is another well-known simple hashing function that uses addition to calculate a value for a file based on the file's contents (EX 1009, ¶ 43). Kantor further compares the

15

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2

zipfile contents signatures to check for duplicate files. (EX 1004, pp. Preface-2, 5, 9).

 Kantor also stores the file contents signatures for all files on the system in a master contents-signature list called CSLIST (EX 1004, pp. 18, 45). Kantor discloses the use of this list in deleting files, whether they are already stored on the BBS, or whether duplicate files are deleted when a user tries to add them to the BBS (EX 1004, pp. 81, 189-90). In the former process, a system operator can scan the master contents-signature list for duplicate signatures, place those duplicates into a MULTIS list, and mark unwanted copies for deletion, where a deletion command updates the "deletion.log" file with the contents-signatures and pathnames of the deleted files (EX 1004, pp. 81, 189-90, 200). In the latter process, when a user attempts to add a file to the BBS, if the contents-signature of the uploaded file is identified as being a file marked by the exclude feature, or on a "black list," it is immediately deleted (EX 1004, pp. 81, 117, 154).

 Kantor fails to disclose the underlying storage system of the BBS, and thus does not disclose that files are replicated on multiple servers, per claim 30. Satyanarayanan discloses a network-based file replication system, where copies of files are stored at multiple servers (EX 1026, Abstract).

 EMC contends that Kantor does not satisfy the claim limitation of "wherein each part is replicated on multiple servers of said plurality of servers," a person of ordinary skill would have found it obvious to modify Kantor to meet that limitation in view of Satyanarayanan (Pet. 43-44). On this record, we concur with the analysis of Dr. Clark, that it would have been

16

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2

obvious to combine Kantor and Satyanarayanan to provide more reliable storage systems for the BBS's files (EX 1009, ¶ 47).

We have reviewed EMC's analysis and supporting evidence, and we determine that EMC's contentions are persuasive. Therefore, based on the record before us, we conclude that there is a reasonable likelihood that EMC will prevail on its assertion that independent claim 30 of the '662 Patent is obvious over Kantor and Satyanarayanan. We initiate an *inter partes* review on that ground of unpatentability.

### C. Remaining Grounds of Unpatentability

EMC contends that independent claim 30 is also unpatentable under 35 U.S.C. §§ 102 and 103 based in whole or in part on Browne, Woodhill, or Ritchie (Pet. 30-38, 47-59). Those grounds of unpatentability are redundant to the grounds of unpatentability on which we initiate an *inter parties* review. Accordingly, we do not authorize an *inter partes* review on the remaining grounds of unpatentability asserted by EMC against independent claim 30 of the '662 Patent. *See* 37 C.F.R. § 42.108(a).

### III. CONCLUSION

For the forgoing reasons, we determine that the information presented in EMC's petition shows that there is a reasonable likelihood that EMC would prevail with respect to claim 30 of the '662 Patent. Accordingly, the petition is granted.

17

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2

## IV.  ORDER

It is **ORDERED** that pursuant to 35 U.S.C. § 314(a), an *inter partes* review is hereby instituted as to claim 30 of the '662 Patent for the following ground of unpatentability:

Claim 30 as unpatentable under 35 U.S.C. § 103(a) over Kantor and Satyanarayanan.

It is **FURTHERED ORDERED** that pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial.  The trial will commence on the entry date of this decision.

It is **FURTHER ORDERED** that an initial conference call with the Board is scheduled for 2:00 PM Eastern Time on June 3, 2013.  The parties are directed to the Office Trial Practice Guide, 77 *Fed. Reg*. 48756, 48765-66 (Aug. 14, 2012) for guidance in preparing for the initial conference call, and should come prepared to discuss any proposed changes to the Scheduling Order entered herewith and any motions the parties anticipate filing during the trial.

Case IPR2013-00086
U.S. Patent No. 7,949,662 B2

For PETITIONER:

Peter Dichiara
David L. Cavanaugh
WILMER CUTLER PICKERING HALE AND DORR LLP
Peter.Dichiara@wilmerhale.com
David.Cavanaugh@wilmerhale.com


For PATENT OWNER:

Joseph A. Rhoa
Updeep S. Gill
NIXON & VANDERHYE P.C.
jar@nixonvan.com
usg@nixonvan.com

19