# EXHIBIT 29

US1DOCS 7784863v1



Not Reported in A.2d                                                                                     Page 1
Not Reported in A.2d, 2008 WL 401352 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

EuroCapital Advisors, LLC v. Colburn
Del.Ch.,2008.
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.
Re: EUROCAPITAL ADVISORS, LLC
v.
COLBURN.
**C.A. No. 3035-VCN.**

Submitted: Jan. 31, 2008.
Feb. 14, 2008.

Bruce E. Jameson, Esquire, Tanya E. Pino, Esquire, Prickett, Jones & Elliott, P.A., Wilmington, DE.
Stephen E. Jenkins, Esquire, Richard L. Renck, Esquire, Ashby & Geddes, Wilmington, DE.
JOHN W. NOBLE, Vice Chancellor.

*1 Dear Counsel:

In this action between former business associates, the Court is confronted with a familiar question: should the parties' dispute be resolved here or in California? Defendant Pamela Colburn contends that this Court does not have personal jurisdiction over her; that this Court should exercise its discretion and stay this action in favor of a related action pending in California; and that this action should be dismissed under the doctrine of *forum non conveniens.* For the reasons that follow, the Court concludes that this action should be stayed.

\* \* \*

Colburn and Plaintiff Mark Dyne worked together at Plaintiff EuroCapital Advisors, LLC ("EuroCapital"), a Delaware limited liability company formed in August 2000. Dyne claims to be the sole member of EuroCapital; Colburn claims to hold a one-third interest in the venture based on an oral agreement with Dyne. Europlay Capital Advisors, LLC ("Europlay") is a Delaware limited liability company formed in June 2002. Its members are Dyne, Colburn, and Murray Markiles, who has served as counsel to both Europlay and EuroCapital. EuroCapital provided financial advisory services to clients in the media and technology sectors. Its business was transferred to Europlay after that entity's creation.

In the spring of 2007, Europlay commenced an arbitration proceeding against Colburn, who had been terminated in January 2007, and filed an action in the United States District Court for the Central District of California (the "Federal Action") seeking injunctive relief to protect confidential business documents allegedly taken by Colburn. Both proceedings involved Europlay, not EuroCapital. In May 2007, Colburn responded in the Federal Action by filing a cross-complaint against EuroCapital, Dyne, and Markiles, as well as Europlay. Colburn, in addition to raising claims related to Europlay, also brought individual and derivative claims as a member of EuroCapital against Dyne and Markiles relating to the misappropriation of EuroCapital's corporate opportunities and their failure to share profits with her.[FN1]

> FN1. The disputes involving Europlay are subject to arbitration; no similar arbitration obligation apparently applies to claims involving EuroCapital.

On August 13, 2007, Colburn's claims in the Federal Action were dismissed on grounds of improper joinder. Colburn, accordingly, on August 27, 2007, filed an action in the Superior Court of Los Angeles County, California (the "California Action"), which reprised her claims based on her EuroCapital experience against Dyne and Markiles. Also named a defendant was Kevin Bermeister, Dyne's cousin and an alleged recipient of diverted EuroCapital profits. She purported to bring claims in the California Action both individually and derivatively as a member of EuroCapital. The core claims again focused on the alleged efforts of Dyne and Markiles to usurp EuroCapital's opportunities for themselves and their associates and to deny her the lucrative rewards to which she claims entitlement as a member of EuroCapital.

On June 18, 2007, EuroCapital and Dyne filed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

this action (the "Delaware Action"). In the Second Amended Complaint, dated August 27, 2007, they sought a declaration that Colburn is not a member of EuroCapital. Alternatively, apparently recognizing that Colburn might be found to be a member, they sought rescission of her membership based on misrepresentations that induced Dyne to do business with her or an adjustment of any payments that otherwise might be due her based on the doctrine of unjust enrichment, a claim also premised on misrepresentations she allegedly made about her skill set and experience.

**\*2** Dyne and Colburn are California residents. EuroCapital's business was transacted from California. The sole connection between Colburn and Delaware is that she participated with Dyne in the formation of this Delaware limited liability company and claims to be a member of it. Although Colburn never served as a manager of EuroCapital, she has characterized herself as a "founding member" and has asserted that she "served as an officer and/or managing director in connection with a substantial portion of the various ventures undertaken by [EuroCapital]."[FN2]

> FN2. Federal Action Counterclaim, at ¶ 13.

\* \* \*

Against this background, the Court turns to the question of whether the Delaware Action should be stayed.[FN3]

> FN3. Colburn has moved to dismiss for lack of personal jurisdiction. In the normal order of addressing contentions, personal jurisdiction would be at the beginning. Dyne and EuroCapital rely upon novel (or less than fully developed) theories to support their assertion of personal jurisdiction over Colburn in Delaware. For example, they urge a reading of Delaware's long-arm statute, 10 Del. C. § 3104(c), that dispenses with the specific conduct identified by the General Assembly and skips to the due process standards of standards of *International Shoe v. Washington,* 362 U.S. 310 (1945), and its progeny. Conceding that Colburn was never a "manager" of EuroCapital within the definition of 6 Del. C. § 18-101(10), they nevertheless claim that she was a member who "participate[d] materially in the management of the limited liability company" within the meaning of 6 Del. C. § 18-109(a)(ii) and, thus, is subject to personal jurisdiction as a manager. The Court declines the invitation to address these interesting issues because, regardless of the outcome of the jurisdictional analysis, the parties' dispute is not, for now at least, going forward in this forum.

Under the familiar *McWane* standard, a party seeking a stay must show that "there is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same parties and the same issues [.]"[FN4] Consideration of a motion to stay is committed to the Court's discretion which is to be "exercised freely." [FN5]

> FN4. *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.,* 263 A.2d 281, 283 (Del.1970); accord *Citrin Holdings LLC v. Cullen,* 2008 WL 241615, at \*2 (Del. Ch. Jan. 17, 2008); see also *Enodis Corp. v. Amana Co., L.P.,* 2007 WL 1242193, \*2 (Del. Ch. Apr. 26, 2007).

> FN5. See *McWane,* 263 A.2d at 283.

1. The California Action as First-Filed

The Delaware Action was filed before the California Action but after the Federal Action. If a party files claims first in federal court (as Colburn did), if those claims are dismissed by the federal court (as they were), [FN6] and if the dismissed party then re-files in state court (as Colburn did), the "new" action in state court will be treated as the first filed.[FN7] Colburn's claims in the California Action are substantially the same as those claims relating to EuroCapital and asserted in the first-filed Federal Action.[FN8] Thus, as between the Federal Action and the California Action, there is "% 7Fa continuation of the viable claims' of an earlier-filed but *dismissed,* federal court action."[FN9] Accordingly, the California Action, as compared to the Delaware Action, should be accorded first-filed status. [FN10]

> FN6. It does not matter that Colburn's claims were asserted as counterclaims and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not through a direct complaint.

FN7.*United Phosphorus, Ltd. v. Micro-Flo, LLC,* 808 A.2d 761, 764-65 (Del.2002); *Rapoport v. Litig. Trust of MDIP, Inc.,* 2005 WL 3277911, at *3 (Del. Ch. Nov. 23, 2005).

FN8. The claims relate to Colburn's loss of the financial benefits from EuroCapital's opportunities that Dyne and Markiles are alleged to have diverted to themselves.

FN9.*W.C. McQuaide, Inc. v. McQuaide,* 2005 WL 1288523, at *5 (Del. Ch. May 24, 2005).

FN10. On December 12, 2007, the California Action was stayed until February 15, 2008 "for the hearings on the issues already pending in Delaware [*i.e.,* those issues addressed in this Letter Opinion]." California Action, Dec. 12, 2007 Hr'g Tr. 14. The California court noted that "[t]he jurisdiction of [the] Delaware court was invoked prior to the time the jurisdiction of the California state court was invoked."*Id.* at 15;*see also id.* at 14.Dyne and EuroCapital seemingly argue that the California court has already concluded that the Delaware Action was "first-filed" and therefore it deferred to this Court with regard to those issues and those parties over which this Court can exercise jurisdiction. Dyne and EuroCapital read too much into the transcript. First, the California Action was filed after the Delaware Action. About that as an historical fact, there is no dispute. The question, however, is whether the earlier filing of the Federal Action alters the mix of facts to be considered, and there is nothing to suggest that the California court directly addressed that potentially distinguishing factor. Second, the stay of the California Action was granted for a short time, with the California court exhibiting an obvious intent to revisit the question. In sum, the California court, in the best spirit of comity, allowed this Court the opportunity to take a look at the various disputes before it; it did not elect to stand down indefinitely.

2. Similarity of Parties and Issues

To support the exercise of discretion to stay an action, it is not necessary to establish that the parties and issues in both actions are identical. "Substantial" identity suffices; the pragmatic focus is on whether the claims "are closely related and arise out of the same common nucleus of operative facts."[FN11]All parties in the Delaware Action were parties in the Federal Action and are parties in the California Action.[FN12]The critical issue in the Delaware Action is whether Colburn is a member of EuroCapital. In the California Action, Colburn's derivative claims depend upon her status as a member. Similarly, her ability to recover on her individual claims will also be significantly influenced by whether she is a member. Although Dyne and EuroCapital may not yet have raised her membership status in the California Action, they concede that they would raise the issue in that forum.[FN13]Thus, the key question in the Delaware Action and the critical threshold question in the California Action are the same: whether or not Colburn is a member of EuroCapital.[FN14]Colburn, accordingly, has satisfied this prong of the *McWane* formulation.

FN11.*Dura Pharmaceuticals, Inc. v. Scandipharm, Inc.,* 713 A.2d 925, 930 (Del. Ch.1998).

FN12. That there are additional parties in the California Action does not detract from the functionality analysis. *See, e.g., AT & T Corp. v. Prime Sec. Distribs., Inc.,* 1996 WL 633300, at *2 (Del. Ch. Oct. 24, 1996).

FN13. The Federal Action apparently did not progress to the stage where that issue would have been germane.

FN14. Certainly, the core issue for the Delaware Action (Colburn's status as a member of EuroCapital) and the opening issue in the California Action (as well as what would have been the opening issue related to EuroCapital in Colburn's counterclaims in the Federal Action) share the same substance. *See, e.g., Kurtin v. KRE, LLC,* 2005 WL 1200188, at *4 (Del. Ch. May 16, 2005).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

3. The California Court as Provider of Prompt and Complete Justice

**\*3** The courts of California are capable of providing prompt and complete justice in this matter.[FN15] Dyne and EuroCapital argue that significant unresolved questions of Delaware law militate against a stay. As part of the exercise of discretion, Delaware courts may consider denying a motion for stay if the "case involves important questions of [Delaware] law in an emerging area."[FN16] Dyne and EuroCapital have been unable to identify any such issue. They suggest that the identity of the members of a Delaware limited liability company would satisfy that standard, but, in this instance, there are no apparent novel questions relating to membership. The judicial inquiry may be complicated as a factual matter, but, as to legal issues, it is simply a matter of contract: to what did Dyne and Colburn agree? Dyne and EuroCapital also suggest that there may be important questions of limited liability company governance. Those issues, however, are framed by the derivative aspects of Colburn's complaint in the California Action; they have not been squarely raised in the Delaware Action.

> FN15. *See, e.g., Ryan v. Gifford,* 918 A.2d 341, 349 (Del. Ch.2007) ("In many instances, this Court has recognized without hesitation that sister state courts and federal courts are capable of applying Delaware law and providing complete justice."); *Dredger v. Tallman,* 773 A.2d 1005, 1013 (Del. Ch.2000).

> FN16. *In re Topps Co. S'holders Litig.,* 2007 WL 1491451, at \*7 (Del. Ch. May 9, 2007).

\* \* \*

In sum, the California Action must be treated as first-filed; the issues and parties are substantially the same in both actions; and the California courts are capable of providing prompt and complete justice.[FN17] As a matter discretion, the Delaware Action will be stayed in favor of the California Action.[FN18]

> FN17. EuroCapital and Dyne have not argued, and have no basis to argue, that litigating their disputes with Colburn in California would cause any hardship. Indeed, it may well be easier to litigate in California where all claims can be resolved and where the events in question took place.

It may also be appropriate to note that the principal target of EuroCapital and Dyne in the Delaware Action is obtaining a declaratory judgment regarding Colburn's status. The merits of her substantive claims (*e.g.,* usurpation of corporate opportunity) are, at most, touched upon only marginally. The use of a declaratory judgment action as a tactic to acquire a venue perceived to be more favorable has been criticized. *See, e.g., Citrin Holdings LLC,* 2008 WL 241615, at \*4 (citing *In re Delta & Pine Land Co. S'holders Litig.,* 2000 WL 1010584, at \*5 (Del Ch. July 17, 2000)).

> FN18. With this conclusion, it is not necessary to consider Colburn's motion to dismiss on *forum non conveniens* grounds.

An implementing order will be entered.

Very truly yours,

/s/ John W. Noble

Del.Ch.,2008.
EuroCapital Advisors, LLC v. Colburn
Not Reported in A.2d, 2008 WL 401352 (Del.Ch.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.