RODERICK G. DORMAN (SBN 96908)
rdorman@mckoolsmithhennigan.com
LAWRENCE M. HADLEY (SBN 157728)
lhadley@mckoolsmithhennigan.com
ALAN P. BLOCK (SBN 143783)
ablock@mckoolsmithhennigan.com
JEFFREY HUANG (SBN 266774)
jhuang@mckoolsmithhennigan.com
MCKOOL SMITH HENNIGAN, P.C.
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone:    (213) 694-1200
Facsimile:    (213) 694-1234

THEODORE STEVENSON III (PRO HAC VICE)
tstevenson@mckoolsmith.com
MCKOOL SMITH, P.C.
300 Crescent Court Suite 1500
Dallas, Texas 75201
Telephone:    (214) 978-4000
Facsimile:    (214) 978-4044

Attorneys for Plaintiff
PERSONALWEB TECHNOLOGIES, LLC

McKool Smith Hennigan, P.C.
Los Angeles, California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES LLC AND LEVEL 3 COMMUNICATIONS, LLC., <br><br> Plaintiffs, <br><br> v. <br><br> EMC CORPORATION AND VMWARE, INC. <br><br> Defendants. | Case No. 5:13-cv-01358-EJD <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS EMC CORPORATION AND VMWARE, INC.'S MOTION TO STAY PENDING INTER PARTES REVIEW** <br><br> Hon. Edward J. Davila |

1

2

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................1

II.    STATEMENT OF FACTS ....................................................................2

       A.    THE ASSERTED PATENTS ......................................................2

       B.    THE PROCEDURAL SETTING OF THIS LITIGATION..................2

       C.    THE IPRS FILED BY EMC AND VMWARE ...................................5

III.   ARGUMENT ........................................................................................7

       A.    STANDARDS APPLICABLE TO MOTIONS TO STAY
             LITIGATION PENDING REEXAMINATION...................................7

       B.    THE STAGE OF THESE PROCEEDINGS WEIGHS IN FAVOR
             OF DENYING A STAY ...............................................................9

       C.    THE FACT THAT REEXAMINATION WILL NOT
             SUBSTANTIALLY SIMPLIFY THE ISSUES WEIGHS
             AGAINST A STAY ...................................................................13

       D.    THE FACT THAT PERSONALWEB WILL SUFFER UNDUE
             PREJUDICE AND A CLEAR TACTICAL DISADVANTAGE
             WEIGHS AGAINST A STAY.......................................................19

       E.    DEFENDANTS HAVE FAILED TO CARRY THEIR BURDEN
             OF DEMONSTRATING A CLEAR CASE OF HARDSHIP OR
             INEQUITY IN FINISHING THIS LITIGATION............................21

IV.    CONCLUSION....................................................................................22

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McKool Smith Hennigan, P.C.
Los Angeles, California

1

2

# TABLE OF AUTHORITIES

3

4

CASES

5

*Amado v. Microsoft Corp.*,
6
    517 F.3d 1353 (Fed. Cir. 2008) .................................................................8

7

*AT&T Intellectual Prop. I v. Tivo, Inc.*,
8
    774 F. Supp. 2d 1049 (N.D. Cal. 2011) ............................................12

9

*Athena Feminine Techs. Inc. v. Derek Wilkes*,
    2012 U.S. Dist. LEXIS 57438 (N.D. Cal. 2012) ........................................8, 13

10

*Belden Techs. Inc. v. Superior Essex Comms. LP, C.A.*,
11
    2010 U.S. Dist. LEXIS 90960 (D. Del. 2010)....................................19

12

*Convergence Techs. (USA), LLC v. Microloops Corp.*,
13
    2012 U.S. Dist. LEXIS 51794 (N.D. Cal. 2012) .........................................12, 18

14

*Ecolab, Inc. v. FMC Corp.*,
15
    2007 U.S. Dist. LEXIS 39189 (D. Minn. 2007) ................................................20

16

*Emsat Advanced v. T-Mobile USA, Inc.*,
    2011 U.S. Dist. LEXIS 23327 (E.D. Ohio 2011) ...............................................13

17

*ePlus, Inc. v. Lawson Software, Inc.*,
18
    2010 U.S. Dist. LEXIS 31322 (E.D. Va. 2010).................................................22

19

*Esco Corp. v. Berkeley Forge & Tool, Inc.*,
20
    2009 U.S. Dist. LEXIS 94017 (N.D. Cal. 2009) ........................... 14, 15, 17, 20

21

*Ethicon, Inc. v. Quigg*,
22
    849 F.2d 1422 (Fed. Cir. 1988) .........................................................7

23

*Imagevision.net, Inc. v. Internet Payment Exchange, Inc.*,
    2013 U.S. Dist. LEXIS 25015 (D. Del. 2013)...................................... 11, 15, 19

24

*IMAX Corp. v. In-Three, Inc.*
25
    385 F. Supp. 2d 1030 (C.D. Cal. 2005) ............................................13

26

*Interwoven, Inc. v. Vertical Computer Sys., Inc.*,
27
    2012 U.S. Dist. LEXIS 30946 (N.D. Cal. 2012) .........................................9, 21

28

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

*Kilopass Tech. Inc. v. Sidense Corp.*,
　　2011 U.S. Dist. LEXIS 157267 (N.D. Cal. 2011) .........................................14, 18

*Landis v. North American Co.*,
　　299 U.S. 248 (1936)...............................................................................8, 9, 21

*Lifescan, Inc. v. Shasta Technologies, LLC*,
　　2013 U.S. Dist. LEXIS 38473 (N.D. Cal. 2013) .............................................15

*Middleton, Inc. v. Minnesota Mining & Mfg. Co.*,
　　2004 U.S. Dist. LEXIS 16812 (D. Ia. 2004)........................................................13

*Mike's Train House, Inc. v. Broadway Limited Imports, LLC*,
　　2011 U.S. Dist. LEXIS 22224 (D. Md. 2011) .............................................10, 19

*Motson v. Franklin Covey Co.*,
　　2005 U.S. Dist. LEXIS 34067 (D.N.J. 2005) .....................................................13

*Network Appliance, Inc. v. Sun Microsystems, Inc.*,
　　2008 U.S. Dist. LEXIS 107840, 2008 WL 2168917 (N.D. Cal. 2011).............15

*NTP, Inc. v. Research in Motion, Ltd.*,
　　397 F. Supp. 2d 785 (E.D. Va. 2005) .....................................................................8

*Pi-Net Int'l, Inc. v. The Hertz Corp.*,
　　2013 U.S. Dist. LEXIS 81570 (C.D. Cal. 2013) .............................................16

*Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*,
　　12-CV-03864-EJD, ECF 43 (N.D. Cal. 2012).....................................................18

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*,
　　2012 U.S. Dist. LEXIS 186322 (C.D. Cal. 2012) .............................................16

*Soverain Software LLC v. Amazon.Com, Inc.*,
　　356 F. Supp. 2d 660 (E.D. Tex. 2005)....................................................... passim

*Sunbeam Prods. v. Hamilton Beach Brands, Inc.*,
　　2010 U.S. Dist. LEXIS 45654 (E.D. Va. 2010)..........................................21, 22

*Telemac Corp. v. Teledigital, Inc.*,
　　450 F. Supp. 2d 1107 (N.D. Cal. 2006) ................................................................8

*Universal Electronics, Inc. v. Universal Remote Control, Inc.*,
　　2013 U.S. Dist. LEXIS 64154 (C.D. Cal. 2013) ..........................................8, 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McKool Smith Hennigan, P. C.
Los Angeles, California

iii

Case No. 5:13-cv-01358-EJD

OPPOSITION TO MOTION TO STAY PENDING
INTER PARTES REVIEW

919851

*Viskase Corp. v. Am. Nat'l Can Co.*,
   261 F.3d 1316 (Fed. Cir. 2001) ..............................................................8

*Wireless Recognition Tech. v. A9.com Inc.*,
   2012 U.S. Dist. LEXIS 130159 (N.D. Cal. 2012) ..............................18

*Wordtech Sys., Inc. v. Microboards Mfg., LLC*,
   2010 U.S. Dist. LEXIS 47907 (N.D. Cal. 2010) ........................13, 20

*Yodlee, Inc. v. Ablaise Ltd.*,
   2009 U.S. Dist. LEXIS 5429 (N.D. Cal. 2009) ..........................12, 13

STATUTES

35 U.S.C. §§ 141(c) and 319 ..................................................................7, 21

35 U.S.C. §§ 316(a)(11) ................................................................................7

OTHER AUTHORITIES

4-11 *Chisum on Patents*, § 11.07[4][b][iv] ...........................................13

MCKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

## I.     INTRODUCTION

The Court should deny Defendants EMC Corporation's and VMware, Inc.'s motion to stay this action pending the outcome of the *inter partes* review ("IPR") proceedings before the U.S. Patent and Trademark Office ("PTO").

Each of the three factors considered by courts in deciding motions to stay patent infringement litigation pending PTO patent review weighs against a stay of this case.  First, as to the stage-of-the-proceedings factor, the substantial work already performed by the parties and the Court strongly militates against the granting of a stay.  As of the date of this Opposition, the parties and/or the Eastern District of Texas court from which this case was transferred have already produced substantial numbers of documents, they have briefed, argued , and ruled on multiple motions to transfer, and they have briefed, argued and decided in a memorandum opinion the claim constructions for the disputed claim terms in the pending cases.  By the time that this motion is actually argued and decided, which will not be before January 2014, the resources and time spent will certainly be much greater and will mean that this factor weighs even more against a stay.

Second, as to the simplification-of-the-issues factor, it is indisputable that the pending IPRs will not materially simplify this litigation against EMC and VMware, or any of the other three related cases also pending before this Court involving PersonalWeb's True Name patents.  This case involves eight patents, but only six of the patents are the subject of the IPRs.  Thus, even if all of the claims of the six patents that are the subject of the IPR are held invalid by the PTO (a highly unlikely outcome), the infringement claims from the other two patents will still be pending in this case and the IPR cannot possibly resolve them.  Although it is true that the pending PTO proceedings will foreclose EMC and VMware from asserting in this litigation any invalidity argument they did or could have presented before the PTO, none of the other defendants in the three related actions are similarly foreclosed (since

MᴄKᴏᴏʟ Sᴍɪᴛʜ Hᴇɴɴɪɢᴀɴ, P. C.
Lᴏs Aɴɢᴇʟᴇs, Cᴀʟɪꜰᴏʀɴɪᴀ

McKool Smith Hennigan, P.C.
Los Angeles, California

1  they have not initiated an IPR review).  Accordingly, for any claims that survive the

2  pending PTO IPR proceeding, the same invalidity challenges based on the same prior

3  art that is now the subject of review in the PTO will be the subject of this litigation

4  unless all defendants in all four related patent infringement actions stipulate

5  otherwise.

6       The third factor to consider is whether a stay would unduly prejudice or present

7  a clear tactical disadvantage to the non-moving party.  It would do both, as recounted

8  below.

9       Accordingly, PersonalWeb respectfully requests that the Court deny

10  Defendants' motion to stay.

11  **II.     STATEMENT OF FACTS**

12       **A.     The Asserted Patents**

13       Defendants devote more than two pages of their motion to stay to Defendants'

14  characterization of the patents-in-suit, the prior art, and the alleged invalidity of the

15  patents.  (Motion, at 3:1-5:4).  While PersonalWeb strongly disagrees with

16  Defendants' characterizations of the patents, the prior art, and the IPR proceedings,

17  PersonalWeb believes that those issues are beyond the scope of this motion to stay

18  and should instead be addressed at the proper time and in the proper proceedings.

19  Nevertheless, PersonalWeb's responses to Defendants' alleged invalidity contentions

20  are fully addressed in PersonalWeb's responses to the PTO's initial findings in

21  connection with each IPR, which PersonalWeb is submitting with this Opposition

22  brief.  (Exhs. 4 to 9 to the Block Decl.)

23       **B.     The Procedural Setting of This Litigation.**

24       PersonalWeb brought this lawsuit against EMC and VMWare on December 8,

25  2011, asserting infringement of eight patents: U.S. Patent Nos. 5,978,791 ("the '791

26  patent"); 6,415,280 ("the '280 patent"); 7,945,544 ("the '544 patent"); 7,945,539

27  ("the '539 patent"); 7,949,662 ("the '662 patent"); 8,001,096 ("the '096 patent");

28

2

6,928,442 ("the '442 patent"); and 7,802,310 ("the '310 patent") (collectively "the True Names Patents"). (Block Decl., ¶ 1). All eight asserted patents are related and claim priority to the same original application, meaning that all eight asserted patents contain essentially the same specification. (*Id.*)

One of the Defendants in this case, EMC, was admittedly aware of two of the patents-in-suit (the '280 and '791 patents) as of October 25, 2004 (Motion, at 5:6-9), long before the filing of this lawsuit, but, as discussed below, EMC did not request review of either patent until more than one year after this case was filed.

PersonalWeb originally filed the present action in the Eastern District of Texas along with a number of other actions involving one or more of the eight patents asserted in this action against the following defendants: NEC Corporation of America, Inc.; Google, Inc.; YouTube, LLC; NetApp, Inc.; Amazon.com, Inc.; Amazon Web Services LLC; DropBox, Inc.; Caringo, Inc.; Autonomy, Inc.; Hewlett-Packard Co.; HP Enterprise Services, LLP. (Block Decl., ¶ 2). Later, PersonalWeb filed additional cases in the Eastern District of Texas against Nexsan Technologies, Inc.; Yahoo! Inc.; Rackspace US, Inc.; Rackspace Hosting, Inc.; Apple Inc.; International Business Machines Corporation; Facebook, Inc.; and Microsoft Corporation. (*Id.*). All of these cases were ultimately assigned to Judge Davis. (*Id.*)

On March 21, 2013, Judge Davis conditionally ordered that this action, and three other of PersonalWeb's actions against: (1) Google, Inc. and YouTube, LLC; (2) NetApp, Inc.; and (3) Facebook, Inc. be transferred to the Northern District of California upon Judge Davis concluding the Court's *Markman* order and construing the claims. (Block Decl., ¶ 3). All four transferred cases were assigned to this Court, and transfer was affected on August 5, 2013, following entry of Judge Davis' claim construction order. (*Id.*)

Prior to the four cases being transferred to this Court, Judge Davis, on August 27, 2012, entered a Docket Control Order which applied to all of the cases before him,

OPPOSITION TO MOTION TO STAY PENDING
INTER PARTES REVIEW

MCKOOL SMITH HENNIGAN, P. C.
LOS ANGELES, CALIFORNIA

1   including these four cases recently transferred to this Court.  (E.D. Tx., Doc. No. 84,

2   Exh. 1 to Block Decl.).  In the Docket Control Order, Judge Davis set a fact discovery

3   deadline of January 22, 2014, an expert discovery deadline of April 30, 2014, and a

4   trial date of November 10, 2014.  (*Id.*)  Although Judge Davis' later-issued

5   Conditional Transfer Order vacates these dates as to the cases transferred to this

6   Court, the Conditional Transfer Order: (1) requires that the parties immediately

7   inform the transferee Court of the transfer becoming effective; (2) requires that the

8   parties request a scheduling conference for all future proceedings through trial; and

9   (3) states that the N.D. Cal. judge(s) to whom the cases will be transferred "will be

10  able to accommodate the cases' current trial dates, insofar as consistent with their own

11  schedules."  ((Block Decl., ¶ 5; E.D. Tx., Doc. No. 103, at 48; Exh. 2 to Block Decl.).

12        As of the date of this Opposition brief, the parties have conducted a significant

13  amount of discovery in this action.  EMC and VMWare have requested documents

14  from PersonalWeb and PersonalWeb has produced over 70,000 pages of documents to

15  them.  (Block Decl., ¶ 6).  Further, PersonalWeb has requested documents from EMC

16  and VMWare and EMC has separately produced over 11,000 pages of documents,

17  VMWare has separately produced over 13,000 pages of documents, and both EMC

18  and VMWare have jointly produced an additional 72,000 pages of documents,

19  including copies of the accused products and licenses and source code files.  (*Id.*)

20  Additionally, PersonalWeb has served its Disclosure of Asserted Claims and

21  Infringement Contentions pursuant to Eastern District Texas Patent Rule 3-1 and

22  Defendants have served their Invalidity Contentions pursuant to Eastern District

23  Texas Patent Rule 3-3.  (*Id.*)  By the time that this motion is heard ***nearly five months***

24  ***from now***, on January 10, 2014, this case will be even further along than it is now,

25  with additional discovery likely having been conducted, including depositions, and a

26  pre-trial schedule likely having been set by the Court.

27        The parties have fully briefed and argued the claim construction issues for

28

McKool Smith Hennigan, P.C.
Los Angeles, California

4

Case No. 5:13-cv-01358-EJD

OPPOSITION TO MOTION TO STAY PENDING
INTER PARTES REVIEW

919851

1   disputed terms contained in all eight patents-at-issue in this action.  (Block Decl., ¶ 7).

2   Judge Davis issued a claim construction order on August 5 construing the disputed

3   terms of these eight patents.  (*Id.*; Exh. 3 to Block Decl.).  Both PersonalWeb and

4   Defendants EMC and VMWare fully participated in the claim construction briefing

5   and argument before Judge Davis that resulted in Judge Davis' constructions.[1]  (*Id.*)

6   ### C.    The IPRs Filed by EMC and VMWare

7             More than one year after PersonalWeb filed the complaint in this action, EMC

8   and VMWare, on December 14, 2012, filed petitions with the PTO requesting *inter*

9   *partes* review ("IPR") of ***six of the eight*** asserted patents. See Ex. 6 to Hoecherl

10  Decl., ('791 IPR) (2013-00082) Dkt. 8, Petition for IPR; Ex. 8 to Hoecherl Decl.,

11  ('280 IPR) (2013-00083) Dkt. 6, Petition for IPR; Ex. 9 to Hoecherl Decl., ('539 IPR)

12  (2013-00085) Dkt. 5, Petition for IPR; Ex. 10 to Hoecherl Decl., ('544 IPR) (2013-

13  00084) Dkt. 3, Petition for IPR; Ex. 11 to Hoecherl Decl., ('662 IPR) (2013-00086)

14  Dkt. 3, Petition for IPR; Ex. 12 to Hoecherl Decl., ('096 IPR) (2013-0087) Dkt. 5,

15  Petition for IPR.  Thus, there are two patents asserted by PersonalWeb in this action

16  (the '442 patent and the '310 patent), which neither EMC or VMWare nor any other

17  party to any related action have filed any petitions for review with the PTO.  (Block

18  Decl., ¶8).

19            EMC's and VMWare's IPRs address every claim of six of the eight patents that

20  are asserted against EMC and VMWare in this action.  However, because

21  PersonalWeb did not assert the same patents and claims against every other

22  defendant, there are asserted patents and claims that are not the subject of any IPR

23  proceeding, but which are asserted against other Defendants in related cases.  (Block

24  Decl., ¶ 9).  The table below shows the patents and claims that PersonalWeb asserted

25
26  [1] Although Judge Davis recognized in his transfer order that this Court is not bound by
    his *Markman* opinion, he also stated that he is hopeful that the opinion will be helpful
27  to this Court.  (Conditional Transfer Order, at p. 47; Exh. 2 to Block Decl.)

28

McKool  Smith  Hennigan,  P. C.
Los Angeles, California

Case No. 5:13-cv-01358-EJD                          OPPOSITION TO MOTION TO STAY PENDING
                                                              INTER PARTES REVIEW
919851

against each of the Defendants in the four actions before this Court and shows the patents and claims that are the subject of the IPRs. (*Id.*) Claims that are asserted in the litigations, but are ***not*** the subject of any IPR, are emphasized and bolded in the table.

| Asserted Patent | Claims asserted in the IPR | Claims asserted against EMC and VMWare | Claims Asserted against NetApp | Claims Asserted against Google and YouTube | Claims Asserted against FaceBook |
|---|---|---|---|---|---|
| '791 patent | 1-4, 29-33, and 41 | 1-4, 29-33, and 41 | 1-3, 29, and *35* | 30, 31, 32, *35*, and 41 | 30, 31, 32, 33, and 41 |
| '280 patent | 36 and 38 | 36 and 38 | None | *10, 15, 16, 18, 25, 31, 32, and 33* | *10, 15, 16, 25, 31, and 32* |
| '539 patent | 10, 21, and 34 | 10, 21, and 34 | None | None | None |
| '544 patent | 1 | 1 | None | None | None |
| '662 patent | 30 | 30 | None | *25, 33* | None |
| '096 patent | 1, 2, 81, 83 | 1, 2, 81, 83 | None | 83, *84, 86, 87, 88, 97, 99, and 125* | None |
| '442 patent | None | *1, 2, 4, and 7* | None | *23, 27, 28, and 30* | None |
| '310 patent | None | *24, 32, 70, 81, and 86* | None | *1, 2, 5, 6, 7, 8, 10, 11, 12, 14, 16, 17, 18, 19, 70, 81, 82, and 86* | *70, 81, 82, and 86* |

McKool Smith Hennigan, P.C.
Los Angeles, California

6

To date, EMC VMWare and NetApp are the only defendants in any of the pending actions involving the True Names Patents to file a petition with the PTO for review of any of the asserted patents and the only party to seek a stay pending the review. (Block Decl., ¶ 10). None of the other defendants in any of the other actions has filed any petition before the PTO for review of any asserted patent or sought to stay any action. (*Id.*)

The PTO instituted all six IPRs on May 17, 2013. (Block Decl., ¶11). Between July 24 and August 6, 2013, PersonalWeb filed responses to the PTO's initial findings in connection with each IPR. (Exhs. 4 to 9 to the Block Decl.) Because the cases were pending before Judge Davis prior to the transfer to this Court on August 5, EMC and VMWare originally asked for leave from Judge Davis for permission to file a motion to stay pending the outcome of the IPRs. Yet EMC/VMWare inexplicably waited until July 11, 2013, nearly two months after the PTO instituted the IPRs, to seek from Judge Davis permission to file a motion to stay. (Block Decl., ¶ 11). Not surprisingly, Judge Davis never acted on EMC/VMWare's request because Judge Davis issued the Markman decision and transferred the case shortly after. (*Id.*)

By statute, the Board must issue its final decision on the IPR within one year after being instituted, i.e., by May 17, 2014, which can be extended for an additional six months (35 U.S.C. §§ 316(a)(11)). (Block Decl., ¶ 13). Additionally, any party to the IPR, i.e., PersonalWeb, EMC, or VMWare, who is dissatisfied with the decision of the Board may appeal the decision to the Federal Circuit. (35 U.S.C. §§ 141(c) and 319). (*Id.*)

## III.   ARGUMENT

### A.   Standards Applicable to Motions to Stay Litigation Pending Reexamination

A district court has the discretion to stay judicial proceedings pending reexamination of a patent. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed.

McKool   Smith   Hennigan,   P. C.
Los Angeles, California

Case No. 5:13-cv-01358-EJD

OPPOSITION TO MOTION TO STAY PENDING
INTER PARTES REVIEW

919851

Cir. 1988); *accord Amado v. Microsoft Corp.*, 517 F.3d 1353, 1358 (Fed. Cir. 2008). In exercising its authority to grant a stay, a court is given wide discretion to "weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936).

In determining whether to grant a stay pending reexamination, courts consider: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See, Athena Feminine Techs. Inc. v. Derek Wilkes*, 2012 U.S. Dist. LEXIS 57438, *5-6 (N.D. Cal. 2012) (*citing, Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1110 (N.D. Cal. 2006); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, Case No. 03-1431 SBA, 2007 U.S. Dist. LEXIS 44107, 2007 WL 1655625 at *3 (N.D. Cal. 2007))[2].

"A court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze." *Athena Feminine Techs.*, 2012 U.S. Dist. LEXIS 57438, *6 (*citing, NTP, Inc. v. Research in Motion, Ltd.*, 397 F. Supp. 2d 785, 787 (E.D. Va. 2005) and *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001)).  There is no per se rule that patent cases should be stayed pending reexaminations, because such a rule "would invite parties to unilaterally derail" litigation. *Athena Feminine Techs.*, 2012 U.S. Dist. LEXIS 57438, *6 (*citing,

---

[2] Although the *Athena Feminine Techs.* case involved an *inter partes* reexamination proceeding and the present action involves the newer *inter partes* review proceeding, the issue of whether to stay an *inter partes* review proceeding has been considered in light of the same framework applicable to stays of reexamination proceedings.  *See, e.g., Universal Electronics, Inc. v. Universal Remote Control, Inc.*, 2013 U.S. Dist. LEXIS 64154, *5-6 (C.D. Cal. 2013) (denying motion to stay pending *inter partes* review).

MᴄKᴏᴏʟ Sᴍɪᴛʜ Hᴇɴɴɪɢᴀɴ, P.C.
Lᴏs Aɴɢᴇʟᴇs, Cᴀʟɪғᴏʀɴɪᴀ

1    *Soverain Software LLC v. Amazon.Com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex.

2    2005)).

3         The party moving for the stay bears the burden of showing "a clear case of

4    hardship or inequity" in the case proceeding, "if there is even a fair possibility that the

5    stay . . . will work damage" on another party.  *Landis*, 299 U.S. at 255.  Here, both the

6    parties and the Court have expended sufficient resources and time on this case.

7    Granting a stay at this time will not simplify the issues and will unduly prejudice

8    PersonalWeb.  Further, Defendants have failed to demonstrate any hardship or

9    inequity from proceeding to trial.  Accordingly, EMC and VMWare's stay request

10   should be denied.

11        **B.    The Stage of these Proceedings Weighs in Favor of Denying a Stay**

12        The first factor – the stage of the proceedings – weighs against a stay in this

13   case.

14        Defendants contend that "Courts have repeatedly stayed cases with similar

15   procedural postures to the one here."  (Motion, at 11:24).  That statement does not

16   accurately describe the weight of applicable authority  Most courts in this judicial

17   district have denied stays in cases with similar procedural postures to the one here,

18   especially where the court has already construed the claims, thereby having already

19   expended significant resources and time.

20        For example, in *Interwoven, Inc. v. Vertical Computer Sys., Inc.*, 2012 U.S.

21   Dist. LEXIS 30946, *11-12 (N.D. Cal. 2012), the court denied a motion to stay where

22   the motion to stay had been filed at a time when the parties had exchanged documents

23   (except source code), served and responded to interrogatories, and fully briefed and

24   argued the issue of claim construction and received a claim construction order.  Under

25   these circumstances, the court held that: "Both the parties and the Court have

26

27

28

Case No. 5:13-cv-01358-EJD                                    OPPOSITION TO MOTION TO STAY PENDING
                                                                          INTER PARTES REVIEW
919851

McKool Smith Hennigan, P. C.
Los Angeles, California

1    expended sufficient resources and time to render a stay untenable at this time."[3]    In

2    this case, the parties have already exchanged documents, source code, and

3    infringement and validity contentions, brought a motion to transfer, and obtained a

4    claim construction order.  Even as of the date of this Opposition, this case is further

5    along than *Interwoven*, where the court denied the stay, and this case will certainly be

6    even further along five months from now when this motion is heard and decided by

7    the Court.

8         Similarly, in *Universal Electronics*, 2013 U.S. Dist. LEXIS 64154, *7-9, the

9    court denied a motion to stay, where, like the present case, the defendant did not file

10   its request for reexamination until almost a year after being served with the complaint,

11   the parties had served written discovery, the court had set a trial date,[4] the parties had

12   not yet served any electronic discovery, the parties had not noticed any depositions,

13   and the court had already construed the claims.  With respect to the fact that it had

14   already construed the claims, the court stated that: "[t]he Court's expenditure of

15   resources is an important factor in evaluating the stage of the proceedings" and held

16   that "this factor weighs against a stay."  *Id.*; *See also*, *Mike's Train House, Inc. v.*

17   *Broadway Limited Imports, LLC*, 2011 U.S. Dist. LEXIS 22224, *5-6 (D. Md. 2011)

18   ───────────────

19   [3] In deciding to transfer this case after having construed the claims, thereby preventing
     this Court from having to independently construe the claims, Judge Davis remarked

20   that "[t]he claim construction process is one of the most difficult and time-consuming
     aspects of a patent case.  Preparing for a *Markman* hearing and drafting the opinion

21   require considerable judicial time and energy."  (Exh. 2 to Block Decl, at p. 46).

22   [4] Defendants argue that the discovery and trial dates will need to be reset by this
     Court.  (Motion, at 11:17-19).  In the Order transferring this case, the E.D. Tex. Court

23   ordered the parties to seek a scheduling conference with this Court (which Defendants
     have requested) and the E.D. Tex. court states that it is hoped that the N.D. Cal.

24   judge(s) to whom the cases will be transferred "will be able to accommodate the

25   cases' current trial dates, insofar as consistent with their own schedules."  (Block

26   Decl., ¶ 5; E.D. Tx., Doc. No. 103, at 48; Exh. 2 to Block Decl.)

27

28

McKool Smith Hennigan, P.C.
Los Angeles, California

McKool Smith Hennigan, P. C.
Los Angeles, California

1   (denying motion to stay where litigation had been ongoing for 16 months, discovery

2   was underway, there was extensive motion practice, and all briefing was completed

3   on claim construction and a hearing set to occur in a month: "[t]he Court finds that the

4   parties' expenditures of time and resources and the immediate proximity of the

5   Markman hearing weigh against granting a stay, not in favor of it.")[5]

6       In *Soverain Software*, 356 F. Supp. 2d at 663, Judge Davis denied Amazon's

7   motion to stay where the trial date had been set, documents and source code produced

8   and discovery set to be completed within a month, and the claim construction issues

9   briefed, argued, and the court in the process of preparing a claim construction order.

10  In denying the motion to stay, Judge Davis stated that: "[g]iven the resources that the

11  parties and the Court have already invested in this case, staying the case, based solely

12  on speculation of what might possibly happen during reexamination, would be

13  inefficient and inappropriate." *Id.*; *See also*, *Imagevision.net, Inc. v. Internet Payment*

14  *Exchange, Inc.*, 2013 U.S. Dist. LEXIS 25015, *11-12 (D. Del. 2013) (denying

15  motion to stay where no trial date was set, discovery was ongoing, and a discovery

16  cutoff, the Markman proceedings and the case dispositive motions were looming "in

17  the near future").

18      Similar to the above cases where the courts denied motions to stay, in the

19  present case, discovery is ongoing, documents have been produced by both sides, a

20  trial date had been set with a new date soon to be set[6], and the claims have been

---

21  [5] Defendants may contend that they actually moved for leave to file their motion to
22  stay one week before the claim construction hearing and therefore the claims were not
    yet construed when they sought the stay.  Regardless, Defendants waited to act until
23  after all of the claim construction issues had been briefed and, under no circumstances
24  could the motion to stay have been fully briefed and decided before the Markman
    hearing occurred and the Court and the parties had expended resources and time to
25  construe the claims.

26  [6] As discussed above, the E.D. Texas court had set a trial date in this case for
27  November 10, 2014.  Although this date was vacated with the transfer to this Court,

28                                    11

construed by the E.D. Texas court.  These facts weigh against granting a stay, not in favor of it.

The Northern District of California cases cited by Defendants that granted a stay pending parallel patent office proceedings are all distinguishable, because they were decided under a different set of facts than those present here.  First, in *Convergence Techs. (USA), LLC v. Microloops Corp.*, 2012 U.S. Dist. LEXIS 51794 (N.D. Cal. 2012), the court, unlike the present case, had not heard claim construction and had not set a trial date. Further, in *Convergence*, all of the claims asserted by plaintiff in the litigation were subject to reexamination, whereas in the present case, fewer than all of the claims asserted by plaintiff in the litigation are subject to reexamination.  *Convergence*, 2012 U.S. Dist. LEXIS 51794, at *11.

Second, in *AT&T Intellectual Prop. I v. Tivo, Inc.*, 774 F. Supp. 2d 1049, 1052 (N.D. Cal. 2011), unlike the present case, the claim construction briefs had been filed, but the hearing had been vacated, no trial date had been set, and there was nothing to indicate that the defendants were aware of the patents-in-suit before the plaintiffs filed their complaint, whereas in the present case, at least one of the Defendants were aware of two of the patents-in-suit well before this case was filed.

Third, in *Yodlee, Inc. v. Ablaise Ltd.*, 2009 U.S. Dist. LEXIS 5429 (N.D. Cal. 2009), the case was far less advanced than the present case.  The court had not set a briefing schedule for claim construction or a trial date and the parties had not conducted any discovery. *Id.*, at *9-10.  Further, unlike the present case, the only issue in the case was the validity of the claims of one patent, which was precisely the issue

---

the transfer Order states that it is hoped that the N.D. Cal. judge(s) to whom the cases will be transferred "will be able to accommodate the cases' current trial dates, insofar as consistent with their own schedules."  (Block Decl., ¶ 5; E.D. Tx., Doc. No. 103, at 48; Exh. 2 to Block Decl.)

before the PTO.  *Id.*, at *13.[7]

Accordingly, in this case, the stage of the proceedings weighs against a stay.

## C.    The Fact that Reexamination Will Not Substantially Simplify the Issues Weighs Against a Stay

The second factor – whether the stay will simplify the issues in question and trial of the case – also weighs against a stay in this case.

Courts in the Northern District of California have held that "[t]o truly simplify the issues … the outcome of the reexamination must finally resolve all issues in the litigation."  *Athena Feminine Techs.*, 2012 U.S. Dist. LEXIS 57438, at *8 (*quoting*, *Yodlee*, 2009 U.S. Dist. LEXIS 5429).  "If regardless of the result of the reexamination, there are still claims or counterclaims that need to be resolved by the Court, then reexamination clearly fails to provide a final resolution."  *Id.* (*quoting*, *Yodlee*, 2009 U.S. Dist. LEXIS 5429 (*citing IMAX Corp. v. In-Three, Inc.* 385 F. Supp. 2d 1030, 1032-1033 (C.D. Cal. 2005)); *Wordtech Sys., Inc. v. Microboards Mfg., LLC*, 2010 U.S. Dist. LEXIS 47907, at *4-5 (N.D. Cal. 2010).  A stay is "less likely to be granted if the litigation involves a preponderance of issues that the reexamination will not resolve or that lie outside the PTO's expertise."  4-11 *Chisum on Patents*, § 11.07[4][b][iv], pp. 11-740 - 11-746 (2012).

Here, reexamination will fail to provide a final resolution to the present action.

[7] Cases cited by Defendants from other jurisdictions are also distinguishable.  For example, in *Emsat Advanced v. T-Mobile USA, Inc.*, 2011 U.S. Dist. LEXIS 23327 (E.D. Ohio 2011), the case was not as advanced as the present case, because the court had extended discovery cut-off dates and no trial date had been set.  *Id.*, at *7.  In *Motson v. Franklin Covey Co.*, 2005 U.S. Dist. LEXIS 34067, *4 (D.N.J. 2005), the court granted the stay where no trial date had been set.  Lastly, in *Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, 2004 U.S. Dist. LEXIS 16812 (D. Ia. 2004), the court held that the fact that discovery was complete, summary judgments were pending, and a trial date set weighed against granting a stay, however, other factors, when weighed against the late stage of the proceedings, caused the court to exercise its discretion to grant the stay.  *Id.*, at *19.

MCKOOL SMITH HENNIGAN, P. C.
LOS ANGELES, CALIFORNIA

13

1   First, in this action, Defendants are charged with infringement of eight patents, but

2   have only filed IPRs for six of those eight patents.  Thus, even if all of the claims of

3   the six patents are finally held to be invalid in the IPR proceeding, the Court will still

4   be required to adjudicate the infringement and validity issues for the two remaining

5   patents (the '442 and '310 patents) that were not the subject of the IPR proceedings.

6   Defendants themselves acknowledge the need for the Court to resolve the remaining

7   two patents even if Defendants prevail on every claim of the patents that are subject to

8   the IPR by stating that the remaining issues regarding the '442 and '310 patents could

9   be addressed through a summary judgment motion.  (Motion at 14:20-22).[8]  This fact

10  weighs heavily against a stay.  *See, e.g., Athena Femine Techs.*, 2012 U.S. Dist.

11  LEXIS, at *8-9; *Esco Corp. v. Berkeley Forge & Tool, Inc.*, 2009 U.S. Dist. LEXIS

12  94017, *8-9 (N.D. Cal. 2009) ("[Given] the possibility that some claims may have to

13  be litigated notwithstanding reexamination, the Court concludes that the second factor

14  weighs against a stay."); *Kilopass Tech. Inc. v. Sidense Corp.*, 2011 U.S. Dist. LEXIS

15  157267, *8 (N.D. Cal. 2011) ("the patent infringement claims will only be finally

16  resolved if the PTO denies all of the claims in all three patents.  'Staying the case as

17  to the three patents in reexamination is not nearly as likely to significantly simplify . .

18  . litigation as much as [do] stays issued in . . . single patent cases.'") (*quoting,*

---

19  [8] Defendants state that the reason why they did not file IPRs for the '310 and '442

20  patents is "the substantial costs associated with filing an IPR petition."  (Motion, at
    15:10-12).  Since all eight of  the asserted patents share a common specification

21  (including the '310 and '442 patents for which IPRs were not filed), it is not credible

22  that the incremental cost of eight versus six IPR's was the reason EMC, with all its
    financial resources, did not file IPRs for the '310 and '442 patents.  Regardless,

23  Defendants engage in pure speculation when they assume that the remaining issues

24  involving the '310 and '442 patents could be addressed through summary judgment
    motions following successful IPRs on the other six patents.  It could just as likely

25  require a trial, which is why the requested stay, if granted, will not materially simplify

26  this case.

27

28

MCKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

14

MᴄKᴏᴏʟ  Sᴍɪᴛʜ  Hᴇɴɴɪɢᴀɴ , P . C .
Lᴏs  Aɴɢᴇʟᴇs , Cᴀʟɪғᴏʀɴɪᴀ

*Network Appliance, Inc. v. Sun Microsystems, Inc.*, 2008 U.S. Dist. LEXIS 107840, 2008 WL 2168917, *3 (N.D. Cal. 2011)); *Imagevision.Net, Inc. v. Internet Payment Exchange, Inc.*, 2013 U.S. Dist. LEXIS 25015, *14-15 (D. Del. 2013) (holding that the fact that issues will remain following reexamination that only a court can address, such as infringement and validity under Section 112, weighs against stay).[9]

Further, the IPRs will not simplify any of the other three actions currently pending before this Court, each of which involves some of the patents subject to the IPR, as shown in the table on page 6, *supra*.  Except for NetApp, none of the other defendants in any of the three other actions have filed motions to stay of their own or have joined this Motion.  Therefore, even if this action is stayed, at least two other actions currently before this Court will proceed.  Additionally, because the IPRs address only the claims of the six patents asserted against the Defendants in this action, and because other claims were asserted in the other three actions pending before this Court, (as shown in the Table on page 6, *supra*), even if the IPRs result in some or all of the claims being held invalid, these other claims must be addressed in these other actions, even if the IPRs result in the invalidity of the claims subject to the IPR for all six patents.  These facts also weigh heavily against a stay.  *See, e.g., Athena Femine Techs.*, 2012 U.S. Dist. LEXIS, at *8-9; *Esco Corp.*, 2009 U.S. Dist. LEXIS 94017, *8-9.

Defendants further argue that PersonalWeb should not be concerned about a

---

[9] Defendants argue that the Court should stay this action as to all patents-at-issue, including the '442 and '310 patents that are not the subject of any IPR.  This was not the result in *Lifescan, Inc. v. Shasta Technologies, LLC*, 2013 U.S. Dist. LEXIS 38473, *7-8, 10 (N.D. Cal. 2013), a case decided by this Court.  In *Lifescan*, there were three patents-in-suit, but only two of the patents were the subject of reexamination proceedings.  The Court stayed the litigation as to the two patents that were the subject of the reexamination (because of the early stage of the proceedings, including the fact that no claim construction hearing held been held), but not as to the third patent that was not subject to the reexamination.  *Id.*

15

stay in this case creating a "dual track" situation with the other three cases pending before this Court. (Motion, at 13, n 10). "Dual track" litigation is a legitimate concern to PersonalWeb, not only because of the additional time and expense for the Court and the parties of litigating the same or similar issues in two proceedings, but also the tactical advantage that Defendants in this case could obtain by: (1) being able to learn from the positions taken by other parties in the other pending actions and modifying arguments later when the same issues are litigated in this case following the stay; and (2) reducing or eliminating the estoppel effect of the IPR proceedings. *See, Pi-Net Int'l, Inc. v. The Hertz Corp.*, 2013 U.S. Dist. LEXIS 81570 (C.D. Cal. 2013) ("'[t]he estoppel effect of *inter partes* review carries less weight when there are several defendants that are not parties to, and thus are not bound by, the estoppel effects of the proceeding.'") (*quoting, Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, 2012 U.S. Dist. LEXIS 186322, *6-7 (C.D. Cal. 2012)). Further, the *Pi-Net* case, relied on by Defendants (Motion, at 13, n 10) does not support Defendants' argument that PersonalWeb "should not be concerned" about a stay in this case creating "dual track" litigation. In *Pi-Net*, 2013 U.S. Dist. LEXIS 81570, the court did not proceed with "dual track" litigation. Instead, the court stated that it could use its inherent power to manage its own docket to stay the other nine cases. *Pi-Net*, 2013 U.S. Dist. LEXIS 81570, at *12-13. Here, the solution to avoid "dual track" litigation is not to stay all of the cases, but rather to not stay any of them.

Defendants also contend that a stay will simplify the issues, because the PTO has already instituted the IPR proceedings for all six patents-at-issue, and therefore it "is likely that the PTO will cancel or modify all of these claims." (Motion, at 14:15-16). Defendants cite no historical statistics or other evidence to support their speculation as to what the outcome of the IPR proceedings will be.[10] Regardless, the

---

[10] The IPR procedure utilized in this case is new and statistics do not yet exist showing

Case No. 5:13-cv-01358-EJD

OPPOSITION TO MOTION TO STAY PENDING
INTER PARTES REVIEW

919851

McKool Smith Hennigan, P.C.
Los Angeles, California

fact that some claims may be modified or cancelled as a result of the IPR proceeding is insufficient to weigh in favor of a stay. For example, Judge Davis recently rejected the same argument being advanced by Defendants here and held that the possibility of issue simplification is not persuasive merely because some claims may change in reexamination:

> While reexamination would substantially simplify this case if the PTO finds that all allegedly infringed claims of any of the patents are cancelled, this historically happens in only 12% of reexaminations requested by a third party. The unlikelihood of this result, which favors not staying the case, is offset by the possibility that some of the claims may change during reexamination, which favors staying the case. Although there may be circumstances that warrant a stay, the Court is unwilling to adopt a per se rule that patent cases should be stayed during reexamination because some of the relevant claims may be affected. To do so would not promote the efficient and timely resolution of patent cases, but would invite parties to unilaterally derail timely patent case resolution by seeking reexamination. *Some of the claims may change in this case, but the Court is of the opinion that the interests of justice will be better served by dealing with that contingency when and if it occurs, rather than putting this case indefinitely on hold*. Firm trial settings resolve cases and reduce litigation costs. Accordingly, the possibility of issue simplification is not sufficiently persuasive in this case.[11]

---

historical outcomes in such proceedings. PTO statistics for the similar *inter parte* reexamination proceedings from 1999 to November 30, 2012 show that, of the 398 reexamination certificates issued during that time, 11% had all claims confirmed, 42% had all claims cancelled, and 40% had some claim changes. (Block Decl., ¶ 14; Exh. 10 to Block Decl.).

[11] *See also*, *Esco Corp.*, 2009 U.S. Dist. LEXIS 94017, *8-9 ("[t]hough the statistical information presented suggests that reexamination may, at least, change the landscape as to *some* claims, the Court is not convinced that reexamination necessarily will resolve *all* of the claims in dispute." [emphasis in original]); *Kilopass Tech.*, 2011

McKool Smith Hennigan, P.C.
Los Angeles, California

OPPOSITION TO MOTION TO STAY PENDING
INTER PARTES REVIEW

1   *Soverain Software*, 356 F. Supp. 2d at 662-63 (emphasis added); *See also*, *Kilopass*

2   *Tech.*, 2011 U.S. Dist. LEXIS 157267, *8-9 ("The Court agrees with Network

3   Systems that staying a case even in its early stages pending reexamination does not

4   necessarily lead to "the just, speedy, and efficient management of the litigation, but

5   instead has tended to prolong it without achieving sufficient benefits in simplification

6   to justify the delay. This . . . stems in part from the unpredictable but often lengthy

7   duration of the stay due to the length of PTO reexamination proceedings . . . in

8   contrast to the salutary effect of firm deadlines on efficient case management.")

9   (*quoting*, *Network Applicance*, 2008 U.S. Dist. LEXIS 76717, *10).

10       The cases relied on by Defendants in their Motion were decided under different

11   facts than those of the present case, and therefore they are distinguishable.  For

12   instance, in *Wireless Recognition Tech. v. A9.com Inc.*, 2012 U.S. Dist. LEXIS

13   130159, *10-11 (N.D. Cal. 2012) the PTO had already issued a final rejection of all

14   claims.  Here, the PTO has only issued its decisions to institute the IPR proceeding,

15   which is not a final rejection of any claims.  In *Convergence*, 2012 U.S. Dist. LEXIS

16   51794, at *10, all of the claims asserted by plaintiff in the litigation were subject to

17   reexamination, whereas in the present case, fewer than all of the claims asserted by

18   plaintiff in the litigation are subject to reexamination.  In *Robert Bosch Healthcare*

19   *Sys., Inc. v. Cardiocom, LLC*, 12-CV-03864-EJD, ECF 43 (N.D. Cal. 2012), this

20   Court issued the stay before even issuing a scheduling order or setting a claims

21   construction hearing or trial date.  Further, the Court's reasoning that any outcome in

22

---

23   U.S. Dist. LEXIS 157267, at *9 ("Defendant's argument that 89% of *inter partes*

24   reexaminations result in cancellation or modification of the claims seems to indicate
     that the PTO is predictable. However, only 47% of *inter partes* reexaminations

25   resulted in the PTO canceling or disclaiming all of the claims. [citation omitted].
     Following defendant's reasoning, the probability that the PTO will deny all of the

26   claims in all three of the patents is actually only about 10% (.47^3), undermining
     defendant's argument that litigation will be resolved by the PTO's decision.")

27

28

McKool Smith Hennigan, P.C.
Los Angeles, California

18

1   the reexamination would simplify the case essentially creates the *per se* rule that

2   patent cases should be stayed reexamination that Judge Davis sought to avoid in

3   *Soverain Software*, 356 F. Supp. 2d at 662.

4       Accordingly, the second factor – whether reexamination will simplify the issues

5   – weighs against a stay in this case.

6       **D.**    **The Fact that PersonalWeb Will Suffer Undue Prejudice and a Clear**

7                 **Tactical Disadvantage Weighs Against a Stay**

8       The third factor – whether PersonalWeb will suffer undue prejudice and a clear

9   tactical disadvantage – also weighs against a stay in this case.

10       Defendants make three arguments as to why the prejudice-to-PersonalWeb

11   factor favors granting a stay, but these arguments are unpersuasive.  First, Defendants

12   contend that PersonalWeb cannot claim prejudice "given its delay in seeking to

13   enforce its patent rights." (Motion, at 16:5-6)  Defendants, however, ignore the facts

14   that demonstrate their own tactical delay in filing the reexamination and in filing this

15   motion: (1) Defendant EMC was aware of two of the patents in suit in October, 2004

16   (See, Motion, at 5:6-9); (2) Defendants were sued on December 8, 2011, but waited

17   for more than one year, until December 14, 2012, to file their IPRs; and (3) the PTO

18   issued its orders instituting the IPRs on May 17, 2013.  *Imagevision.net, Inc.,* 2013

19   U.S. Dist. LEXIS 25015, *17 ("[a] request for reexamination made well after the

20   onset of litigation followed by a subsequent request to stay may lead to an inference

21   that the moving party is seeking an inappropriate tactical advantage.") (*quoting*,

22   *Belden Techs. Inc. v. Superior Essex Comms. LP, C.A.*, 2010 U.S. Dist. LEXIS 90960

23   (D. Del. 2010); *Mike's Train House*, 2011 U.S. Dist. LEXIS 22224 ("Perhaps more

24   telling, however, is the fact that Defendant waited more than a year after this case

25   began to request reexamination. Other courts have found, and this Court agrees, that

26   an 'inexplicable or unjustified' delay in requesting reexamination suggests a tactical

27   motive, which is itself grounds for denying a stay.") (*quoting*, *Ecolab, Inc. v. FMC*

28

        OPPOSITION TO MOTION TO STAY PENDING
INTER PARTES REVIEW

919851

McKool Smith Hennigan, P.C.
Los Angeles, California

1   *Corp.*, 2007 U.S. Dist. LEXIS 39189 (D. Minn. 2007)).[12]

2        Second, Defendants contend that PersonalWeb cannot claim any undue

3   prejudice if Defendants were to continue selling the accused products during the stay.

4   (Motion, at 16:1-13).  While Defendants are correct that there is no direct competition

5   between PersonalWeb and Defendants, Defendants ignore the fact that any delay

6   caused during a stay of this case pending the IPRs will unduly prejudice

7   PersonalWeb's ability to protect its property rights in the patents at issue, *i.e.*,

8   PersonalWeb will be unable to enforce its patents or obtain licenses during the stay.

9   *See Soverain Software*, 356 F. Supp. 2d at 662 (denying stay where "[p]ostponing trial

10  pending reexamination a year into the case and only six months prior to trial would

11  unduly prejudice Soverain's ability to protect its property rights in the patents in

12  issue.").

13       Third, Defendants argue that any prejudice due to delay is reduced in the new

14  IPR procedure compared to the old *inter partes* reexamination procedure, because the

15  PTO must issue a written final decision in the new IPR proceeding within twelve to

16  ————————————————————————

17  [12] *See also, Affinity Labs*, 2010 U.S. Dist. LEXIS 50974, *6 ("Affinity sued Apple in
    March, 2009 and in August, 2009, Apple successfully transferred this case to the

18  Northern District of California because of the convenience of trying the case here as
    opposed to the Eastern District of Texas. Apple then waited until November, 2009 to

19  file its request for an *inter partes* reexamination and, once that request was granted in
    February, 2010, it waited another seven weeks to file the instant motion to stay.

20  Overall, these significant delays weigh heavily against granting the stay."); *Wordtech*,
    2010 U.S. Dist. LEXIS 47907, *6 ("the Court notes that although defendants have

21  been aware of plaintiff's infringement claims since at least August 2008 . . .
    defendants did not seek reexamination until December 2009.  Defendants fail to

22  explain this delay."); *Esco Corp.*, 2009 U.S. Dist. LEXIS 94017, *10-11 (in case
    where defendant learned of infringement allegation in June 2008, plaintiff filed the

23  case in April 2009, defendant filed the request for reexamination filed in May 2009,
    the PTO issued its first office action in June 2009, and defendant filed its motion to

24  stay in July 2009, the court held: "the record lends credence to Plaintiff's assertion

25  that Defendant is attempting to use the reexamination process in order to gain a
    tactical advantage in the litigation.")

26

27

28                                          20

McKool Smith Hennigan, P. C.
Los Angeles, California

McKool Smith Hennigan, P. C.
Los Angeles, California

eighteen months.  (Motion, at 16:14-16).  Defendants' recitation of the time required to resolve the IPRs is misleading, however, because they do not include the time required for an appeal to the Federal Circuit.  Under 35 U.S.C. §§ 141(c) and 319, any party may appeal the final written decision in an IPR to the Federal Circuit, and therefore, regardless of whether the outcome of IPR is in favor of PersonalWeb or Defendants, an appeal is likely.  An appeal to the Federal Circuit can be expected to add at least another year to the length of the stay.  Thus, as stated by the court in *Interwoven*, 2012 U.S. Dist. LEXIS 30946, *9, a stay after claim construction is unreasonable and will put PersonalWeb, the non-moving party, at a tactical disadvantage due to the possible loss of evidence and witness memories:

> Evidence, witness availability, and memory concerning the pertinent timeframe will likely become more stale and difficult to retrieve as time passes.  In short, adding additional years onto a case already past the claim construction stage is unreasonable and would place [PersonalWeb] at a tactical disadvantage.

Accordingly, the third factor – whether PersonalWeb will suffer undue prejudice and a clear tactical disadvantage – also weighs against a stay in this case.

### E.      Defendants Have Failed to Carry Their Burden of Demonstrating a Clear Case of Hardship or Inequity in Finishing This Litigation

The party moving for a stay bears the burden of showing "a clear case of hardship or inequity" in the case proceeding, "if there is even a fair possibility that the stay . . . will work damage" on another party.  *Landis*, 299 U.S. at 255; *Sunbeam Prods. v. Hamilton Beach Brands, Inc.*, 2010 U.S. Dist. LEXIS 45654 at *15 (E.D. Va. 2010).  Defendants have failed to meet their burden of showing a clear case of hardship or inequity in completing this litigation, and, in fact, Defendants make no argument at all that they will be prejudiced by going forward with this suit.  Regardless, courts have held that, "'being required to defend a suit, without more,

1  does not constitute a "clear case of hardship or inequity" within the meaning of

2  *Landis*.' . . . The mere fact that this action will go forward, and that litigating it will

3  cost money, is an insufficient reason to warrant a stay." *Sunbeam*, 2010 U.S. Dist.

4  LEXIS 45654, at *14 (citation omitted). *Accord, ePlus, Inc. v. Lawson Software, Inc.*,

5  2010 U.S. Dist. LEXIS 31322, at *14 (E.D. Va. 2010).

6  **IV.   CONCLUSION**

7      As shown above, each of the three factors for granting a stay pending

8  reexamination weighs in favor of denying the stay.  Accordingly, for all the reasons

9  stated above, PersonalWeb respectfully requests that Defendants' motion for stay be

10 denied.

11 DATED:    August 27, 2013          MCKOOL SMITH HENNIGAN, P.C.

12

13

14                                   By: */s/ Lawrence M. Hadley*
                                        Lawrence M. Hadley

15                                   RODERICK G. DORMAN (SBN 96908)
16                                   rdorman@mckoolsmithhennigan.com
                                     LAWRENCE M. HADLEY (SBN 157728)
17                                   lhadley@mckoolsmithhennigan.com
                                     ALAN P. BLOCK (SBN 143783)
18                                   ablock@mckoolsmithhennigan.com
                                     JEFFREY HUANG (SBN 266774)
19                                   jhuang@mckoolsmithhennigan.com
                                     MCKOOL SMITH HENNIGAN, P.C.
20                                   865 South Figueroa Street, Suite 2900
                                     Los Angeles, California 90017
21                                   Telephone:   (213) 694-1200
                                     Facsimile:   (213) 694-1234

22                                   THEODORE STEVENSON III
23                                   tstevenson@mckoolsmith.com
                                     MCKOOL SMITH, P.C.
24                                   300 Crescent Court Suite 1500
                                     Dallas, Texas 75201
25                                   Telephone:   (214) 978-4000
                                     Facsimile:   (214) 978-4044

26                                   Attorneys for Plaintiff, PERSONALWEB
                                     TECHNOLOGIES, LLC.

27

28                                   22

MCKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 27, 2013 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. Any other counsel of record will be served by electronic mail, facsimile, U.S. Mail and/or overnight delivery.

/s/ Lawrence M. Hadley

Case No. 5:13-cv-01358-EJD                                    CERTIFICATE OF SERVICE
919851

McKool Smith Hennigan, P.C.
Los Angeles, California