UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case Nos.: 5:13-CV-01356-EJD; 5:13-CV-01358-EJD; 5:13-CV-01359-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO STAY; DENYING FACEBOOK'S MOTION TO DISMISS** |
| PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>EMC CORPORATION AND VMWARE, INC.,<br><br>Defendants. | |
| PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>NETAPP, INC.,<br><br>Defendant. | |

Presently before the court in these three related patent infringement actions are Defendants EMC Corporation and VMware, Inc., NetApp, Inc., and Facebook, Inc.'s (collectively, "Defendants") respective Motions to Stay. Case No. 13-cv-1356, Dkt. No. 29; Case No. 13-cv-

1

Case Nos.: 5:13-CV-01356-EJD, 5:13-CV-01358-EJD, 5:13-CV-01359-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO STAY; DENYING FACEBOOK'S MOTION TO DISMISS

1358, Dkt. No. 8; Case No. 13-cv-1359, Dkt. Nos. 7, 151. Plaintiffs Personal Web Technologies, LLC and Level 3 Communications, LLC (collectively, "Plaintiffs") oppose these motions. Case No. 13-cv-1356, Dkt. No. 33; Case No. 13-cv-1358, Dkt. No. 16; Case No. 13-cv-1359, Dkt. No. 149. Also before the court is Facebook's Motion to Dismiss for Lack of Subject Matter Jurisdiction. Case No. 13-cv-1356, Dkt. No. 38. The court found these matters suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and previously vacated the hearing. Having considered the parties' briefing and for the reasons set forth below, the court GRANTS the Motions to Stay and DENIES Facebook's Motion to Dismiss.

## I.   MOTIONS TO STAY

### a.   BACKGROUND

#### i.   Procedural History

The instant matters are three of a suite of twelve patent infringement lawsuits against twenty-one separate defendants originally filed by Plaintiffs in the Eastern District of Texas from December 2011 to September 2012. The cases, which were initially assigned to Judge Leonard Davis, allege that each defendant infringes one or more claims of at least one of eight U.S. patents: U.S. Patent Nos. 5,978,791 ("the '791 patent"), 6,415,280 ("the '280 patent"), 7,945,539 ("the '539 patent), 7,945,544 ("the '544 patent"), 7,949,662 ("the '662 patent"), 8,001,096 ("the '096 patent"), 6,928,442 ("the '442 patent"), and 7,802,310 ("the '310 patent"). The defendants in these three cases—Facebook, EMC, VMware, and NetApp—as well as defendants in a fourth case, Google and YouTube, moved to transfer to the Northern District of California. Judge Davis conditionally granted these motions, but retained the cases until completion of the Markman hearing and the issuance of that court's claim construction order. See Case No. 13-cv-1356, Dkt. No. 1. Thereafter, on August 8, 2013, the four cases were transferred to this district and assigned to this court. See Case No. 13-cv-1356, Dkt. No. 3.

While these cases were still pending in the Eastern District of Texas, Defendants EMC and VMware filed petitions with the United States Patent and Trademark Office ("PTO") requesting inter partes review ("IPR") of six of the patents asserted against them, namely, the '791 patent, the

1  '280 patent, the '544 patent, the '539 patent, the '662 patent, and the '096 patent. See Declaration
2  of Cortney C. Hoecherl ISO Mtn to Stay, Exs. 6, 8-12, Case No. 13-cv-01358, Dkt. No. 8-2.  The
3  PTO instituted all six IPRs on May 17, 2013 and will presumably issue a final decision on each by
4  no later than May 17, 2014. See Case No. 13-cv-01358, Dkt. No. 8-2, Exs. 13-18.  More recently,
5  defendants in several of the remaining Eastern District of Texas cases filed petitions for IPR of
6  additional claims of these patents, as well as of the '310 patent. See Declaration of Reuben H. Chen
7  ISO Facebook's Mtn to Stay, Exs. D-G, Case No. 13-cv-01356, Dkt. No. 29-1.  In addition,
8  NetApp filed a request for ex parte reexamination of claim 35 of the '791 patent, which the PTO
9  granted on December 6, 2013. See Case No. 13-cv-01359, Dkt. No. 169, Ex. A.  The following
10 table sets forth the patents and claims asserted against each defendant in these three cases, as well
11 as the relevant patents and claims potentially subject to PTO review:

| Patent | Claims Subject to EMC and VMWare IPRs | Claims Subject to Ex Parte Reexam | Claims Asserted in Third Party IPR Petitions | Claims Asserted Against EMC and VMWare | Claims Asserted Against NetApp | Claims Asserted Against Facebook |
|---|---|---|---|---|---|---|
| '791 | 1-4, 29-33, 41 | 35 |  | 1-4, 29-33, 41 | 1-3, 29, 35 | 30-33, 41 |
| '280 | 36, 48 | None | 10, 15-16, 18, 25, 31-33, 36, 38 | 36, 48 | None | 10, 15-16, 25, 31-32 |
| '539 | 10, 21, 34 | None | None | 10, 21, 34 | None | None |
| '544 | 1 | None | None | 1 | None | None |
| '662 | 30 | None | None | 30 | None | None |
| '096 | 1, 2, 81, 83 | None | None | 1, 2, 81, 83 | None | None |
| '442 | None | None | None | 1, 2, 4, 7 | None | None |
| '310 | None | None | 1, 2, 5-8, 10-12, 14, 16-19, 24, 29, 32, 70, 81-82, 86 | 24, 32, 70, 81, 86 | None | 70, 81-82, 86 |

3
Case Nos.: 5:13-CV-01356-EJD, 5:13-CV-01358-EJD, 5:13-CV-01359-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO STAY; DENYING FACEBOOK'S
MOTION TO DISMISS

As this table reflects, every claim asserted against NetApp is subject to some form of PTO review, every claim asserted against Facebook is subject or potentially subject to IPR, and all but four claims against EMC and VMware are subject or potentially subject to IPR. On this basis, each of these defendants have moved to stay the case against them pending final resolution of the relevant PTO proceedings.

### ii. IPR Procedure

IPR is a relatively new procedure introduced by the Leahy-Smith America Invents Act ("AIA") through which the PTO's Patent Trial and Appeal Board ("PTAB") may review the patentability of one or more claims in a patent. See Pub. L. No. 112–29, § 6(a), 125 Stat. 284, 299–304 (2011), codified at 35 U.S.C. §§ 311–319 (2013). This mechanism replaces the previous inter partes reexamination procedure and converts the process from an examinational to an adjudicative one. See Abbot Labs. v. Cordis Corp., 710 F.3d 1318, 1326 (Fed. Cir. 2013) (quoting H.R. Rep. No. 112-98, pt. 1, at 46-47 (2011)). Under this new procedure, any party other than the patent owner may file a petition to institute IPR in order to establish that the identified claims are invalid under 35 U.S.C. §§ 102 and/or 103. 35 U.S.C. §§ 311(a)-(b). The petitioner must rely "only on…prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). The patent owner may file a preliminary response "setting forth the reasons why no inter partes review should be instituted" within three months of the petition, or may expedite the proceeding by waiving the preliminary response. 37 C.F.R. § 42.107(a)-(b). The PTO must decide whether to institute IPR within three months of the patent owner's preliminary response, or in the event no response is filed, by the last date on which the response could have been filed. 35 U.S.C. § 314(b).

If the PTO institutes IPR, the proceeding is conducted before a panel of three technically-trained Administrative Patent Judges of the newly-formed PTAB. See 35 U.S.C. §§ 6(a)-(c), 311. The parties are permitted to take limited discovery and respond to each other's arguments; they also have the right to an oral hearing. 35 U.S.C. §§ 316(a). The PTAB must, under most circumstances, issue its final determination within one year of the institution date. 37 C.F.R. §

42.100(c). After receiving a final determination from the PTAB, the parties have the option to appeal to the Federal Circuit. 35 U.S.C. §§ 141(c), 319.

In enacting the AIA, Congress sought "to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs" and "to create a timely, cost-effective alternative to litigation." Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents, 77 Fed. Reg. 48680-01 (Aug. 12, 2012) (codified at 37 C.F.R. §§ 42.100 et seq.). To that end, IPR affords at least three advantages to the parties and the district court in any corollary civil action. First, IPR provides a path to receive expert guidance from the PTO under a more accelerated timeline than the previous inter partes reexamination procedure: petitioners must file for IPR within one year of being served with a patent infringement complaint (35 U.S.C. § 315(b)) and IPR, if instituted, will typically conclude within 18 months of the filing date. In contrast, the average time from filing to conclusion of the previous inter partes reexamination procedure ranged from 28.9 to 41.7 months. 77 Fed. Reg. 48680-01 at 48721. Second, the decision to institute IPR signals that at least one of the subject claims may be modified or cancelled. See 35 U.S.C. § 314(a) (requiring "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition" in order for IPR to be instituted). This new threshold requirement presents a more stringent standard than the previous "substantial new question of patentability" and thus provides some assurance that the delay suffered as a result of IPR will be worthwhile. Third, IPR imposes an estoppel requirement that precludes the petitioner from asserting invalidity, during a later civil action, "on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2). This critical limitation results in a more streamlined litigation and reduces the likelihood of inconsistent judgments.

In fiscal year 2013, the PTO instituted IPR on approximately 82.3% of the petitions it received. See "AIA Progress Statistics," available at www.uspto.gov/ip/boards/bpai/stats/aia_ statistics_ 01_02_2014.pdf  (last accessed Jan. 10, 2014). Given that this procedure has only been

available for fourteen months, reliable statistics regarding the final outcomes of IPR, e.g. the percentage of claims cancelled or modified, are not yet available.

### b. LEGAL STANDARDS

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). A stay may be "particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were cancelled in the reexamination, would eliminate the need to try the infringement issue." In re Cygnus Telecomms. Tech., LLC Patent Litig., 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005). In this district, "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings," (ASCII Corp. v. STD Entm't USA, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)), though some courts have begun to rethink that policy in recent years (see, e.g., Network Appliance Inc. v. Sun Microsystems Inc., No. 07-cv-06053, 2008 WL 2168917 at *3 (N.D. Cal. May 23, 2008)).

Courts traditionally consider three main factors in determining whether to stay a case pending reexamination: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." Telemac Corp. v. Teledigital, Inc., 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006) (citation omitted). "While the case law states several general considerations that are helpful in determining whether to order a stay, ultimately the court must decide stay requests on a case-by-case basis." TPK Touch Solutions, Inc. v. Wintek Electro–Optics Corp., No. 13–cv–2218, 2013 WL 6021324, at *1 (N.D. Cal. Nov. 13, 2013).

### c. DISCUSSION

#### i. Stage of Proceedings

The first factor requires the court to consider the progress already made in the case. Telemac, 450 F. Supp. 2d at 1111. The early stage of litigation weighs in favor of a stay. See

Target Therapeutics, Inc. v. SciMed Life Sys. Inc., 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995). Here, Defendants argue that the cases are still in the "early," less costly, stages whereas Plaintiffs maintain that they have long progressed into the "late," more demanding, phases of the litigation. As with so many questions presented to the court, the answer is found, quite literally in this case, in the middle. The parties and courts have already invested significant time and effort into these matters; a claim construction order has been issued and the close of fact discovery is fast approaching. However, a substantial portion of the work—expert discovery, summary judgment, pre-trial preparation, and trial itself—lies ahead.

While the parties cite numerous cases to support their respective characterizations of the progress made to date, none of their authority speaks to the somewhat novel circumstances surrounding the instant actions. The initial stages of this litigation—exchange of contentions, early fact discovery, and claim construction—developed in a different district, under a different court's case management method and timetable. While motions to stay typically could have been filed in the midst of these activities, any such motion in these particular cases may reasonably have been considered inappropriate, given the pending conditional transfer to this district. In other words, these cases were in a unique posture that required the litigation to progress before a motion to stay could be considered. Thus, as of the filing date of the instant motions, more work had been accomplished than perhaps otherwise would have been had the cases remained in the original district or had they been filed here at the outset.

Considering that the parties have yet to engage in the significant and costly work of conducting expert discovery and preparing summary judgment motions, and taking notice that the preliminary pretrial conference, i.e. the point at which the court will set the trial date, is still six months away, the court finds that this case is not so far advanced that a stay would be improper. That fact, combined with the particular procedural complexities presented in these cases, compel the court to find that this first factor weighs slightly in favor of a stay.

### ii. Simplification of Issues

Next, the court must determine whether a stay will simplify the litigation. Telemac, 450 F. Supp. 2d at 1111. Defendants argue that, because nearly all the claims asserted against them are subject or potentially subject to some form of PTO scrutiny, the cases before this court stand to be substantially simplified should they be stayed pending resolution of these reviews. "[W]aiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate trial by providing the court with expert opinion of the PTO and clarifying the scope of the claims." Target Therapeutics, 33 U.S.P.Q.2d at 2023. Here, if the PTAB cancels all of the asserted claims, the cases against NetApp and Facebook would be rendered moot and the case against EMC and VMware would be whittled down to four claims of a single patent, as opposed to thirty claims of eight different patents. In the event the PTAB cancels or modifies any of the asserted claims, the scope of all three cases would likely be narrowed and simplified. Even if the PTAB affirms the validity of every asserted claim, which is highly unlikely given the new higher standard for instituting IPR, these cases would still benefit as such a strong showing would assist in streamlining the presentation of evidence and benefit the trier of fact by providing the expert opinion of the PTO. Indeed, allowing these invalidity arguments to be determined once, employing the specialized expertise of the PTO, produces the exact results— avoiding duplicative costs and efforts and averting the possibility of inconsistent judgments— intended by the AIA and previous procedures. See 77 Fed. Reg. 48680-01 at 48721. ; Yodlee, Inc. v. Ablaise Ltd., No. 06-cv-07222, 2009 2009 WL 112857, at *2 (N.D. Cal. Jan. 16, 2009) ("Congress instituted the reexamination process to shift the burden o[f] reexamination of patent validity from the courts to the PTO.") (citation omitted).

The substantial benefits just described are certainly expected to flow from a stay contingent upon the final resolution of the six IPRs already instituted as a result of EMC and VMware's petitions. However, the court must consider whether the same benefits can be presumed from a stay based upon the third party IPRs that cover a number of the claims asserted against Facebook, EMC, and VMware, on which the PTO has not yet issued an initial decision. While this earlier

stage in IPR procedure weighs slightly against these defendants on this prong of the analysis, it is not dispositive. See TPK Touch Solutions, 2013 WL 6021324 at *5. Indeed, considering the "liberal policy" favoring stays, along with the fact that, to date, the PTO has instituted IPR on 82% of petitions, the court does not find that the procedural posture of the petitions, without more, outweighs the anticipated simplification afforded by a stay. See ASCII Corp., 844 F. Supp. at 1381. Moreover, should the PTO deny these petitions, the delay endured by the parties will have been relatively short; pursuant to statute, all initial decisions on the relevant petitions should be issued by early April 2014. See Case No. 13-cv-01356, Dkt. No. 29-1, Exs. D-G (reflecting relevant third party petition filing dates ranging from September 18, 2013 to October 11, 2013); 37 C.F.R. § 42.107(a)-(b) (affording patent owner ninety days in which to file a response); 35 U.S.C. § 314(b) (requiring the PTO to issue an initial decision within ninety days of the patent owner's response); see also Evolutionary Intelligence LLC v. Yelp Inc., No. 13-cv-03587, 2013 WL 6672451, at *7 (N.D. Cal. Dec. 18, 2013) (finding that the potential for simplification of issues weighed in favor of a stay when the PTO's initial decision on the only relevant IPR petition had not yet been issued but was anticipated within four months).

       The benefits of a stay are also contingent upon the application of IPR's estoppel effect. See 35 U.S.C. § 315(e)(2). Plaintiffs here raise the reasonable concern that two of the defendants, NetApp and Facebook, are not IPR petitioners and thus will be free to relitigate invalidity on any grounds they choose once the stay is lifted. While the consideration of potential duplicative efforts is a critical one, here NetApp and Facebook have attempted to obviate the need for concern by indicating their willingness to be bound to some form of estoppel. See Case No. 13-cv-01356, Dkt. No. 34 at 7; Case No. 13-cv-01359, Dkt. No. 7 at 16. The court also acknowledges that since the filing of EMC and VMware's Motion to Stay, several additional claims asserted against these defendants have been identified in one of the same third party IPR petitions relied upon by Facebook. The court may alleviate any estoppel concern as to these defendants by using its inherent power to condition a stay on their agreement to be bound as if they themselves had filed the relevant IPR petition. See, e.g., Pi-Net Int'l, Inc. v. Focus Bus. Bank, No. 12-cv-4958, 2013

WL 4475940, at *5 (N.D. Cal. Aug. 16, 2013). Accordingly, the court concludes that the potential for streamlining these proceedings, even considering the complexity of these cases, weighs in favor of a stay.

### iii. Undue Prejudice

Finally, the court must consider whether the non-moving party will suffer undue prejudice as a result of a stay. See In re Cygnus Telecomm. Tech., 385 F.Supp.2d at 1023. Defendants contend that Plaintiffs do not face undue prejudice because the new statutory IPR schedule is significantly more expedient than the previous procedure and because any harm Plaintiffs may incur would be compensable through damages. Plaintiffs disagree, arguing that they in fact would be prejudiced by the delay imposed by the stay and any subsequent appeal because, in the interim, they are impeded from protecting their property rights in the asserted patents and risk losing evidence, witnesses, and memory of key facts. The court is not persuaded that either of these alleged harms constitutes undue prejudice. The first—that Plaintiffs will be delayed in protecting their property rights—merely describes the nature of a stay. Courts have long acknowledged that a delay inherent to a stay does not, in and of itself, constitute prejudice. See Telemac, 450 F. Supp. 2d at 1111. Additionally, considering the parties are not competitors, any harm from the temporary halt in enforcing Plaintiffs' rights in the asserted patents can be addressed through a final damages award. The second—the potential loss of evidence—certainly could constitute prejudice under certain circumstances; however, Plaintiffs here have failed to point to any specific evidence or witnesses that may become stale or unavailable during the stay period. Considering that these cases turn primarily on source code, which is easily produced and preserved, and absent any non-speculative allegations as to the future availability of evidence, the court does not find any undue prejudice. See, e.g., Pi-Net, 2013 WL 4475940, at *4.

Plaintiffs also contend they would be prejudiced by the stay's effect of "having cases on different tracks with different defendants." Case No. 13-cv-01356, Dkt. No. 33 at 10. The court affords no weight to this argument because the situation is of Plaintiffs' own choosing. In revising Section 299 to restrict joinder of defendants to those whose cases actually arise out of the same

facts or transaction, Congress explicitly expressed its intent that "parties who make completely different products and have no relation to each other" should not be treated as co-defendants. 35 U.S.C. § 399; see, e.g., "America Invents Act" 157 Cong. Rec. H4420-06 at H4426 (daily ed. June 22, 2011) (statement of Rep. Goodlatte). Accordingly, when choosing to file multiple cases against numerous defendants, Plaintiffs simply cannot expect to proceed along the circuitous path of litigation as if they had only filed one. Having found no specific undue prejudice to Plaintiffs, the court finds that this final factor weighs in favor on a stay.

## II. MOTION TO DISMISS

Facebook has also filed a motion to dismiss the case against it for lack of subject matter jurisdiction, alleging that Plaintiffs do not have prudential standing because they do not hold "all substantial rights" to the patents-in-suit. Case No. 13-cv-1356, Dkt. No. 38. Specifically, Facebook alleges that a third party holds an exclusive license and exclusive right to sue on the patents-in-suit in a particular field of use. Plaintiff PersonalWeb is currently engaged in arbitration against that same third party to determine whether the agreement between them has been or may be terminated.

Having carefully reviewed this matter, the court has determined that it is presently unripe for adjudication. The construction and status of the agreement between PersonalWeb and the third party is essential to the determination of the present motion, and those questions are squarely before the arbitrator at this time. Accordingly the motion is DENIED without prejudice and may be renewed by Facebook upon conclusion of the arbitration.

## III. CONCLUSION

For the foregoing reasons, the Court CONDITIONALLY GRANTS Defendants' Motions to Stay. These actions are STAYED in their entirety pending final exhaustion of the relevant review proceedings, including any appeals.[1] This grant is contingent on each defendant's agreement to be bound by the same estoppel that limits IPR petitioners as set forth by 35 U.S.C. § 315(e).

---

[1] This order does not preclude any party from moving to reopen this action, when appropriate.

Each defendant in each case shall file, on or before January 20, 2013, a notice indicating their consent or declination to be bound by the above-described estoppel limitations. The notice shall not exceed one page in length. Defendants are hereby notified that, absent full consent, the court may sua sponte reconsider this Order.

To be clear, though these cases enter the stay as a related group, they will exit it as individuals, once the last claim subject to review that is relevant to each defendant's particular case reaches final resolution.

The parties in each case shall submit a joint status report apprising the court of the status of the relevant review proceedings on July 13, 2014, and every six months thereafter. These reports shall be filed as separate docket entries on ECF/PACER.

The parties in each case shall provide notice to the court within one week of final exhaustion of all relevant review proceedings, including appeals. In their notice, the parties shall request that this matter be reopened, and that a case management conference be scheduled.

The court DENIES Facebook's Motion to Dismiss, Case No. 13-cv-01356, Dkt. No. 38, without prejudice.

The clerk shall ADMINISTRATIVELY CLOSE these files.

**IT IS SO ORDERED.**

Dated: January 13, 2014

_____
EDWARD J. DAVILA
United States District Judge