# EXHIBIT A

*E-Filed: February 13, 2014*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC, and LEVEL 3 COMMUNICATIONS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE INC. and YOUTUBE, LLC,<br><br>Defendants.<br>_____/ | No. C13-01317-EJD (HRL)<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SANCTIONS**<br><br>[Re: Docket No. 209] |

PersonalWeb Technologies LLC ("PersonalWeb") sues Google Inc. and YouTube LLC (collectively, "Google") for infringement of its so-called "Truenames" patents. In the instant Motion for Sanctions Based on PersonalWeb's Spoliation of Evidence, Google alleges that PersonalWeb systematically deleted relevant emails it was under a duty to preserve because it reasonably anticipated this litigation. Google seeks dismissal or, alternatively, an adverse inference instruction, issue preclusion, evidentiary sanctions, and/or monetary sanctions. PersonalWeb opposes the motion and denies any wrongdoing. PersonalWeb maintains that it had in place a legitimate e-mail retention policy and timely implemented a litigation hold shortly after filing the lawsuit against Google. The presiding judge referred this matter to the undersigned, who held a hearing on January 21, 2014. Based on the moving and responding papers, as well as the arguments of counsel at the hearing, Google's motion is GRANTED IN PART.

## BACKGROUND

PersonalWeb acquired several Truenames patents from a subsidiary of Brilliant Digital Entertainment (BDE) in July 2011. The last of the Truenames patents was issued in August, and the assignment of the entire Truenames patent portfolio was recorded in early September. BDE then issued a press release announcing the deal in which it also boasted that the Truenames patents had been referenced in the patent applications of major technology companies, including Google (as well as several other soon-to-be defendants). On December 6, 2011, PersonalWeb issued a press release touting the launch of its new product StudyPods, which utilizes the Truenames patents. Two days later, it filed lawsuits against Google and several other defendants for alleged infringement.

In August 2011, PersonalWeb implemented a new e-mail retention policy, which generally required employees to save to storage emails which had "lasting value" and delete those with only "transitory value." *See* Dkt. 248-4, at 32. On October 5, 2011, a secretary at PersonalWeb sent a companywide email "reminder to delete all unnecessary emails by next Wednesday the 12th or save the ones you absolutely need." Dkt. 226-36. Mike Weiss, President and CEO of PersonalWeb, replied to all recipients of the email and referred them to the official email retention policy. On December 19, 2011, eleven days after filing the instant lawsuit,[1] Weiss sent an email announcing a litigation hold, which generally required employees to "preserve all records, information, documents, and other evidence relevant to [the litigation]." *See* Dkt. 226-37.

In May 2012, former PersonalWeb employee Jake Drew approached Google suggesting that he and PersonalWeb may have committed some misconduct related to the litigation.[2] At Drew's deposition in September 2012, he testified that, as early as May 2011, Weiss had repeatedly told employees at weekly lunch meetings that PersonalWeb planned on filing lawsuits against major technology companies, and at one such meeting in October or November, Weiss specifically instructed employees to purge all of their emails. Weiss' reason for the purge order was that he did

---

[1] PersonalWeb's Opposition states that the Weiss email implementing the litigation hold was sent the day after filing its complaint against Google. *See* Opposition at 7. However, the complaint was filed on December 8, 2011, and the email is dated December 19, 2011.

[2] Drew apparently resigned over disputes with management as to ownership of technology he helped develop. When Drew approached Google, he refused to provide any information until represented by counsel. Google then paid for independent counsel to represent him.

2

not want massive amounts of email to go through in discovery. Drew also testified that he was tasked with analyzing a Google patent, and that all employees developing StudyPods were specifically instructed to incorporate the Truenames patents to ensure a bigger award in an infringement action.

Drew's testimony is corroborated in some respects by current PersonalWeb employee Josh Jarvis. He recalls some workplace chatter about litigation around the September press release, as well as some mention by Weiss of the email retention policy in the context of litigation at a weekly lunch meeting in October 2011. Jarvis also testified that he likely deleted emails pursuant to the email retention policy that he would have kept had the litigation hold been in effect.

However, several other PersonalWeb employees firmly reject Drew's allegation that Weiss instructed employees to "purge" their inboxes. On the contrary, they insist that Weiss emphasized the importance of retaining emails and repeatedly instructed employees to err on the side of retention or see him directly if they had any questions about complying with the email retention policy.

## LEGAL STANDARD

"Spoliation occurs when one destroys or materially alters evidence or fails to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Hynix Semiconductor Inc. v. Rambus, Inc.*, 897 F. Supp. 2d 939, 975 (N.D. Cal. 2012). "When litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Micron*, 645 F.3d at 1320. "It is, of course, not wrongful for a manager to instruct his employees to comply with a valid document retention policy under ordinary circumstances." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1319-20 (Fed. Cir. 2011) (quoting *Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005)). However, "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1071 (N.D. Cal. 2006) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003)).

3

"A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *see also Apple Inc. v. Samsung Elec. Co.*, 888 F. Supp. 2d 976, 987 (finding that magistrate judges have inherent authority to impose sanctions for spoliation). "In considering what spoliation sanction to impose, if any, courts generally consider three factors: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Apple*, 888 F. Supp. 2d at 992 (internal quotation marks omitted). "In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Id.* (quoting *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, No. C 06-3359 JF (RS), 2009 WL 1949124 (N.D. Cal. July 2, 2009)).

## DISCUSSION

### A. Duty to Preserve

PersonalWeb's duty to preserve evidence arose when litigation became reasonably foreseeable. Google asserts that PersonalWeb anticipated litigation no later than June 2011, before it even acquired the patents-in-suit, as evidenced by Drew's testimony that Weiss began discussing future litigation against major technology companies during weekly lunch meetings around May or June 2011. Google alleges that this litigation was the object of a comprehensive business strategy whereby PersonalWeb comparatively analyzed the Truenames patents and related technologies (including Google-owned patents), developed its StudyPods project to make use of the Truenames patents, acquired the patents having predetermined it would pursue litigation, and filed suit as soon as StudyPods was ready for launch. PersonalWeb does little to dispute Google's characterization of its strategy and is virtually silent as to the issue of when it reasonably anticipated this litigation.

The Court agrees that PersonalWeb probably acquired the patents with an eye toward litigation. However, it is difficult to say that litigation was reasonably foreseeable before PersonalWeb even acquired the thing which would give it standing to sue. Thus, since PersonalWeb's acquisition of the patents was a condition precedent to its ability to even initiate the

4

litigation, the Court thinks it was likewise a condition precedent to PersonalWeb's duty to preserve evidence. Accordingly, because PersonalWeb was analyzing Google technology as early as April and openly discussing litigation as early as May, the Court finds that litigation was reasonably foreseeable so as to trigger a duty to preserve evidence when PersonalWeb first acquired Truenames patents in July 2011. *See Micron*, 645 F.3d at 1323 ("Once the patent issued, the gun was loaded; when the targets were acquired, it was cocked; all that was left was to pull the trigger by filing the complaint.")

B. Destruction of Evidence

Google asserts that PersonalWeb engaged in a systematic mass deletion of emails in October 2011, well after its duty to preserve evidence arose. This was first reported by Drew, who testified that Weiss ordered a purging of emails at a weekly meeting in October or November, and it was confirmed by Weiss' secretary's "reminder to delete all unnecessary emails by next Wednesday [October] 12th or save the ones you absolutely need." PersonalWeb counters that it had a legitimate email retention policy in place at the time, and Weiss was quick to clarify his secretary's email by referring all employees to comply with that policy. Moreover, besides Drew, every employee to weigh in on the matter denies that Weiss ever ordered a mass purging and asserts that he consistently emphasized the importance of retention.

The Court is not convinced that PersonalWeb engaged in as willful and malicious an act of destruction as Google suggests. Nevertheless, the Court still finds that PersonalWeb spoliated evidence as a result of its failure to timely implement a litigation hold. *See Napster*, 462 F. Supp. 2d at 1071. Litigation was reasonably foreseeable in July 2011, yet rather than put a litigation hold in place, PersonalWeb waited a month to implement its first email retention policy, which despite the name, mandates the destruction of some emails without a backup. An additional four months lapsed before PersonalWeb finally ensured the preservation of evidence by implementing the litigation hold.

PersonalWeb insists that no relevant documents were destroyed pursuant to the email retention policy, and in practice, the litigation hold did nothing to alter the retention habits of PersonalWeb employees who all already saved all but the most trivial of emails, such as lunch

5

orders and commercial solicitations. While this may be true for the most part, Jarvis did agree it was likely that he saved some emails as a result of the litigation hold that he otherwise would have deleted pursuant to the normal retention policy. Moreover, regardless of the practice of most employees, at least one, Drew, deleted somewhere between 100 and 1,000 emails. And regardless of whether he fundamentally misunderstood Weiss' direction as to retention versus deletion of emails, he was still a PersonalWeb employee who destroyed hundreds of potentially relevant emails that would have been saved had the litigation hold been in effect, and PersonalWeb offers no reason why it should not be held responsible for his actions. Accordingly, the Court finds that PersonalWeb did engage in spoliation of evidence.

C. Appropriate Sanction

1. PersonalWeb's Degree of Fault

As discussed above, the Court does not conclude that PersonalWeb undertook a mass destruction of relevant evidence to gain an unfair advantage in its upcoming litigation, at least not with respect to the substance of the case. At worst, the record indicates that PersonalWeb's motivation behind the email retention/destruction policy was to save itself the costs associated with wading through countless documents in discovery. Under ordinary circumstances, this may be a legitimate business purpose. However, as here, where a party implements such a policy for that specific purpose in view of upcoming litigation, it does so in bad faith because it knowingly risks the destruction of potentially relevant information that would otherwise be saved by a litigation hold.

2. Prejudice to Google

Despite PersonalWeb's five month delay in implementing the litigation hold, there is little evidence of prejudice to Google. Granted it is difficult to demonstrate prejudice from spoliation because, by definition, the prejudiced party does not have access to the evidence. Accordingly, a party must only come forward with plausible, concrete suggestions as to what the destroyed evidence might have been before a heavy burden shifts to the spoliating party to show a lack of prejudice. *See Micron*, 645 F.3d at 1328. Here, Google suggests that PersonalWeb destroyed evidence of its analysis of Google technology, its analysis of the Truenames patents, and its

development of StudyPods, including the incorporation of Truenames technology into the project. However, PersonalWeb points out that Google, in its motion to transfer venue from the Eastern District of Texas, previously argued (apparently convincingly) that evidence of PersonalWeb's analysis of the patents and its development of StudyPods was irrelevant to the main issues of this litigation, such as claim construction and infringement. Moreover, the Google patent analyzed by Drew, on which Google so heavily relies, does not concern technology at issue in this case. For the most part, the Court agrees with PersonalWeb on the issue of prejudice. Even assuming emails discussing the categories of information identified by Google were destroyed, the Court is not convinced that such emails would have significant bearing on the merits of this litigation. Accordingly, the Court finds that Google suffered little, if any, prejudice as a result of PersonalWeb's spoliation.

### 3. Lesser Sanctions

In the absence of substantial prejudice, dismissal, the most severe sanction available, is certainly not warranted. Alternatively, Google requests an adverse inference, issue preclusion, evidentiary sanctions, and/or monetary sanctions. Because Google has suffered little or no substantive prejudice, and because it appears that PersonalWeb's conscious disregard of its duty to preserve evidence was motivated by cost-saving, the Court thinks that monetary sanctions are sufficient and appropriate in order to punish PersonalWeb's misconduct, deter future bad behavior, and make Google whole for its resulting additional discovery costs.

Accordingly, Google shall be awarded monetary sanctions sufficient to reimburse it for reasonable attorney's fees and costs associated with its spoliation-related discovery and motions practice. In its motion, Google includes the preparation for and taking of depositions of Jake Drew and Joshua Jarvis as spoliation-specific discovery. The Court agrees that Google should be reimbursed for these acts but only to the extent that they relate exclusively to the issue of spoliation as distinct from the merits and substance of the litigation. *See Zubulake*, 220 F.R.D. at 222 (finding adverse inference was not warranted but awarding costs for re-deposing witnesses for inquiry into issues raised by destruction of evidence). In other words, Google may only be reimbursed for reasonable expenses that would not have been incurred but for its inquiry into the allegations of

7

1  PersonalWeb's spoliation.  To this end, within seven days from the date of this order, Google shall
2  submit a declaration with supporting documentation including an itemized list of all attorney's fees
3  and costs for which it believes it is entitled to reimbursement pursuant to this order.  The declaration
4  shall describe each item with sufficient particularity so as to allow the Court to make a
5  determination that it was reasonable and exclusive to the issue of spoliation.  Upon filing of the
6  declaration, PersonalWeb will be given seven days to file a response not to exceed six pages in
7  which it may oppose any specific request for reimbursement.  Google will have five days thereafter
8  to file a reply not to exceed three pages.
9  **IT IS SO ORDERED.**
10 Dated:  February 13, 2014



_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

8

**C13-01317-EJD (HRL) Notice will be electronically mailed to:**

Adam Hockensmith    ahockensmith@susmangodfrey.com, jdunaven@susmangodfrey.com

Allen Franklin Gardner    allengardner@potterminton.com

Ashley Lauren McMillian    amcmillian@susmangodfrey.com

Davida P Brook    dbrook@susmangodfrey.com, eball@susmangodfrey.com

Daymon Jeffrey Rambin    jrambin@capshawlaw.com

Elizabeth DeRieux    ederieux@capshawlaw.com

Joseph S. Grinstein    jgrinstein@susmangodfrey.com, tadkins@susmangodfrey.com

Justin Adatto Nelson    jnelson@susmangodfrey.com

Kalpana Srinivasan    ksrinivasan@susmangodfrey.com, hdanielson@susmangodfrey.com

Matthew M. Wolf    matthew.wolf@aporter.com

Max Lalon Tribble , Jr    mtribble@susmangodfrey.com, tadkins@susmangodfrey.com

Michael Anthony Berta    michael.berta@aporter.com

Michael E Jones    mikejones@potterminton.com

Nicholas Lee    nicholas.lee@aporter.com

Nicholas H Lee    nicholas.lee@aporter.com, donna.johnson@aporter.com, elizabeth.tryon@aporter.com, john.fitzpatrick@aporter.com, MaryAnne.Donaldson@aporter.com

Sandeep Seth    sseth@susmangodfrey.com

Sara Patricia Zogg    sara.zogg@aporter.com

Sidney Calvin Capshaw , III    ccapshaw@capshawlaw.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**

9