Robert Galvin (SBN 171508)
  robert.galvin@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile:  (650) 858-6100

William F. Lee
  william.lee@wilmerhale.com
Cynthia D. Vreeland
  cynthia.vreeland@wilmerhale.com
Peter Dichiara
  peter.dichiara@wilmerhale.com
Marissa A. Lalli
  marissa.lalli@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

*Attorneys for Defendants and Counterclaim-*
*Plaintiffs EMC Corporation and VMware, Inc.*

**REDACTED VERSION
OF DOCUMENT SOUGHT
TO BE SEALED**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> EMC CORPORATION and VMWARE, INC., <br><br> Defendants. | CASE NO.:  5:13-cv-01358-EJD <br><br> **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR ATTORNEY FEES UNDER 35 U.S.C. § 285** <br><br> Date: May 21, 2020 <br> Time: 9:00 AM <br> Before: Hon. Edward J. Davila <br> Courtroom: 4, 5th Floor |

## <u>TABLE OF CONTENTS</u>

I.      Introduction ................................................................................................................. 1

II.     PersonalWeb Attempts to Rewrite Its Own Corporate History to Obscure Its
        Litigation-Driven Motives.......................................................................................... 3

III.    Seeking to Avoid a Finding of Objective Unreasonableness, PersonalWeb Attempts
        to Relitigate Invalidity Issues It Has Lost Many Times Over. ................................... 6

IV.     PersonalWeb's Litigation Conduct Stands Out Within the Meaning of *Octane Fitness* .. 12

V.      The Court Should Award Fees Associated with Defendants' IPRs. .......................... 13

VI.     Conclusion................................................................................................................. 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Blackbird Tech LLC v. Health In Motion LLC,*
   944 F.3d 910 (Fed. Cir. 2019) ............................................................ 5

5

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.,*
   315 F. Supp. 3d 977 (N.D. Ill. 2018) ................................................ 14

6

7

*Hockeyline, Inc. v. STATS LLC,*
   No. 13-CV-1446 (CM), 2017 WL 1743022 (S.D.N.Y. Apr. 27, 2017) .................................. 8

8

9

*Large Audience Displays Sys., LLC v. Tennman Productions, LLC,*
   745 F. App'x 153 (Fed. Cir. 2018) .................................... 6

10

*Lumen View Tech., LLC v. Findthebest.com, Inc.,*
   24 F. Supp. 3d 329 (S.D.N.Y. 2014) ........................................ 6

11

12

*Munchkin, Inc. v. Luv N' Care, Ltd.,*
   No. CV 13-06787 JEM, 2018 WL 7504404 (C.D. Cal. Dec. 27, 2018) ................................. 14

13

14

*My Health, Inc. v. ALR Techs, Inc.,*
   No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221 (E.D. Tex. Dec. 19, 2017) .................... 14

15

*Neptune Generics, LLC v. Eli Lilly & Co.,*
   921 F.3d 1372 (Fed. Cir. 2019) ............................................ 9

16

17

*Octane Fitness, LLC v. ICON Health & Fitness, Inc,*
   134 S. Ct. 1749 (2014) .................................................... 3

18

19

*OpenTV, Inc. v. Apple Inc.,*
   No. 5:15-cv-02008-EJD, 2016 WL 344845 (N.D. Cal. Jan. 28, 2016) .............................. 10

20

*In re PersonalWeb Techs., LLC, & Level 3 Commc'ns, LLC, Patent Litig.,*
   MDL No. 2834, 340 F. Supp. 3d 1373 (J.P.M.L. 2018) ....................................... 2, 5

21

22

*PersonalWeb Techs., LLC v. Apple, Inc.,*
   848 F.3d 987 (Fed. Cir. 2017) ........................................... 7

23

*PersonalWeb Techs., LLC v. Apple, Inc.,*
   917 F.3d 1376 (Fed. Cir. 2019) .......................................... 7

24

25

*Prism Techs. LLC v. T-Mobile USA, Inc.,*
   696 F. App'x 1014 (Fed. Cir. 2017) ...................................... 10

26

*ReedHycalog UK, Ltd. v. Diamond Innovations Inc.,*
   No. 6:08-CV-325, 2010 WL 3238312 (E.D. Tex. Aug. 12, 2010) ................................ 12

27

28

---

*Smartflash LLC v. Apple Inc.*,
    680 F. App'x 977 (Fed. Cir. 2017) ......................................................................................... 10

*Stone Basket Innovations, LLC v. Cook Medical LLC*,
    892 F.3d 1175, 1178 (Fed. Cir. 2018) ...................................................................................... 8

**Federal Statutes**

35 U.S.C. § 285 ........................................................................................................... *passim*

35 U.S.C. § 311(b) ............................................................................................................. 9

**Federal Regulations**

Changes to Implement *Inter Partes* Review Proceedings, Post-Grant Review
    Proceedings, and Transitional Program for Covered Business Method Patents,
    77 Fed. Reg. 48,680 (Aug. 14, 2012) ....................................................................................... 7

# I.      Introduction

In its Opposition to Defendants' Motion for Attorney Fees (ECF No. 97, "Opp."), Plaintiff PersonalWeb Technologies LLC ("PersonalWeb") advances a slew of irrelevant arguments, seeking to obscure the fictions on which this litigation was premised and the fundamental flaws in its asserted True Name patents.  Nothing in that Opposition undermines the conclusion that this is an "exceptional" case under 35 U.S.C. § 285 based on both PersonalWeb's unreasonable litigation conduct and the substantive weakness of its positions on the merits.[1]

PersonalWeb's first set of arguments attempts to defend the legitimacy of its business.  But as the testimony of its *own* employees has confirmed, PersonalWeb's core business model has been—and remains—to extract litigation settlements from successful innovators.  In furtherance of this business model:

- PersonalWeb's California-based parents incorporated the company in the Eastern District of Texas for the sole purpose of filing suit against numerous cloud-computing companies (including Defendants) from outside that district—forcing Defendants to file a successful motion to transfer their case to this Court.

- PersonalWeb created a phantom product, "StudyPods," solely for the purpose of increasing its potential damages in the case—forcing Defendants to engage in needless work to disprove the legitimacy of this product.

- PersonalWeb systematically deleted relevant emails it was under a duty to preserve—prior to and in anticipation of the litigation—again forcing Defendants to engage in needless work to investigate this spoliation and leading to sanctions against PersonalWeb in related litigation against Google.

- For its own convenience and in violation of clear requirements of binding precedent, PersonalWeb omitted a concededly necessary plaintiff in the Texas litigation—forcing Defendants to file a motion to dismiss and requiring an amendment of the complaint.

---

[1] To be clear, Defendants EMC and VMware are seeking fees from plaintiff PersonalWeb only.  Defendants are not seeking fees against co-plaintiff Level 3 Communications, LLC ("Level 3").  EMC and VMware understand that Level 3 is a co-plaintiff in this action only because it is a co-owner of the patents-in-suit.  Level 3 did not participate in the IPRs, and EMC and VMware are not aware of Level 3 participating in any of the other actions in this case that caused EMC and VMware to incur attorneys' fees.

1   PersonalWeb's improper tactics and litigation-first approach continued over the life of this case.

2   Indeed, even as the Patent Office was invalidating claim after claim of PersonalWeb's patents,

3   PersonalWeb continued to grossly and needlessly expand the breadth of its litigation campaign,

4   filing suit against nearly fifty Internet companies in January 2018 based on their use of cloud-

5   computing services.  *See In re PersonalWeb Techs., LLC, & Level 3 Commc'ns, LLC, Patent Litig.*,

6   MDL No. 2834, 340 F. Supp. 3d 1373 (J.P.M.L. 2018).  Those claims—like the ones here—

7   ultimately failed.

8        PersonalWeb's second set of arguments attempts to rewrite the record and to defend the

9   substantive merits of its patent claims.  PersonalWeb devotes pages of its opposition to explaining

10   why it believes the eight asserted patents were valid—despite the fact that the Federal Circuit, the

11   PTAB, and this Court have deemed virtually all asserted claims of these patents invalid or ineligible

12   for patent protection.  Indeed, the ***only*** asserted claims to have escaped a finding of invalidity are

13   those from the patent PersonalWeb voluntarily ***dismissed*** from the case—U.S. Patent No. 6,928,442

14   patent ("the '442 patent")—after similar claims were invalidated in reexamination proceedings.  *See*

15   Lalli Fees Decl. Ex. X, ECF No. 91-25 (Mar. 20, 2019 Final Rejection, Reexamination No.

16   90/013,764).

17        PersonalWeb's third set of arguments attempts to rewrite a nine-year litigation history in an

18   effort to show that it has not litigated the case unreasonably.  But PersonalWeb cannot dispute that,

19   time and time again, its approach to this litigation has generated needless work for Defendants and

20   significantly driven up their costs.  Indeed, PersonalWeb continued these vexatious tactics even

21   during the briefing of this very motion, when it attempted to seek a stay pending appeal—disguising

22   its motion as a motion for an extension of time, and waiting to propose that stay until it had already

23   agreed to a briefing schedule and Defendants had invested in and filed their opening brief.  *See*

24   Defs.' Opp. to Mot. for Extension, ECF No. 94; Order Denying Mot. to Stay, ECF No. 95.

25        As explained below and in Defendants' Motion for Attorney Fees, PersonalWeb's conduct

26   stands out because, unlike in a "garden-variety" patent infringement case, PersonalWeb pursued

27   meritless claims against EMC and VMware long after it had reason to know that its theories were

28   untenable.  Moreover, PersonalWeb engaged in a series of unreasonable litigation tactics designed

to distract from the fundamental infirmities in the patents. In short, PersonalWeb litigated this case in an unreasonable manner, based on claims that were unusually weak. For these reasons, PersonalWeb's conduct meets the standards set forth in *Octane Fitness, LLC v. ICON Health & Fitness, Inc*, 134 S. Ct. 1749 (2014), and the Court should therefore find that this case is exceptional under 35 U.S.C. § 285 and award reasonable fees to Defendants.

## II.    PersonalWeb Attempts to Rewrite Its Own Corporate History to Obscure Its Litigation-Driven Motives

Defendants previously demonstrated that PersonalWeb is a shell operation whose sole purpose is to file patent infringement lawsuits. PersonalWeb attempts to rebut Defendants' showing, primarily through citations to a self-serving declaration filed by its CEO, Michael Weiss, in an effort to maintain PersonalWeb's preferred venue in the Eastern District of Texas. But PersonalWeb's claims concerning its business are belied by the testimony of its own employees and associates—including Mr. Weiss himself.

*First*, PersonalWeb tries to distance itself from Brilliant Digital Entertainment ("Brilliant"), the parent of Kinetech—the prior owner of the True Name patents. Opp. at 5-6. But Kinetech transferred the True Name patents to PersonalWeb less than two months after Brilliant publicly announced its intention to file exactly this kind of lawsuit against cloud-computing companies like EMC and VMware. *See, e.g*., Lalli Fees Decl. Exs. E, F, H, O, ECF Nos. 91-6, 91-7, 91-9, 91-16 (press releases). And although PersonalWeb claims that Brilliant "owns *no* interest in the company" (Opp. at 2), Brilliant itself boasted about its "*majority ownership* of PersonalWeb" in the same set of press releases. Lalli Fees Decl. Ex. F. (Sept. 28, 2011 Press Release), ECF No. 91-7 (emphasis added). Mr. Weiss similarly confirmed that ███████████████████████████████████████████ ███████████████████████████████████████████████████, Ex. Z[2] (Weiss Depo. Vol. II) at 348—and that █████████████████████ ███████████████████████████████████████. *Id*. at 409:18-21; 411-413 (describing ████████████████████████████████████████).

---

[2] References to "Ex. __" are to the exhibits to the Declaration of Cynthia D. Vreeland in Support of Defendants' Reply in Support of Motion for Attorney Fees Under 35 U.S.C. § 285, filed herewith.

**Second**, PersonalWeb attempts to portray itself as a legitimate, market-oriented Texas business with a purpose beyond patent litigation—noting that it used an "East Texas architect to design and construct its offices," hired some Texas-based employees, and began developing a product called "StudyPods." Opp. at 5. But as one of these employees subsequently testified, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████. Lalli Fees Decl. Ex. M (Drew Deposition) at 56-57, ECF No. 91-14. Consistent with that testimony, PersonalWeb's CEO, Mr. Weiss, similarly testified that ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████. Opp. at 6; Lalli Fees Decl. Ex. L (Weiss Depo. Vol. II) at 542:4-8, 563:4-564:21, ECF No. 91-13. PersonalWeb's own employees further confirmed that, despite its enforcement-focused business model, under which PersonalWeb necessarily anticipated litigation, PersonalWeb nevertheless adopted a document destruction policy that would minimize discovery in upcoming lawsuits—for which PersonalWeb was sanctioned in its litigation against Google. *See, e.g.*, Lalli Fees Decl. Ex. A (Spoliation Order) at 3 (noting that Drew's testimony was corroborated in part by testimony of then-current PersonalWeb employee Josh Jarvis). Just as the court found in the *Google* matter, PersonalWeb has done "little to dispute" the assertion that PersonalWeb's "litigation was the object of a comprehensive business strategy whereby PersonalWeb comparatively analyzed the [True Name] patents and related technologies …, developed its StudyPods project to make use of the [True Name] patents, acquired the patents having predetermined it would pursue litigation, and filed suit as soon as StudyPods was ready for launch." Lalli Fees Decl. Ex. A. at 4. Consistent with this inference, only **two days** after announcing the "beta release of StudyPods," PersonalWeb filed its first suit against ten cloud-computing companies—including Defendants. Lalli Fees Decl. Ex. H (PersonalWeb press release, dated Dec. 6, 2011); Lalli Fees Decl. Ex. O (PersonalWeb press release, dated Dec. 8, 2011).

PersonalWeb claims that Defendants have "misrepresent[ed] facts and offer[ed] outright false statements," including making arguments that are allegedly inconsistent with the findings of

the court in the Eastern District of Texas.  Opp. at 2.  But yet again, PersonalWeb overreaches.

PersonalWeb primarily relies on that court's statement "that "PersonalWeb is a legitimate company operating a legitimate business in East Texas."  Opp. at 2, 6 (quoting PersonalWeb Ex. 1 at 14).  In context, however, this finding refers primarily to PersonalWeb's ***geographic*** location in Tyler, Texas, as opposed to the underlying structure of its business.  Furthermore, the weight of this statement—from an order issued in March 2013—should be evaluated in light of PersonalWeb's litigation activities in the subsequent seven years, which demonstrate that its business model has been based entirely on extractive licensing of meritless patents.

Indeed, regardless of whatever "legitimacy" could be found in PersonalWeb's business in 2013, PersonalWeb's actions in the intervening seven years speak louder than the words of its Opposition.  In that time frame, PersonalWeb initiated a huge volume of infringement lawsuits, and did little else.  *See* Lalli Fees Decl. Ex. I (PersonalWeb's "Litigation History" webpage).  The breadth of PersonalWeb's litigation campaign is breathtaking, as demonstrated by its assertion of the True Name patents in January 2018 against nearly fifty Internet companies based on their use of cloud-computing services.  *See In re PersonalWeb Techs., LLC, & Level 3 Commc'ns, LLC, Patent Litig.*, MDL No. 2834, 340 F. Supp. 3d 1373 (J.P.M.L. 2018).  Unsurprisingly, these cases—filed as courts and the PTAB were invalidating claims of the True Name patents—have been unsuccessful.  For example, in April 2019, the MDL court dismissed several of PersonalWeb's cases against Amazon's customers.  Ex. AA (5:18-md-02834-BLF, ECF No. 411).  And only a few days after this Court's decision on Section 101 issues, the MDL court granted defendants Amazon's and Twitch's motions for summary judgment of noninfringement.  Ex. BB (5:18-md-02834-BLF, ECF No. 578).

Rather than seriously disputing that its business has been built entirely on the assertion of its True Name patents, PersonalWeb instead argues that none of these issues is relevant to the *Octane* analysis.  *See* Opp. at 7.  But PersonalWeb is wrong.  As numerous courts have held, this type of predatory behavior is squarely within the *Octane* analysis.  For example, in *Blackbird Tech LLC v. Health In Motion LLC*, the Federal Circuit affirmed a fees award under 35 U.S.C. § 285 where the plaintiff had "filed over one hundred patent infringement lawsuits, and none have been decided, on the merits, in [its] favor."  944 F.3d 910, 916-17 (Fed. Cir. 2019).  As the Federal Circuit

emphasized, the district court "did not abuse its discretion by considering the need to deter future abusive litigation." *Id.* Similarly, in *Lumen View Tech., LLC v. Findthebest.com, Inc.*—also affirmed by the Federal Circuit—the court awarded fees under *Octane Fitness* based on a finding that the plaintiff's "motivation in this litigation was to extract a nuisance settlement … on the theory that [defendant] would rather pay an unjustified license fee than bear the costs of the threatened expensive litigation." 24 F. Supp. 3d 329, 336 (S.D.N.Y. 2014), *aff'd*, 811 F.3d 479 (Fed. Cir. 2016). The court focused, among other things, on "the number of substantially similar lawsuits filed within a short time frame," suggesting that the plaintiff's "instigation of baseless litigation is not isolated to this instance, but is instead part of a predatory strategy aimed at reaping financial advantage from the inability or unwillingness of defendants to engage in litigation against even frivolous patent lawsuits." *Id.* And in *Large Audience Displays Systems, LLC v. Tennman Productions, LLC*, the Federal Circuit affirmed a fee award where the plaintiff had been formed in Texas for the purposes of litigation. 745 F. App'x 153, 154-55 (Fed. Cir. 2018). These cases demonstrate that a litigant's broader pattern of litigation can warrant an award of fees under 35 U.S.C. § 285.

The fact that PersonalWeb has successfully weaponized the True Name patents to extract settlements from established innovators such as Microsoft, IBM, and HP does nothing to rebut the fact that its litigation campaign has been unreasonable. Moreover, although PersonalWeb claims that these settlements were not "'nuisance' value," (Opp. at 8) it offers absolutely no support for this contention.

**III.** **Seeking to Avoid a Finding of Objective Unreasonableness, PersonalWeb Attempts to Relitigate Invalidity Issues It Has Lost Many Times Over.**

PersonalWeb also attempts to defend the validity of its True Name patents—advancing arguments that directly contradict the findings of the PTAB, the Federal Circuit, and this Court that the True Name patents are built on old, abstract ideas.

*First*, PersonalWeb ignores the record before the Federal Circuit and PTAB, asserting that the True Name inventors developed "novel solutions for the emerging world of distributed computing." Opp. at 1. This claim is flatly inconsistent with the record before this Court.

Defendants succeeded in *every one* of their challenges to the validity of the asserted patent claims.

Specifically, Defendants successfully challenged *every asserted claim of six of the eight patents* in

the PTAB (U.S. Patent No. 5,978,791, No. 6,415,280, No. 7,945,544, No. 7,945,539, No. 7,949,662,

and No. 8,001,096).[3]  The Federal Circuit in no way "rejected" these findings as PersonalWeb

contends (Opp. at 11)—to the contrary, it *summarily affirmed* them.  Lalli Fees Decl. Ex. W, ECF

No. 91-24.  And after PersonalWeb dropped the '442 patent—claims of which were invalidated in

separate reexamination proceedings—Defendants successfully challenged the eligibility of *every*

*asserted claim* of the only remaining patent, the '310 patent, in this Court.[4]  Given this record,

PersonalWeb cannot credibly claim, as it does now, that the asserted claims of the True Name

patents reflect "novel solutions" in any field of endeavor.

    *Second*, PersonalWeb attempts to downplay the significance of the IPR proceedings by

casting doubt on the strength and relevance of Defendants' petitions.  For example, PersonalWeb

implies that Defendants were not confident in their IPR arguments because they "waited one year"

to file their IPRs in December 2012.  Opp. at 10.  This argument completely ignores that

PersonalWeb filed its original complaint in December 2011—approximately *nine months before*

the PTAB began accepting IPR petitions in September 2012.  *See* Changes to Implement *Inter*

*Partes* Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered

Business Method Patents*,* 77 Fed. Reg. 48,680 (Aug. 14, 2012) (announcing rules of practice to

---

[3] As EMC explained to PersonalWeb nearly six years ago, after the PTAB issued its decisions, "the PTAB rejected the claims based on multiple grounds and multiple references, confirming that the claims' validity was not a close call."  Lalli Fees Decl. Ex. B at 1 (Letter from EMC to Hadley (May 21, 2014)).

[4] PersonalWeb also emphasizes that in the IPR proceedings against the '310 patent initiated by Apple, the Federal Circuit reversed the PTAB's finding of invalidity.  As Defendants have explained, however, these reversals were narrowly decided and did not cast doubt on the patent's fundamental infirmities—the court relied on the narrow ground that the particular prior art at issue did not sufficiently disclose comparing the content-based identifier to a plurality of identifiers (as opposed to a single identifier).  *See PersonalWeb Techs., LLC v. Apple, Inc.*, 917 F.3d 1376, 1382-1383 (Fed. Cir. 2019).  In fact, in the first appeal, the Federal Circuit acknowledged that the prior art disclosed generating an identifier for a data item based on the contents of the data item and disclosed using unique identifiers to control access to data items.  *PersonalWeb Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 989 (Fed. Cir. 2017).

---

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEY FEES UNDER 35 U.S.C. § 285**
CASE NO.:  5:13-CV-01358-EJD                                                                                      7

1   implement IPR provisions of America Invents Act, to take effect on September 16, 2012).[5]

2   Defendants' IPR petitions were among the first presented to the PTAB—hardly demonstrating that

3   Defendants lacked confidence in the merits of those petitions.  PersonalWeb also argues that,

4   because Defendants did not challenge all eight asserted True Name patents in its IPRs, Defendants

5   implicitly signaled that the unchallenged claims were patentable.  Opp. at 10.  In making this

6   argument, however, PersonalWeb overlooks that EMC and VMware ultimately succeeded in ***every***

7   ***one*** of their challenges to the patents.

8          Beyond these arguments, PersonalWeb's only rebuttal to EMC and VMware's success in the

9   IPRs is to cite cases supposedly demonstrating that an adverse IPR decision alone is insufficient to

10  justify a fee award.  *See* Opp. at 20.  But the cases PersonalWeb cites addressed very different

11  factual situations than those presented here.  For example, in *Stone Basket Innovations, LLC v. Cook*

12  *Medical LLC*, the plaintiff requested the adverse IPR decision on its own initiative and further

13  requested that the district court litigation be dismissed once it realized the patent was invalid.  892

14  F.3d 1175, 1178, 1182-83 (Fed. Cir. 2018).  And in *Hockeyline, Inc. v. STATS LLC*, the court

15  concluded that the plaintiffs' arguments were "supported by the patent specification and other

16  unchallenged claims."  No. 13-CV-1446 (CM), 2017 WL 1743022, at *4 (S.D.N.Y. Apr. 27, 2017).

17  The situations in *Stone Basket* and *Hockeyline* could not be more different than the one here—where

18  PersonalWeb was presented with clearly invalidating art in Defendants' invalidity contentions,

19  contested and lost every IPR that EMC and VMware filed based on that same prior art, and

20  continued to fight in district court and the Federal Circuit after the IPRs were complete.

21         ***Third***, PersonalWeb tries to argue that it was not put on notice of the weaknesses in the True

22  Name patents.  For example, PersonalWeb argues that Defendants' invalidity contentions "glossed

23  over limitations" in the claims.  Opp. at 11; *see also id.* ("Defendants' invalidity contentions

24  provided no compelling basis for PersonalWeb to stop litigating.").  PersonalWeb further claims that

25  these contentions reflected Defendants' "faulty analysis" of the True Name patents.  *Id.*  But later in

26  _____

27  [5] Indeed, PersonalWeb argues that Defendants "waited a year" to file their IPRs despite
    acknowledging elsewhere in their Opposition that IPR proceedings were "relatively new" at the

28  time.  Opp. at 10.

---

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEY FEES UNDER 35 U.S.C. § 285**
CASE NO.:  5:13-CV-01358-EJD                                                    8

1    that same paragraph, PersonalWeb *admits* that "the first two prior art references Defendants cited in

2    their invalidity contentions—Woodhill and Stefik—turned out to be … the cornerstones for much of

3    Defendants' IPR contentions …." *Id.*  PersonalWeb fails to extend this observation to its logical

4    conclusion—Defendants' IPRs based on that art were *successful* and led the PTAB and Federal

5    Circuit to invalidate the claims of all six patents challenged by Defendants.  The Court should not

6    credit PersonalWeb's unsupported claim that Defendants' invalidity contentions—relying on that

7    very same prior art—were not adequate notice of the infirmities in the True Name patents.

8         *Fourth*, PersonalWeb claims that Defendants unduly delayed in raising their Section 101

9    challenge to the '310 patent, arguing that this purported delay suggests that the invalidity of those

10   claims was uncertain.  Opp. at 19.  This argument is equally unfounded.  As the Court recognized

11   when it allowed Defendants to supplement their invalidity contentions, there was nothing untimely

12   about Defendants' Section 101 arguments.  *See* Order Granting Defs.' Mot. for Leave to Amend

13   Invalidity Contentions, ECF No. 74.  Defendants specifically identified a Section 101 defense in

14   their Answer and Counterclaims—filed more than eight years ago, on April 23, 2012.  *See* Answer

15   at 9, Counterclaims ¶¶ 14, 20, 26, 32, 38, 44, 50, 56, E.D. Tex. ECF No. 24.  Moreover, when

16   Defendants served their Invalidity Contentions in 2012, the then-current local patent rules in the

17   Eastern District of Texas did *not* require Defendants to repeat the Section 101 defense that had

18   already been pleaded in their Answer and Counterclaims.  *See* Defs. Mot. for Leave to Amend

19   Invalidity Contentions Under Patent Local Rules 3-3 and 3-6, ECF No. 71 at 3 & Decl. of Marissa

20   A. Lalli in Support of Defs.' Mot. for Leave to Amend Invalidity Contentions Under Patent Local

21   Rules 3-3 and 3-6 at Ex. B, ECF No. 71-3.  And Defendants were unable to present any Section 101

22   arguments through IPRs.  *See Neptune Generics, LLC v. Eli Lilly & Co.*, 921 F.3d 1372, 1378 (Fed.

23   Cir. 2019); 35 U.S.C. § 311(b) (limiting scope of IPR arguments to anticipation or obviousness

24   based on patents or printed publications).

25        Less than three months after the stay was lifted last year, Defendants re-raised the Section

26   101 issue to PersonalWeb and notified the Court of the issue in the parties' Joint Case Management

27   Statement (ECF No. 69).  Once Defendants raised the issue, it should have been clear to

28   PersonalWeb what the outcome would be, especially given this Court's and the Federal Circuit's

1   invalidation of similar claims in a recent decision.  *See, e.g.*, *Prism Techs. LLC v. T-Mobile USA,*

2   *Inc.*, 696 F. App'x 1014, 1017-18 (Fed. Cir. 2017) (finding claims directed to "the abstract idea of

3   'providing restricted access to resources'" unpatentable under Section 101); *Smartflash LLC v.*

4   *Apple Inc.*, 680 F. App'x 977, 982-84 (Fed. Cir. 2017) (finding claims directed to "the abstract idea

5   of conditioning and controlling access to data based on payment" unpatentable under Section 101);

6   *OpenTV, Inc. v. Apple Inc.*, No. 5:15-cv-02008-EJD, 2016 WL 344845, at *5 (N.D. Cal. Jan. 28,

7   2016) (Davila, J.) (finding claims unpatentable under Section 101 and noting that "[t]he practice of

8   controlling access to information by verifying credentials (via well-known encryption methods) is

9   neither novel nor specific to interactive television systems"); *see also* Lalli Fees Decl. Ex. Y at 4

10  (Sept. 14, 2019 letter), ECF No. 91-26 (notifying PersonalWeb of Section 101 issues and relevant

11  cases).  Instead, PersonalWeb doubled down, opposed a further stay of discovery, and forced

12  Defendants to engage in extensive briefing—all to defend patents that this Court said "would allow

13  Plaintiff to monopolize the entire field of data-storage."  Am. Order at 24, ECF No. 84.

14      ***Fifth***, PersonalWeb argues that the Patent Office recently rejected a validity challenge to the

15  '310 patent, affirming the validity of four claims of the '310 patent and demonstrating the objective

16  merits of PersonalWeb's case.  But PersonalWeb neglects to mention that this proceeding did not

17  involve a Section 101 challenge.  Further, before the reexamination certificate issued, PersonalWeb

18  ***failed*** to inform the Patent Office that three of the four challenged claims (claims 81, 82, and 86)

19  had ***already*** been found invalid by this Court in its Section 101 decision.  Specifically, the examiner

20  issued the notice of intent to issue a reexamination certificate on January 29, 2020 (Hadley Decl. Ex.

21  17 at 5, ECF No. 97-18))—the same day that this Court issued its judgment and ruling on

22  Defendants' motion for judgment on the pleadings.  ECF Nos. 83, 84.  The reexamination certificate

23  did not issue until February 19, 2020—three weeks later.  Ex. CC (Ex Parte Reexamination

24  Certificate).  In the interim, PersonalWeb filed an Information Disclosure Statement on January 31,

25  2020, but did not alert the examiner to this Court's decision.  Ex. DD (Jan. 31, 2020 Information

26  Disclosure Statement).  In doing so, PersonalWeb ignored the clear instructions of the patent

27  examiner in the January 29, 2020 Notice of Intent, which stated that "[t]he patent owner is reminded

28  of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation

1   activity, or other prior or concurrent proceeding, involving Patent No. 7,802,310 throughout the

2   course of this reexamination proceeding."  Hadley Ex. 17 at 5, ECF No. 97-18.  The examiner had

3   previously issued an identical warning when granting the request for *ex parte* reexamination on

4   September 25, 2019.  Ex. EE (Order Granting Request for Ex Parte Reexamination).  In fact, the

5   reexamination history indicates that PersonalWeb **never** alerted the examiner to the pending Section

6   101 motion, despite the fact that Defendants filed that motion on November 22, 2019—more than

7   **two months** before the examiner issued the Notice of Intent.  PersonalWeb's reliance on the

8   reexamination decision for the '310 patent does not support its opposition, but instead illustrates yet

9   another reason that a fee award is merited.

10          **Finally**, PersonalWeb claims that EMC received "13 related patents on the very same

11  invention," Opp. at 3, 13 (emphasis omitted), implying that the True Name patents were indeed

12  valid and that Defendants' current position is inconsistent with EMC's own positions before the

13  Patent Office.  *Id.* at 13-14.  But the thirteen EMC patents referenced in the opposition bear no

14  relation to the case.  In contrast to PersonalWeb's patents, EMC's patents did not claim the basic

15  idea of using a content-based identifier.  Instead, they focused on a particular application of these

16  ideas for a storage system based on "e-CLIPS"—an application that, in contrast to PersonalWeb's

17  patents, has been widely recognized in the field and incorporated into EMC's successful Centera

18  products.[6]  PersonalWeb's True Name patents, by contrast, have **not** been recognized in the field,

19  have **not** served as a basis for any successful products, and have been licensed by PersonalWeb only

20

21  _____

22  [6] The EMC patents that PersonalWeb highlights originated from a company called FilePool, which
    EMC purchased in 2001.  EMC's patents have been widely recognized in the field and became the

23  basis not only for EMC's $50 million acquisition of FilePool but also a highly successful product
    line called Centera.  *See, e.g.*, Ex. FF, Press Release, EMC Acquires FilePool (Apr. 11, 2011),

24  https://corporate.delltechnologies.com/en-us/newsroom/announcements/2001/04/20010411-
    871.htm.  In fact, as recently as February of this year, industry commentators have recognized

25  FilePool's technology as a milestone in the storage industry.  Ex. GG, Chris Mellor, Why Fast
    Object Storage Is Poised for the Mainstream, *Blocks & Files* (Feb. 10, 2010),

26  https://blocksandfiles.com/2020/02/10/fast-object-storage-set-to-become-mainstream/ ("[T]he first
    content-addressed system (CAS) was devised by Paul Carpentier and Jan van Riel at FilePool in

27  1998.  EMC bought FilePool in 2001 and based its Centera object storage system on the technology

28  it acquired.").

_____

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEY FEES UNDER 35 U.S.C. § 285**
CASE NO.:  5:13-CV-01358-EJD                                                                11

1   through litigation.[7]  And most importantly, PersonalWeb makes no allegation that EMC has asserted

2   these patents in litigation in an exceptional way.  The Court should reject PersonalWeb's attempt to

3   deflect attention from the deficiencies in its own True Name patents—the only patents at issue in

4   this litigation.

5   **IV.      PersonalWeb's Litigation Conduct Stands Out Within the Meaning of *Octane Fitness***

6           As Defendants demonstrated in their Motion for Attorney Fees, the underlying weakness of

7   PersonalWeb's True Name patents required PersonalWeb to adopt tactics that distracted from the

8   merits of its claims.  To that end, PersonalWeb repeatedly drove up Defendants' costs, including by

9   forcing Defendants to engage in extensive and unnecessary motion practice regarding the joinder of

10  proper parties, the appropriate venue for the litigation, and the stay pending the IPRs.  As noted in

11  Defendant's motion, a plaintiff can be liable for fees under Section 285 where it "burden[s] the

12  Court" and the opposing party "with unnecessary motion practice."  *ReedHycalog UK, Ltd. v.*

13  *Diamond Innovations Inc.*, No. 6:08-CV-325, 2010 WL 3238312, at *6 (E.D. Tex. Aug. 12, 2010).

14          PersonalWeb does not deny this conduct but, instead, tries to deflect responsibility for these

15  actions.  For example, PersonalWeb claims that its omission of Level 3 was merely to "streamline"

16  the case, and it chides *Defendants* for not seeking joinder of Level 3 before filing their motion to

17  dismiss.  Opp. at 9.  PersonalWeb cannot blame Defendants for its inadequate pre-suit investigation

18  of the ownership of its own asserted patents—and this episode therefore provides another valid

19  ground for fees.

20          PersonalWeb further argues that the Eastern District of Texas denied transfer motions

21  brought by defendants in ***other*** patent actions brought by PersonalWeb.  Opp. at 9-10.  But it cannot

22  dispute that the court in ***this*** case found insufficient ties to keep the case in Texas.  If PersonalWeb

23

24

25  [7] PersonalWeb claims that some of *Kinetech's* licenses did not result from litigation, Opp. at 8—
26  ignoring that ███████████████████████████████████████████████████████████.
    *See* Mot. at 6; Lalli Fees Decl. Ex. L (Weiss Depo. Vol. II) at 563:8-17
27  ███████████████████████████████████████████████████████████████████████
                                    ; *id.* at 565:1-23
28  ███████████████████████████████████████████████

---

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEY FEES UNDER 35 U.S.C. § 285**
CASE NO.:  5:13-CV-01358-EJD                                                                    12

1   truly wanted to "consolidate" its matters, it should have done so in this District, where the large

2   majority of defendants, evidence, and witnesses were located.

3          PersonalWeb also argues that—although it initially refused to agree to a stay pending

4   resolution of the IPRs, forcing Defendants to file and win a motion—it later agreed to extend the

5   stay pending the outcome of any IPRs by any party affecting challenged claims.  Opp. at 12.  This

6   belated "reasonableness" does not erase its prior conduct.

7          PersonalWeb's approach to this litigation is epitomized in its response to this very motion.

8   After the Court entered judgment, Defendants informed PersonalWeb of their intent to seek attorney

9   fees, and the parties filed a joint stipulation on fees briefing—including an agreed-upon schedule for

10  the parties' liability briefs.  ECF Nos. 85, 86.  Defendants timely filed their Motion for Attorney

11  Fees, as agreed, on March 11, 2020.  A week later, on March 18, 2020—approximately six weeks

12  after the parties negotiated the briefing schedule, six weeks after the Court adopted that schedule

13  (ECF No. 86), three weeks after PersonalWeb filed its notice of appeal, and a week after Defendants

14  filed their opening brief—PersonalWeb informed Defendants of its intent to seek a stay pending

15  appeal.  *See* Underwood Decl. ¶ 5, ECF No. 93-1.  Three business days later, PersonalWeb filed its

16  motion, improperly styled as a "Motion to Extend its Time to File an Opposition to Defendants'

17  Attorney's Fees Motion" and thereby invoking Local Rule 6-3, which triggered an expedited

18  response deadline.  That motion—which ignored both the parties' agreed-upon schedule for the

19  briefing of this motion and the applicable standards for motions to stay—was ultimately denied.

20  ECF No. 95.  Although PersonalWeb's untimely and meritless motion was not granted, it saddled

21  Defendants with significant additional costs.  And PersonalWeb's delay until after Defendants filed

22  their opening brief—pursuant to an agreed-upon schedule—showed that it was interested only in

23  conserving its own resources, not fairness or judicial efficiency.  This latest episode provides yet

24  another basis for a finding that this case is exceptional under 35 U.S.C. § 285.

25  **V.     The Court Should Award Fees Associated with Defendants' IPRs.**

26         Finally, PersonalWeb claims that, because "Defendants intentionally omitted patents and

27  claims from the IPR proceedings" and "did not seek to entirely replace the court's determination of

28  validity issues in this case with the IPRs," an award of fees on the IPRs is inappropriate.  Opp. at 25.

Case 5:13-cv-01358-EJD   Document 99   Filed 05/06/20   Page 18 of 21

PersonalWeb is wrong, and its argument implies that IPR fees may be reimbursed only if there are no further issues to address in district court after IPR proceedings end—a view at odds with both common sense and the standards applied by district courts that have considered this issue. *See* Mot. at 22-23 (collecting cases awarding fees for Patent Office proceedings).

In *Munchkin, Inc. v. Luv N' Care, Ltd.*, for example, the Central District of California determined that fees for an IPR and Federal Circuit appeal were appropriate because "[b]ut for the filing of the patent infringement claim in this case, LNC would not have incurred attorneys' fees and costs for the IPR and Federal Circuit appeal." No. CV 13-06787 JEM, 2018 WL 7504404, at *7 (C.D. Cal. Dec. 27, 2018) (citing *My Health, Inc. v. ALR Techs, Inc.*, No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221 (E.D. Tex. Dec. 19, 2017) (awarding all reasonable expenses on a "but for" causation basis, including an IPR proceeding caused by initiation of lawsuit)), *appeal pending*, No. 2019-1454 (Fed. Cir.). The court further reasoned that fees were appropriate because the court "would have had to address validity and inequitable conduct issues later in the litigation but for the PTAB proceeding. The latter proceeding addressed only validity issues that this Court never considered and thus substituted for work that otherwise would have occurred in this proceeding." *Id*. There can be no dispute that the IPRs in this case, as in *Munchkin*, were a substitute for the district court proceedings. Nor would Defendants have incurred fees for the IPRs but for PersonalWeb's filing of this case. *See My Health*, 2017 WL 6512221, at *6 (awarding § 285 fees against patentee, including fees accused infringer expended in filing IPR petitions, because defendants' pursuit of IPR was necessarily caused by plaintiff's initiation of lawsuit).

PersonalWeb's citations do not demonstrate anything to the contrary. For example, PersonalWeb relies primarily on *Chamberlain Group, Inc. v. Techtronic Industries Co.*, 315 F. Supp. 3d 977, 1019-1020 (N.D. Ill. 2018). But in that case, the court expressly noted that it was denying fees for the IPR proceedings because they ran concurrently with the district court proceedings and there was no stay. *Id*. at 1020. In this case, of course, there was such a stay— meaning that the recovery for such IPR fees would not be duplicative.

Moreover, PersonalWeb's basic premise—that IPR fees should be awarded only when the parties and the court intended to replace the district court limitation "***entirely***" with the PTAB

proceeding—makes no sense in this case given the Court's ruling under Section 101.  Defendants could not have raised a Section 101 challenge—the ultimate basis for the invalidation of the asserted claims of the '310 patent—in an IPR petition.  But under PersonalWeb's standard, the fact that the IPRs did not resolve the '310 patent issues means that all of Defendants' other, distinct work in the IPRs—which invalidated the asserted claims of *six* of PersonalWeb's patents—did not truly substitute for district court's proceedings because they "did not seek to entirely replace" the district court case.  This argument defies common sense.  Rather than adopting PersonalWeb's overly narrow framing, the Court should recognize that the IPRs are an integral part of the litigation between the parties and directly replaced work that would have occurred in district court.

## VI.     Conclusion

PersonalWeb's opposition cannot dispel the realities about its business model, litigation tactics, and invalid patents.  For these reasons, as well as those set forth in Defendants' motion, the Court should find that this case is "exceptional" under 35 U.S.C. § 285 and rule that Defendants are entitled to reasonable attorneys' fees under that statute.

1    Dated:  May 6, 2020

2                                              /s/ Robert Galvin

3                                              Robert Galvin (SBN 171508)
                                                 robert.galvin@wilmerhale.com
4                                              WILMER CUTLER PICKERING
                                                 HALE AND DORR LLP
5                                              950 Page Mill Road
                                               Palo Alto, CA 94304
6                                              Telephone:  (650) 858-6000
                                               Facsimile:  (650) 858-6100
7
                                               William F. Lee
8                                                 william.lee@wilmerhale.com
                                               Cynthia D. Vreeland
9                                                 cynthia.vreeland@wilmerhale.com
                                               Peter Dichiara
10                                                Peter.dichiara@wilmerhale.com
                                               WILMER CUTLER PICKERING
11                                                HALE AND DORR LLP
                                               60 State Street
12                                             Boston, MA  02109
                                               Telephone:  (617) 526-6000
13                                             Facsimile:  (617) 526-5000

14                                             *Attorneys for Defendants and Counterclaim-*
                                               *Plaintiffs EMC Corporation and VMware, Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

The undersigned hereby certifies that all counsel of record who are deemed to have

3

consented to electronic service are being served with a copy of this document via the Court's

4

CM/ECF system per Civil L.R. 5-1(h)(1) on May 6, 2020.  Unredacted copies of documents sought

5

to be sealed are being served on counsel of record via electronic mail.

6

7

Dated: May 6, 2020                          */s/ Robert Galvin*

8

Robert Galvin

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28